IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 24 2004

| | | |
|---|---|---|
| BART A. ROSS, | ) | |
| Plaintiff, | ) | 04C 4210 |
| vs. | ) | NO. JUDGE JOAN H. LEFKOW |
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY HINSHAW & CULLBERTSON, MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER, and UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS | ) ) ) ) ) ) ) ) ) ) ) | Jury Demand as to supplemental jurisdiction, formerly case No. 00C 6818, and as to BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON |
| Defendants. | ) | |

MAGISTRATE JUDGE ASHMAN

## COMPLAINT AT LAW

NOW COMES the Plaintiff, BART A. ROSS, *pro se*, and complaining of the Defendants

UNITED STATES OF AMERICA (here and thereafter the "UNITED STATES") on account of

actions of employees of the judicial branch of the United States Government, law firm

BOLLINGER, RUBERRY & GARVEY, law firm HINSHAW & CULLBERTSON, STATE OF

ILLINOIS (here and thereafter the "STATE"), and continues complaining (formerly case No.

00C 6818) of the Defendants STATE OF ILLINOIS, attorney MARGARET O'LEARY (here and

thereafter "O'LEARY"), attorney MICHAEL KRAUSE (here and thereafter "KRAUSE"),

attorney EILEEN LYSAUGHT (here and thereafter "LYSAUGHT"), attorney BARRY

BOLLINGER (here and thereafter "BOLLINGER"), DR. HENRY BRIELE (here and thereafter

1



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BART A. ROSS,                                )
                                             )
            Plaintiff,                       )
                                             )
      vs.                                    )       NO.
                                             )
UNITED STATES OF AMERICA, STATE OF           )       Jury Demand as to supplemental
ILLINOIS, BOLLINGER, RUBERRY & GARVEY)               jurisdiction, formerly case No.
HINSHAW & CULLBERTSON, MARGARET              )       00C 6818, and as to
O'LEARY, MICHAEL KRAUSE, EILEEN              )       BOLLINGER, RUBERRY &
LYSAUGHT, BARRY BOLLINGER, DR. HENRY)                GARVEY and HINSHAW &
BRIELE, DR. DENNIS GALINSKY, DR.             )       CULLBERTSON
EDWARD BRUNNGRABER, DR. BARRY                )
WENIG, DR. HOWARD KOTLER, and                )
UNIVERSITY OF ILLINOIS AT CHICAGO            )
HOSPITAL AND CLINICS                         )
                                             )
            Defendants.                      )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, BART A. ROSS, *pro se*, and complaining of the Defendants

UNITED STATES OF AMERICA (here and thereafter the "UNITED STATES") on account of

actions of employees of the judicial branch of the United States Government, law firm

BOLLINGER, RUBERRY & GARVEY, law firm HINSHAW & CULLBERTSON, STATE OF

ILLINOIS (here and thereafter the "STATE"), and continues complaining (formerly case No.

00C 6818) of the Defendants STATE OF ILLINOIS, attorney MARGARET O'LEARY (here and

thereafter "O'LEARY"), attorney MICHAEL KRAUSE (here and thereafter "KRAUSE"),

attorney EILEEN LYSAUGHT (here and thereafter "LYSAUGHT"), attorney BARRY

BOLLINGER (here and thereafter "BOLLINGER"), DR. HENRY BRIELE (here and thereafter

1

"DR. BRIELE"), DR. DENNIS GALINSKY (here and thereafter "DR. GALINSKY"), DR. EDWARD BRUNNGRABER (here and thereafter "DR. BRUNNGRABER"), DR. BARRY WENIG (here and thereafter "DR. WENIG"), DR. HOWARD KOTLER (here and thereafter "DR. KOTLER"), and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS (here and thereafter the "HOSPITAL"), states as follows:

### JURISDICTION

1. This action is brought pursuant to the Fourteenth Amendment; Thirteenth Amendment to the United States Constitution; Article 3, Article 6, Article 5, Article 1 of the United States Constitution, and the laws of the United States, specifically 42 U.S.C. § 1983 "Civil action for depravation of rights", 42 U.S.C. § 1985(3) "Conspiracy to interfere with civil rights - Depriving persons of rights or privileges", 28 U.S.C. § 1331 "Federal question" and jurisdiction under § 1343 "Civil rights and elective franchise",

invoked by jurisdiction under 28 U.S.C. § 1346(b) "United States as defendant" (and 28 U.S.C. § 2671 "Definitions", 28 U.S.C. § 2401(b) "Time for commencing action against United States"), to redress depravation of civil rights of the Plaintiff resulting in money damages and catastrophic functionally, physically (severe pain) and cosmetically, continuously self progressing, if not corrected by surgeries and other medical treatments, injury to the Plaintiff, accomplished by negligent or wrongful acts or omissions of employees of the Government of the Defendant, the UNITED STATES, while acting within the scope of their offices or employment, and committed through use of excessive force and battery, terrorist acts under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the acts or omissions occurred, this is the law applicable within the

2

State of Illinois, specifically, 42 U.S.C. § 1983 "Civil action for depravation of rights", 42

U.S.C. § 1985(3) "Conspiracy to interfere with civil rights - Depriving persons of rights or

privileges", and jurisdiction under 28 U.S.C. § 1331 "Federal question" and § 1343 "Civil rights

and elective franchise", invoked by depriving Plaintiff civil rights under color of state law,

custom or usage, namely

application of Illinois civil law provided in 735 ILCS 5/13-202 "Personal injury Penalty"

through excessive force and battery to override applicable Illinois civil law 735 ILCS 5/13-212

"Physician and hospital", 735 ILCS 5/13-215 "Fraudulent concealment" under § 1988

"Proceedings in vindication of civil rights", and suppression/concealing of facts provided in

sworn to exhibits and affidavits supporting Complaint, case No. 00C 6818, violating Illinois

criminal laws 720 ILCS 5/31-4 "Obstructing justice", 720 ILCS 5/31-5 "Concealing or aiding a

fugitive", 720 ILCS 5/30-1 "Treason", (720 ILCS 5/1-4 "Civil remedies preserved").

Supplemental jurisdiction of this District Court, as continuance of case No. 00C 6818, as

to Defendants STATE OF ILLINOIS, MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN

LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR.

EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER, and the

UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, is invoked under 28

U.S.C. § 1367 "Supplemental jurisdiction", Rule 60(b)(4),(6) "Relieve from Judgment or Order:

the judgment is void or voidable; any other reason justifying relieve from the operation of the

judgment" on bases that what was done to Plaintiff is a continuance of creating, harboring,

concealing and aiding Nazi style criminals, and for such crimes, Plaintiff was subjected to by

Defendants, United States Government was hanging Nazis in late 1940s as presented further in

this Complaint; and Rule 19(a)(2)(ii) "Joiner of Persons Needed for Just Adjudication; leave any

3

of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed obligations" of the Federal Rules of Civil Procedure for the prosecution of federal claims filed in Northern District of Illinois Eastern Division on November 1, 2000 as case No. 00C 6818, fraudulently dismissed by Defendant UNITED STATES through excessive force and battery, in conspiracy with the Defendants STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, against the Plaintiff by means of subversion of the judicial process

violating Illinois criminal laws 720 ILCS 5/31-4 "Obstructing justice", 720 ILCS 5/31-5 "Concealing or aiding a fugitive", federal civil laws applicable in Illinois 42 U.S.C. § 1983 "Civil action for depravation of rights", 42 U.S.C. § 1985(3) "Conspiracy to interfere with civil rights - Depriving persons of rights or privileges",

violating Illinois criminal laws 720 ILCS 5/30-1 "Treason", Illinois civil laws 735 ILCS 5/13-212 "Physician and hospital", 735 ILCS 5/13-215 "Fraudulent concealment", federal laws 42 U.S.C. § 1988 "Proceedings in vindication of civil rights",

and on points of law which constitute acts of treason against the United States under Article 3, Section 3 of the Constitution.

The claims of this action within original jurisdiction arose out of the claims of supplemental jurisdiction, case No. 00C 6818, which form part of the same case or controversy under Article 3 of the United States Constitution.

## **PARTIES**

2. The Plaintiff, BART A. ROSS at all times material hereto, was and is a citizen of the United States and of the State of Illinois, and permanent resident of City of Chicago, Cook

4

County, State of Illinois and the Northern District of Illinois.

3. The Defendant UNITED STATES at all times material hereto, portended and otherwise informed the public, and in particular the Plaintiff BART A. ROSS, that it possessed/possesses the requisite laws, courts and other facilities, equipment, skills, competence and know-how through the Government and its elected and appointed officials and other personnel, and in particular the President, the Congress, the Supreme Court, the Court of Appeals for the Seventh Circuit, the District Court for the Northern District of Illinois Eastern Division, to provide protection of civil rights secured by the Constitution of the United States to the citizens of the United States, and in particular to the Plaintiff BART A. ROSS.

4. The Defendants BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON at all times material hereto, were law firms, duly licensed in the State of Illinois, and held themselves out to be law firms, and were engaged in the practice of their profession in the City of Chicago, County of Cook, and the State of Illinois.

5. The Defendant STATE OF ILLINOIS under primary and under supplemental jurisdiction, formerly case No. 00C 6818, at all times material hereto, was/is an autonomous State within the Federation of the States of the United States, and held itself out to the public, and in particular to the Plaintiff BART A. ROSS, to be a legal entity represented by the Governor, the General Assembly, the Illinois Supreme Court, the Appellate Court First District Second Division, the Circuit Court of Cook County, Illinois, the Court of Claims, State of Illinois Judicial Inquiry Board, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, Illinois Department of Professional Regulation, and further portended and otherwise informed the public, and in particular the Plaintiff BART A. ROSS, that it possessed the requisite laws, courts and other facilities, equipment, skills,

5

competence and know-how through the Government and its elected and appointed officials and other personnel, and in particular the Governor, the General Assembly, the Illinois Supreme Court, the Appellate Court First District Second Division, the Circuit Court of Cook County, Court of Claims, State of Illinois Judicial Inquiry Board, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, Illinois Department of Professional Regulation, to provide protection of civil rights secured by the Constitution of the United States and Constitution of the State of Illinois to the citizens of the United States and of the State of Illinois, and in particular to the Plaintiff BART A. ROSS.

6. The Defendants MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT and BARRY BOLLINGER (under supplemental jurisdiction, formerly case No. 00C 6818) at all times material hereto, were attorneys, duly licensed in the State of Illinois, and held themselves out to be attorneys, and were engaged in the practice of their profession in the City of Chicago, County of Cook, and the State of Illinois.

7. The Defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG and DR. HOWARD KOTLER (under supplemental jurisdiction, formerly case No. 00C 6818) at all times material hereto, were physicians, duly licensed in the State of Illinois, and held themselves out to be physicians, and were engaged in the practice of their profession in the City of Chicago, County of Cook, and the State of Illinois.

8. The Defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS (under supplemental jurisdiction, formerly case No. 00C 6818) at all times material hereto, was duly engaged as a hospital and conducting hospital, nursing and associated services while maintaining its facilities at Chicago, Illinois.

9. At all times material hereto, the Defendants UNITED STATES, STATE OF ILLINOIS, MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER, UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS and each of them, owed a duty of a reasonable care to Plaintiff in the performance of their duties and not violate the civil rights of Plaintiff, as well as a duty to prevent other Defendants from violating Plaintiff's civil rights.

## I. FACTS

10. That to provide consistent chronological and easy to follow sequence of events giving rise to this lawsuit against the UNITED STATES, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON under primary jurisdiction, and against remaining Defendants under supplemental jurisdiction:

(a) That "Facts" against the UNITED STATES, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON of denying Plaintiff access to federal courts to have his suit 00C 6818 adjudicated upon merits are stated in following part "C", paragraphs 59 through 104 (pages 25-60), which together with "Facts" stated in parts "A. Facts against Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS" and "B. Facts as to Defendants STATE OF ILLINOIS, O'LEARY, KRAUSE, BOLLINGER, LYSAUGHT, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS" form the facts for the claims.

7

That Plaintiff's claims under primary jurisdiction against the UNITED STATES, STATE

OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON are

stated in Counts VI-VII (pages 90-124).

(b) That following part "A. Facts against Defendants DR. BRIELE, DR.

GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE

UNIVERSITY OF ILLINOIS", paragraphs 13 through 20 (pages 10-13), state facts of violation

of Plaintiff's federally protected civil rights during medical treatment giving rise to lawsuit 00C

6818, Counts I, III-IV, and giving rise to supplemental jurisdiction of this suit together with facts

provided in part "B. Facts as to Defendants STATE OF ILLINOIS, O'LEARY, KRAUSE,

BOLLINGER, LYSAUGHT, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR.

WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS" and part "C",

"Facts as to Defendant UNITED STATES, STATE OF ILLINOIS, BOLLINGER, RUBERRY &

GARVEY and HINSHAW & CULLBERTSON."

That Plaintiff's claims under supplemental jurisdiction against Defendants DR. BRIELE,

DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF

THE UNIVERSITY OF ILLINOIS are stated in Counts I-II (shortened).

(c) That following part "B. Facts as to Defendants STATE OF ILLINOIS,

O'LEARY, KRAUSE, BOLLINGER, LYSAUGHT, DR. BRIELE, DR. GALINSKY, DR.

BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF

ILLINOIS", paragraphs 21 through 58, pages 13-25, state facts of violation of Plaintiff's civil

rights of denying access to State courts to have adjudicated upon merits claims of medical

malpractice committed by Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER,

DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS, giving

8

rise to lawsuit 00C 6818, Counts V through VIII, and giving rise to supplemental jurisdiction of this suit together with facts provided in parts "A. Facts against Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS" and "C. Facts as to Defendant UNITED STATES, STATE OF ILLINOIS, HINSHAW & CULLBERTSON and BOLLINGER, RUBERRY & GARVEY".

That Plaintiff's claims under supplemental jurisdiction against the Defendants STATE OF ILLINOIS, O'LEARY, KRAUSE, BOLLINGER, LYSAUGHT, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS are stated in Counts III-V.

11. That attached to this Complaint are BART A. ROSS' Affidavit as last pages 126-127 of this Complaint, Exhibit "A" - Motion to Reinstate Rule 60(b); Exhibit "B" - Memorandum of Law Supporting Motion to Reinstate Rule 60(b), Exhibits "App.5-726", Exhibits "C - Lawyers' Responses", where

Exhibits App.5-321 supported Appellants' Brief in Court of Appeals, selected part of which supports Motion to Reinstate Rule 60(b) Exhibit "A") as referred to them in the motion and support Brief - Memorandum of Law in Support of Motion Rule 60(b) (Exhibit "B"),

that additional Exhibits App.322-645 support Motion to Reinstate Rule 60(b) and Memorandum, and that additional Exhibits App.646-726 support this Complaint.

(a) That Complaint, Case No. 00C 6818, is attached as Exhibits App.325-422 without supporting/attached Exhibits numbered (A5) through (A752) (Exhibit App.328, "Fact 9") for the reason of the cost (being too bulky). That many of the Exhibits App. 5-726, Exhibits "C" and Exhibits "D" attached to this Complaint, were attached to Complaint, case No. 00C 6818 under different numbers, and some selected Exhibits (A5) through (A752) referred to in this Complaint

9

are additionally indexed as Exhibits App.*** and referred to attached Exhibits App.5-726.

(b) That the attached Exhibits Motion to Reinstate Rule 60(b), Memorandum in Support of Motion to Reinstate Rule 60(b) and Exhibits App.5-726 attached to this Complaint are supported by BART A. ROSS affidavit as part of this Complaint, pages 126-127.

12. That Plaintiff incorporates, in this Complaint, by reference the Complaint, case No. 00C 6818 (Exhibit App.325-422), paragraphs 1-207 as and for paragraphs $1^{00C\ 6818}$ through 207 $^{00C\ 6818}$, as though fully set forth herein, and further,

that facts, counts, claims, etc. of this Complaint which are repeated here from the Complaint, case No. 00C 6818, have assigned numbers "X" (12, 13, and so on) designated as parts (facts, counts, claims, etc.) of this Complaint, and, in addition are marked with "(Y $^{00C\ 6818,\ fact,\ count,\ claim,\ etc.}$)", where "Y" is number of fact, count, claim, etc. or its part, of the Complaint, case No. 00C 6818.

## A. Facts against Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS of violation of Plaintiff's federally guaranteed civil rights during medical treatment giving rise to lawsuit 00C 6818, Counts I, III-IV, and giving rise to this suit, Counts I-II, under supplemental jurisdiction (together with facts stated in parts "B" and "C")

13 - ($10^{00C\ 6818,\ fact}$). "Between July 10, 1992 and June 2, 1993, defendants Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler cared for and attended plaintiff, Bart A. Ross at the University of Illinois at Chicago Hospital and Clinics, for squamous cell carcinoma of the floor of the mouth, then continued at the University of Illinois at Chicago Hospital and Clinics by other physicians until March 1995."

14 - ($16^{00C\ 6818,\ fact}$). That "...on July 10, 1992... Dr. Briele told plaintiff immediately "You have cancer". Plaintiff asked Dr. Briele "How do you know, there are no results of biopsy yet?"

Dr. Briele answered that "I work with such problems and I know when I see one". Then Dr. Briele told plaintiff "Such cancers are curable", and then he said "Such cancers are treated by radiation. Surgery would be too devastating functionally and cosmetically.""

15 - (48 $^{00C\ 6818,\ fact}$). That "Plaintiff questioned on June 2, 1993 Dr. Galinsky **(A400-401)** [Exhibit App.245] to find out if his treatment was done correctly. Dr. Galinsky fraudulently concealed fact that radiation therapy was primary treatment **(A160)** [Exhibit App.51] and did not disclose any other negligence, and fraudulently told plaintiff that they thought it was ulceration and that they were reluctant to do biopsy sooner to avoid osteoradionecrosis..."

16 - (56 $^{00C\ 6818,\ fact}$). That "On about September 30, 1996, plaintiff obtained affidavit of Dr. Ward **(A374)** [Exhibit App.104] and about November 5, 1996 affidavit of Dr. Laursen **(A349)**..." [Exhibit App.98]

17 - (57 $^{00C\ 6818,\ fact}$). That "Affidavit of Dr. Laursen **(A349)** [Exhibit App.98] allowed plaintiff understand that defendants Dr. Briele, Dr. Galinsky, Dr. Brunngraber, Dr. Wenig, Dr. Kotler and University of Illinois Hospital fraudulently subjected plaintiff to combined radiation therapy and surgery combined as official treatment modality of his cancer without plaintiff's knowledge and consent, and on about January 19, 1997, plaintiff for the first time was able to decipher record of August 18, 1992 **(A160)**: "Plan continues with primary treatment with radiation"." - [Exhibit App.51]

18 - (58 $^{00C\ 6818,\ fact}$). That "After obtaining affidavits of Dr. Ward and Dr. Laursen, plaintiff saw attorney Herzl Levine **(A75)**, who had exactly the same problem as plaintiff, and was treated by the defendant Dr. Wenig. His all side effects were a small denture of a few lower incisor teeth."

11

19 - (59 $^{\text{OOC 6818, fact}}$). That "As a direct and proximate result of hereinabove described conduct plaintiff suffered and/or suffers:

(a) radical wide marginal mandibulectomy from molar to molar, a skin graft, a tracheostomy, and wide surgical resection of the floor of mouth and tongue after radiation therapy, as evidenced by Exhibit **(A202-203)**;

(b) facial disfigurement **(A207)**, including loss of about 1/2 inch of the height of his lower jaw and about 40% of the muscle amount of his anterior chin and lower lip until present, and that this process is progressing increasing dysfunctionality of plaintiff's mouth and increasing disfigurement of plaintiff's face;

(e) loss of all lower and loss of all upper teeth, dryness in mouth;

(h) being liable, for substantial hospital and medical bills and expenses, and other like expenses;

(j) disability after the surgery of April 15, 1993 applied retroactively since 1992 **(A206, A247a; A189 and A186-187)** continuing until present.

(l) being permanently impaired from pursuing his usual and ordinary activities and being impaired and deprived in the future from the ability to perform such usual and ordinary activities; all to plaintiff's detriment, instead of:

(1) treating plaintiff with very limited surgery, as established by affidavit of Dr. Laursen **(A349 at A350 and A715j at A715k)** [Exhibit App.98, 164], resulting in plaintiff's sickness lasting maximum 2 to 3 months, and eventually losing at most a few lower incisor teeth (paragraph 58). It is a common knowledge that injury without radiation, e.g. broken leg causes disability lasting weeks only; or

(2) treating plaintiff with external radiation only, as established by affidavits of Dr. Ward **(A374 at A376-77 and A715d at A715g)** [Exhibits App.104, 159], without removal of any plaintiff's teeth resulting in plaintiff's sickness about 4 months only. This assertion is based upon fact that after treatment by radioactive implant ended on October 16, 1992, pain came down in 2 months to the point that plaintiff began to work at the end of December 1992, and also Dr. Galinsky in his report to Social Security provided that plaintiff was sick until January 1, 1993 **(A186-187)** [Exhibit App.54-57], this is 2-1/2 months after completion of radioactive treatment.

20 - (60 [00C 6818, fact]). That "Aforesaid facts, together with affidavits of Dr. Ward **(A374 and A715d)** [Exhibits App.104, 159] and Dr. Laursen **(A349 and A715j)** [Exhibits App.98, 164], established that plaintiff was subjected to radiation therapy as primary treatment to be followed by surgery without his knowledge and consent, and established that treating him defendants Dr. Briele, Dr. Galinsky, Dr. Brunngraber, Dr. Wenig, Dr. Kotler and the University of Illinois at Chicago Hospital and Clinics subjected plaintiff to excessive force and battery..."

**B.** **Facts against Defendants STATE OF ILLINOIS, O'LEARY, KRAUSE, BOLLINGER, LYSAUGHT, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and HOSPITAL OF THE UNIVERSITY OF ILLINOIS of violation of Plaintiff's federally guaranteed civil rights of denying access to State courts giving rise to lawsuit 00C 6818, Counts V-VIII, and giving rise to this suit under supplemental jurisdiction, Counts III-V (together with facts stated in parts "A" and "C")**

21 - (62 [00C 6818, fact]). That "To file a case of medical malpractice Illinois law requires plaintiff to obtain health care professional report/affidavit pursuant to section 2-622 of the Illinois Code of Civil procedure (735 ILCS 5/2-622)."

That Plaintiff corrects above statement cited word for word from Complaint, case No.

13

00C 6828 to read, that "To maintain a case of medical malpractice Illinois law requires plaintiff to obtain health care professional report pursuant to section 2-622 of the Illinois Code of Civil procedure (735 ILCS 5/2-622), and requires to obtain affidavit to prevent dismissal of the suit upon motion for summary judgment supported by defendants-doctors own affidavits, which, like in Plaintiff's case were perjurious (Exhibits App.88-92; 93-95 of 86-96), they withdrew (Exhibit App.97) after I filed Dr. Laursen's affidavit, Exhibit App.98"

22 - (65 $^{00C\ 6818,\ fact}$). That "Plaintiff contacted prior to filing and after filing of the Complaints altogether over 100 attorneys and about 200 physicians and or medical centers across the State of Illinois and the Continental United States, including Alaska, to no avail. Some of the attorneys plaintiff saw told him, if you find a doctor to support your case I will take it, and on the other hand some of the physicians plaintiff contacted were telling plaintiff "get a lawyer and he will find you a doctor". Some doctors plaintiff saw provided information to plaintiff that they would be willing to talk to a lawyer, i.e. Dr. Wilson **(A226)**."

23 - (66 $^{00C\ 6818,\ fact}$). On March 8, 1995, plaintiff saw radiation therapist Dr. Melian from Loyola University Hospital through a lawyer Richard Berdelle **(A44)** - [Exhibit C.12-13]. Dr. Melian refused to acknowledge discrepancy between x-rays of the simulated radioactive implant Ir-192 inserted in plaintiff's jaw and photograph **(A568-569, A578; and A583c)**, and denied any negligence.

24 - (68 $^{00C\ 6818,\ fact}$). That "On about May 2, 1995, plaintiff saw Dr. Schabinger, who provided report **(A214-218)**, which allowed plaintiff to understand fraud and wrongs of the radioactive implant Ir-192 treatment and that surgery of April 15, 1993 was too extensive. Plaintiff supplemented this report with extensive documentation of the fraud and medical literature."

14

25 - (69 [00C 6818, fact]). That "On about September 3, 1995, plaintiff saw Dr. Weichselbaum at the University of Chicago, at the time when he understood all the fraud with the radioactive implant Ir-192, after consultation with Dr. Schabinger on about May 2, 1995, what plaintiff explained to him. Dr. Weichselbaum in presence of Dr. Bradley told plaintiff that he would talk to a lawyer. Plaintiff said "Lawyers are telling me to get a doctor and doctors are telling me to get a lawyer". It did not change his attitude."

26 - (70 [00C 6818, fact]). That "On September 25, 1995, plaintiff saw Dr. Lobo from Arlington Highs Community Hospital, who after realizing himself that plaintiff understands all the wrongs with the implant said "Don't expect from a community hospital any help, seek help from Northwestern or Chicago University"."

27 - (71 [00C 6818, fact]). That "Northwestern University's Dr. Mital refused to review plaintiff's records in May 1995, then on October 5, 1995 and on November 29, 1995. Plaintiff saw on November 29, 1995 Ms. Katherine Johnson in the office of vice president, where she, after plaintiff's presenting the fraud in radiation treatment and saying "Somebody has to address the issues of my treatment", told plaintiff "I promise to find a willing doctor", but about a half an hour later plaintiff has got a message on his answering machine "General Counsel has the same opinion as Ms. Johnson and the Northwestern University cannot provide an expert"."

28 - (72 [00C 6818, fact]). That "On November 29, 1995, Dr. Shirazi from Little Company of Hart Hospital gave plaintiff a letter stating that he cannot provide any opinion (A232)."

29 - (74 [00C 6818, fact]). That "Prior to and after filing of the Complaint, some of the lawyers, plaintiff talked to, reviewed his medical record with physicians, however, even those lawyers (A44, A72, A80) [Exhibits C-12, 40, 47] were not able to obtain report as to any negligence in plaintiff's treatment and even provided such information to Circuit Court, Judge Hogan presiding

15

**(A262-263)...**"

30 - (75 [OOC 6818, fact]). That "Plaintiff traveled about 5,000 miles to see physicians to review his medical record for legal purposes. Plaintiff traveled about 10 times to Milwaukee, Wisconsin, once to Madison, Wisconsin, once to Cleveland, Ohio, once to Peoria, Illinois, once to New York City, New York, once to Dallas, Texas, once to Houston, Texas, once to Corpus Christi, Texas among numerous other places within State of Illinois, and once to Gary, Indiana;"

31 - (76 [OOC 6818, fact]). That "Since about August 10, 1994, after discovering discrepancy between x-rays of implant and photograph of plaintiff's face with the implant, plaintiff contacted all Chicagoland Bar Associations, Government **(A94-108)** seeking review of his medical record, to obtain legal counsel or information as to administrative procedures in courts, and demanding due process to no avail. The legal assistance offices provided by the Government asked plaintiff first what type of case, and to plaintiff's response "medical malpractice" provided only one information "you need an attorney"."

32 - (79 [OOC 6818, fact]). That "Plaintiff obtained affidavits of Dr. Ward **(A374)** [Exhibit App.104] and Dr. Laursen **(A349)** [Exhibit App.98] only due to a bit of luck... and defendants withdrew their motion for summary judgment and supporting perjurious affidavits of Dr. Galinsky and Dr. Wenig on November 25, 1996 **(A326)**." - Exhibit App.97.

33 - (80 [OOC 6818, fact]). That "After obtaining affidavits of Dr. Ward on about September 30, 1996 **(A374)** [Exhibit App.104] and Dr. Laursen on about November 5, 1996 **(A349)** [Exhibit App.98] lawyers still refused to take plaintiff's case, one example as **(A92)**." - Exhibits C-52-59.

34 - (81 [OOC 6818, fact]). That "On April 11, 1995, plaintiff filed timely Complaint *pro se* without required physician's affidavit pursuant to Section 2-622 of the Illinois Code of Civil Procedure against treating him physicians Dr. Briele, Dr. Galinsky, Dr. Brunngraber, Dr. Wenig

and Dr. Kotler **(A248)** [Exhibit App.646-649], and on April 12, 1995 against the University of Illinois Hospital and Clinics at Chicago **(A704-705)**."

35 - (89 [00C 6818, fact]). That "On June 5, 1996, defendants refilled Motion for Summary Judgment supported by affidavit of defendant Dr. Galinsky only denying any negligence in plaintiff's treatment by himself and Dr. Brunngraber."

36 - (90 [00C 6818, fact]). That "On July 11, Circuit Court, Judge Bronstein presiding admitted sufficiency of Dr. Bruckman's section 2-622 report as to all defendants **(A276 at A278)**, and allowed deposition of defendant Dr. Galinsky, however, denied plaintiff deposition of any other defendants physicians **(A279)**."

37 - (91 [00C 6818, fact]). That "On June 19, 1996, plaintiff took evidence deposition of defendant radiation therapist Dr. Galinsky. During deposition Dr. Galinsky denied relevancy of discrepancy between x-rays of implant Ir-192 inserted in plaintiff's jaw and photograph of the implant, and denied falsification of x-rays of the implant **(A280 at A287-289)**, admitted that radiation therapy failed in the area of lower radiation level, however, denied that delivered level of radiation to plaintiff's tumor bellow curable level **(A280-297 at A293)** and denied any negligence by himself and Dr. Brunngraber **(A280 at A297)**. The relevancy of discrepancy between x-rays of implant Ir-192 and photograph in relation to radiation failure is explained at **(A568 through A583e at A583c)**"

38 - (92 [00C 6818, fact]). That "On July 18, 1996 Circuit Court, Judge Bronstein presiding denied plaintiff deposition of hostile expert witness Dr. Schabinger **(A300)** and continued on August 20, 1996 **(A307)** and August 22, 1996 based upon argument of "harassment of the physician" **(A302-305 at A304; A309-315 at A314)** - Exhibits App.74, 81.

39 - (93 [00C 6818, fact]). That "On August 20, 1996, Circuit Court, Judge Bronstein presiding, after denying plaintiff subpoena of a hostile expert witness Dr. Schabinger for the 2nd time, based upon argument of harassment of the physician as aforesaid in paragraph 92 [00C 6818, fact], deprived plaintiff access to medical and other records together with Eileen Lysaught, Barry Bollinger and University of Illinois Hospital through excessive force and battery **(A302 at A305-305c)** - Exhibit App.75-78.

40 - (94 [00C 6818, fact]). That "Plaintiff was denied change of venue twice on July 17, 1996 and August 22, 1996 by Circuit Court of Cook County, Judge Donald O'Brien presiding, in spite of Circuit Court, Judge Bronstein's open railroading plaintiff's case toward dismissal **(A299, A308)**"

41 - (96 [00C 6818, fact]). That "On August 8, 1996 and August 16, 1996 plaintiff filed twice Notice of Unconstitutionality of Section 2-622 of the Illinois Code of Civil Procedure **(A108)**."

42 - (97 [00C 6818, fact]). That "On August 22, 1996, Judge Bronstein changed his position and was willing to allow plaintiff deposition of expert witness Dr. Schabinger. However, defendants' attorney disclosed that she was tempering with plaintiff's consulting physicians/hostile experts witnesses..., and on about September 23, 1996, attorney Mark Schwartz, Dr. Schabinger referred plaintiff to himself on July 1, 1996 **(A222b)** refused to take plaintiff's case after about 8 weeks of consideration **(A222c)**." - Exhibits App.60-61.

43 - (98 [00C 6818, fact]). That "On September 6, 1996, defendants filed Motion for Summary Judgment supported by sworn to affidavits of Dr. Galinsky and Dr. Wenig **(A316-325)** [Exhibits App.86-96] denying any negligence as to all defendants **(A322 and A325)** [Exhibits App.88 at 92, 93 at 96]. Defendants withdrew these affidavits together with the Motion for Summary Judgment on November 25, 1996 **(A326)** [Exhibit App.97] after plaintiff filed affidavits of Dr. Ward **(A374)** [Exhibit App.104] and Dr. Laursen **(A349)** [Exhibit App.98] on October 11, 1996

and November 15, 1996."

44 - (99 [00C 6818, fact]). That "On January 4, 1997, plaintiff signed contract with attorney Margaret M. O'Leary to prosecute his all claims **(A352)**." - Exhibit App.101.

45 - (101 [00C 6818, fact]). That "...It took toll on plaintiff total physical exhaustion resulting from 4-1/2 years *"suffering one of the most agonizing imaginable"* **(A238 at A239)**, suffering *"debilitating and painful"* **(A610 at A611)** and psychological and emotional exhaustion after over 3-1/2 years of "making water of plaintiff's brain" by medical and legal communities, and the Government **(A5-118)**,

and, as the result, it took plaintiff about half a year to understand, that attorney Margaret O'Leary fraudulently did not include in the Amended Complaint original allegations of surgery, changed date of last treatment by Dr. Galinsky from June 2, 1993 [Exhibit App. 648] to "On and before April 15, 1993"[Exhibit App.103],... did not plead fraudulent concealment, did not allege that plaintiff was subjected to radiation therapy as primary treatment without his knowledge and consent [Exhibit App.423-427], did not plead continuous negligent treatment, did not plead discovery rule, did not support allegations of Counts 2, 4, and 6 with proper language "that reasonable physicians would have informed patient/plaintiff of the consequences of the procedure" in attorney's affidavit section 2-622 supporting Amended Complaint, and restricted allegations of injuries to the plaintiff **(A354-381 and A248-257)**." - Exhibit App.423-427.

46 - (102 [00C 6818, fact]). That "Defendant Margaret O'Leary suppressed depositions of the plaintiff and of the defendants-physicians agreed to by defendant Michael Krause **(A750-752)**"

47 - (103 [00C 6818, fact]). That "On April 22, 1997 and May 28, 1997, defendants filed Motion to Dismiss **(A385-401)** and Response Brief in Support of Motion to Dismiss **(A440-446)** alleging that plaintiff did not plead "continuous negligence treatment" doctrine **(A442)**, did not plead

19

discovery rule, and supported by not sworn to and not notarized affidavits-writings, not denying

any negligence **(A443-445)** [Exhibits App.121, 654, 655], and report of plaintiff's follow up with

Dr. Galinsky on June 2, 1993 as Exhibit "F" **(A400)**." - [Exhibit App.245]

48 - (104 ᴼᴼᶜ ⁶⁸¹⁸˙ ᶠᵃᶜᵗ). That "Representing plaintiff attorney Margaret O'Leary struck

Exhibit "F" of defendants' Motion to Dismiss **(442, par. 8, A406-407)** [Exhibit App.243], the

record of plaintiff's follow-up with Dr. Galinsky on June 2, 1993 **(A400-401)**." - [Exhibit

App.245].

49 - (106ᴼᴼᶜ ⁶⁸¹⁸˙ ᶠᵃᶜᵗ). Circuit Court, Judge Bronstein presiding after improperly denying

relation back disallowed also discovery rule as to Counts against Wenig and Kotler, and allowed

to amend only Counts 1, 3 and 5 to plead discovery rule:

> MS. O'LEARY: ...with reference to Wenig and Kotler could he have leave to amend to
> plead the discovery rule as to those?
> ...
> THE COURT: As to relation back issue I don't understand what you mean by the
> discovery rule. I didn't even mention the discovery rule. **(A425)**
> MS. O'LEARY: I understand that... you're striking the counts against Wenig and Kotler
> because they do not relate back to the original filing.
> THE COURT: That's right.
> MS. O'LEARY: Mr. Ross did not discover until subsequent to the two year Statute of
> Limitations this issue that is stated in these two counts...
> THE COURT: ...I just don't see the application -- at this point I'm simply going to dismiss
> those counts with respect to Wenig and Kotler. **(A425-426)**, then
> ...
> THE COURT: With respect to Counts 1, 3 and 5 I think that's Brunngraber, Briele, and
> Galinsky I have affidavits indicating the treatment being completed on X dates. I've got
> an allegation in the complaint that's very vague as to dates. Moreover I have nothing in --
> no allegations pleading the discovery rule in the complaint, and no counter affidavit to
> dispute what Galinsky, Briele and Brunngraber tell me in their affidavits. I'm going to
> grant the motion, but I'm going to grant you leave to amend the complaint with respect to
> I think that's again 1, 3 and 5 to state the discovery rule, or in some fashion -- really to
> plead the discovery rule. **(A428)** - Exhibit App.114
> MS. O'LEARY: Judge, you cannot have -- a cause of action does not accrue until there's
> injury. The injury was April 15th. **(A428)** - Exhibit App.114
>> MS. O'LEARY: ...when he had this disfiguring surgery... **(A413)**; ...Their
>> negligence occurred during the time periods they described in their affidavits,

**(A416)** [Galinsky until February 17, 1993; Briele November 18, 1992; Brunngraber March 31, 1993 **(A443-446)**]; ...which your Honor said he wanted to take with the case. **(A412)**

MR. KRAUSE: ...They blew the Statute of Limitations... Obviously we're going to want to reply. I know you're giving leave, and I think we have basis to argue that you cannot allege the discovery rule two years after the date of filing. We just want an opportunity to respond to their amended complaint as to only those three doctors.

THE COURT: You will get a chance to. **(A430-431)**

[continued by MS. O'LEARY at **(A428)**]

There is no cause of action when you have no injury. People come and say, well, I got sloppy medical care, I got bad medical care. So what you're fine. There is no cause of action just because there was negligence. **(A428)** - Exhibit App.114

THE COURT: Then maybe you need to flesh out the allegations of negligence so I understand that. I don't understand that from the complaint, and I'm giving you leave to amend. **(A429)** - Exhibit App.115

50 - (107 $^{00C\ 6818,\ fact}$). That "On July 3, 1997 hearing Circuit Court, Judge Bronstein presiding, and defendants O'Leary and Krause made preparations as described in aforesaid paragraphs 99 $^{[00C\ 6818,\ fact]}$ through 106 $^{[00C\ 6818,\ fact]}$, and then discussed how to dismiss plaintiff's entire cause with prejudice.

Beginning at **(A432)**

MR. KRAUSE: Can you look at paragraph 4 on this. It's regarding the amendment at issue. I thought I tracked the language of what you told me.

MS. O'LEARY: You gave me leave to amend. I assert discovery rule is not applicable to this. You said flash out what you're talking about when you file the amended complaint.

THE COURT: Right.

MS. O'LEARY: You don't --

THE COURT: If I find the discovery rule is applicable, you don't plead it. I suppose you have got your appeal, right?

MS. O'LEARY: Right.

MR. KRAUSE: If they don't plead it then we would just come back here on the same motion. - Exhibit App.116

(106 $^{00C\ 6818,\ fact}$) MR. KRAUSE: ...They blew the Statute of Limitations... Obviously we're going to want to reply...

THE COURT: You will get a chance to. **(A430-431)**

THE COURT: That's right.

MR. KRAUSE: Is that what you want us to do?

21

> THE COURT: Well, I suspect it's the discovery rule in some fashion or in some fashion this case is going to be pled so that I understand --
> MR. KRAUSE: How do you want that to read?
> THE COURT: I'm granting it with leave to replead.
> MS. O'LEARY: Within twenty-eight days and the forth paragraph is eliminated.
> MR. KRAUSE: Okay. That's fine. **(A432-433)** - Exhibit App.116-17
> THE COURT: I think there are no pending counts as to Wenig and Kotler. They were all informed consent.
> MS. O'LEARY: That's correct... **(A434)**" - Exhibit App.118

51 - (108 [OOC 6818, fact]). That "After dismissal of plaintiff's cause on July 3, 1997, plaintiff suspended his attorney Margaret O'Leary and she withdrew herself, and plaintiff took back his court's papers."

52 - (109 [OOC 6818, fact]). That "In Motion for Reconsideration, plaintiff pleaded "continuous negligent treatment" doctrine **(A448 at 451)**, statute of limitations **(A451-451a)**, and fraudulent concealment section 735 ILCS 5/13-215 **(A449, Part B, par. 1 and A451a)**."

53 - (112 [OOC 6818, fact]). That "On appeal **(A720-735)** plaintiff pleaded fraudulent concealment 735 ILCS 5/13-215, and continuous negligent treatment pursuant to Illinois Supreme Court decision in <u>Cunningham v. Huffman</u>, (1993), 154 Ill.2d 398 at 405, **(A531-533)** and

> (c) If the physician should purposely conceal the discovery of the negligence, however, neither the statute of limitations nor the statute of repose is triggered. In the cases of nondisclosure, the fraudulent concealment provision in section 13-215 of the Code efforts the patient five years after discovery of the cause of action to commence the suit. Cunningham v. Huffman (1993), 154 Ill.2d 398 at 407 **(A533)**, and

54 - (113 [OOC 6818, fact]). That "The Appellate Court denied plaintiff fraudulent concealment and suppressed the evidence of conspiracy to dismiss plaintiff's cause

> "Ross now argues that the trial court and defendants conspired with Ross' attorney to get his complaint dismissed. He asks this court to reinstate the original counts against

Kotler and Wenig. The record provides no support for the aspersions Ross casts on his counsel and the trial court." **(A659)** - Exhibit App.132 at 138

and

Ross next quotes a discussion between the court and both attorneys concerning the phrasing summarizing the court's rulings. Defense counsel drafted the order, as required by Supreme Court Rule 271 (134 Ill. 2d R. 271). Because the order needed to reflect the court's rulings, counsel asked the court what the court wanted the order to say. Defense counsel's question, "Is that what you want us to do?", in this context, is only an appropriate request for directions for drafting the order. The attorney who represented Ross objected to the fourth paragraph of the draft order. The court agreed with her and directed defense to eliminate that paragraph of the order. The parties discussed only the paragraphs of the draft order, not any paragraphs of the complaint or the amended complaint. The passages Ross quotes show good, effective work his attorney did in her effort to protect his rights. The passages lend no support at all to his argument that she conspired against him. **(A665-666)**..." - Exhibit App.142-143

55 - (115 [00C 6818, fact] . That "The Supreme Court of Illinois suppressed conspiracy and abuse of the power of the office to dismiss plaintiff's claim and did not allow plaintiff even to appeal **(A643)**." - Exhibit App.131.

56 - (117 [00C 6818, fact]). That "On about September 5, 1999, plaintiff discovered preparation worksheet of Second Amended Complaint made by defendant Margaret O'Leary **(A436-437)**." - Exhibit App.119-120.

57 - (120 [00C 6818, fact]). That "On September 15, 2000, Illinois Court of Claims terminated, without dismissing or otherwise ruling as to Respondent/Defendant the University of Illinois at Chicago Hospital and Clinics. Plaintiff's Complaint against University of Illinois at Chicago Hospital and Clinics was converted as against Board of Trustees of the University of Illinois **(A704-717 at A716-717)** [Exhibit App.167], in violation of the Rules and Statutes of the Illinois Court of Claims, Section 790.20 and Illinois Code of Civil Procedure, Section 2-104, and against plaintiff's multiple times raised such legal arguments.

(a) Plaintiff filed his Complaint at Law against University of Illinois at Chicago

Hospital and Clinics on April 12, 1995 improperly in the Court of Claims **(A704)** [Exhibit App.147]. However, the law is clear. Section 790.20 of the Court of Claims Rules provides:

> Section 790.20. Pleadings and Practice. Except as herein otherwise provided, pleadings and practice shall follow the Illinois Code of Civil Procedure (Ill. Comp. Stat. 1992, 735 ILCS 5/1-101 *et seq.*) and the revised Rules of the Supreme Court of Illinois (134 Ill.2d R.1 *et seq.*)

and the statute 735 ILCS 5/2-104 imposes the duty on defendant to move to transfer a cause of action to proper venue. Section 5/2-104 of the Code provides in relevant parts:

> § 2-104. Wrong venue-Waver-Motion to transfer. (a) ...No action shall abate or be dismissed because commenced in the wrong venue, if there is a proper venue to which the cause may be transferred; and (b) All objections of improper venue are waived by a defendant unless a motion to transfer to a proper venue is made by him on or before the date upon which he is required to appear...

(b) Defendants moved on December 19, 1996 to dismiss treating plaintiff physicians on bases of duplicative action **(A706)**, where in the title they acknowledged that the case is against the Hospital not against the Board of Trustees of the University of Illinois. Defendants failed to move to transfer the cause of action against the Hospital to the Circuit Court, and even on March 24, 1999 filed a paper called STATUS, where they pleaded: NOW COMES the Defendant, UNIVERSITY OF ILLINOIS CHICAGO HOSPITAL AND CLINICS... **(A709)** [Exhibit App.149];

(c) After signing Contract with plaintiff's on January 4, 1997, attorney Margaret O'Leary had plaintiff withdrew Motion for Transfer of the cause against Hospital to the Cook County Circuit Court, and the Court of Claims entered order on January 17, 1997 "This cause remain pending against the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS under name BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS" **(A708)**; then

24

(d) Court of Claims converted plaintiff's cause on December 15, 1999 to BART A. ROSS vs. STATE OF ILLINOIS **(A710)**; then converted on March 2, 2000 to BART A. ROSS vs. UNIVERSITY OF ILLINOIS AT CHICAGO AND CLINICS UNDER NAME OF THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS **(A711-712)**; then converted on March 30, 2000 to proper defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINIC **(A713-715),** and imposed on plaintiff to amend to some unspecified Respondent **(A713 at A715, par. B.)**;

(e) Plaintiff refused to voluntary dismiss his cause against UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS and amend to some unspecified Respondent **(A715a through 715-l)**; and finally

(f) The Court of Claims amended plaintiff's cause, without having such jurisdiction, in Order of September 15, 2000 to BART A. ROSS vs. THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS **(A716-717, par. A. and B.)** [Exhibit App.167] in violation of the Rules and Statutes of the Illinois Court of Claims, Section 790.20 and Illinois Code of Civil Procedure, Section 2-104, and against plaintiff's multiple times raised such legal arguments."

58. That stated above and remaining facts provided in the Complaint, case No. 00C6818, were supported by Plaintiff's affidavit, Exhibit App.223-227.

C. **Facts against Defendant UNITED STATES, BOLLINGER, RUBERRY & GARVEY, HINSHAW & CULLBERTSON and STATE OF ILLINOIS of violation of Plaintiff's civil rights of denying access to federal courts to have adjudicated upon merits his claims of violations of civil rights during medical treatment and denying access to state courts, giving rise to this suit under primary jurisdiction (together with facts stated in parts "A" and "B")**

59. That Plaintiff filed lawsuit of Fourteenth and Thirteenth Amendments civil rights depravation on November 1, 2000, case No. 00C 6818:

1. This action is brought pursuant to the Fourteenth Amendment; Thirteenth Amendment; Article 6; Article 3, Section 2 of the United States Constitution, and the laws of the United States, specifically 42 U.S.C. Section 1983, 1985(3), 1986, 1988 to redress depravation of civil rights of the plaintiff accomplished by acts or omissions of the defendants committed under color of state law, custom or usage. Jurisdiction is invoked under 28 U.S.C. Section 1331 and 1343...", Exhibit App.325-326

(a) That Counts I, III-IV [00C 6818, Counts] (Exhibits App.359-367, 370-377), repeated as Counts I and II of this Complaint, under supplemental jurisdiction, stated fully and properly claims of civil rights depravation, to be treated according to acceptable standard of medical care, and subjecting Plaintiff to radiation therapy as primary treatment requiring additional surgery without his knowledge and consent, through excessive force, battery and conspiracy, pursuant to 42 U.S.C. § § 1983, 1985(3), and as violating U.S. Food and Drugs Administration Regulation HHS, Part 50 (21 CFR Ch. 1 (4-1-99 Edition) in § 50.23.

That Count II [00C 6818, Count] pursuant to 42 U.S.C., § 1986, Plaintiff abandoned as untimely.

(b) That Count V [00C 6818, Count] (Exhibit App. 377-388), repeated as Count III of this Complaint under supplemental jurisdiction, stated claims of civil rights depravation of depraving Plaintiff access to State courts, to have his medical malpractice claims adjudicated upon merits, by the STATE OF ILLINOIS through excessive force and battery, pursuant to 42 U.S.C. § § 1983.

(c) That Counts VI-VII [00C 6818, Counts] (Exhibits App.388-417), repeated as Count IV of this Complaint under supplemental jurisdiction, stated claims of civil rights depravation of depriving Plaintiff access to State courts, to have his medical malpractice claims adjudicated upon merits, through conspiracy of all Defendants, pursuant to 42 U.S.C. § § 1983, 1985(3).

26

(d) That Count VIII <sup>00C 6818, Count</sup> (Exhibit App.417-421), repeated as Count V of this Complaint under supplemental jurisdiction, stated failure to prevent by all Defendants, of depriving Plaintiff access to State courts to have his claims of medical malpractice adjudicated upon merits, pursuant to 42 U.S.C. § § 1983, 1986.

60. That since about April 9, 1993 until about September 18, 2000, Plaintiff contacted over 100 attorneys, and those who responded refused to investigate and/or litigate for the Plaintiff his medical malpractice and or civil rights depravations claims (Exhibits "C");

61. That UNITED STATES represented by District Court denied Plaintiff's motion to appoint legal counsel to represent him in judicial proceedings, case No. 00C 6818 (Exhibit App.281 at 284).

62. That UNITED STATES denied Plaintiff's Motion Rule 56(f) (Exhibits App.196-201) to subpoena physicians to testify as to progressing devastation and necessary surgeries and medical treatments to stop progressing devastation of Plaintiff's jaw.

63. That Defendant BOLLINGER, RUBERRY & GARVEY filed on behalf of Defendants KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, HOSPITAL OF THE UNIVERSITY OF ILLINOIS, motion for summary judgment with supporting memorandum in lieu of answer to Plaintiff's Complaint, Case No. 00C 6818 (Exhibit App.180-185), and

that Defendant HINSHAW & CULLBERTSON filed on behalf of defendant O'LEARY filed motion for summary judgment with supporting memorandum in lieu of answer to Plaintiff's Complaint, Case No. 00C 6818 (Exhibit App.186-190).

64. That Defendants BOLLINGER, RUBERRY & GARVEY'S and HINSHAW & CULLBERTSON'S Facts pursuant to LR 56.1(a)(3), case No. 00C 6818, related to violations of

Plaintiff's civil rights by Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, HOSPITAL OF THE UNIVERSITY OF ILLINOIS during medical treatment, and by attorneys KRAUSE, LYSAUGHT, BOLLINGER, O'LEARY during judicial proceedings in state courts BOLLINGER, RUBERRY & GARVEY'S and HINSHAW & CULLBERTSON'S relied upon in their memorandum in support of motions for summary judgment, Exhibits App. 180 at 182-185 and App. 187 at 189-190:

(a) did not rebut sworn to testimony of Dr. Laursen, Dr. Ward and Plaintiff in their affidavits, Exhibits App.98, 159-163, 164-166, that Plaintiff was subjected to radiation treatment as primary without his knowledge and consent;

(b) were based upon cited state court's decisions, concealing subjecting Plaintiff to radiation treatment as primary requiring additional surgery without Plaintiff's knowledge and consent, and concealing conspiracy of all Defendants, including the STATE OF ILLINOIS, to deprive Plaintiff access to courts to have his claims adjudicated upon merits through excessive force and battery, Exhibits App.182-185, 189-190;

65. That in response to Defendants Statement (Facts) LR 56.1(a)(3) Plaintiff filed Statement of facts L. Rule 56.1(b)(3) (Exhibit App.202) supported by his Affidavit (Exhibit App.223-227), repeating facts 1-120 in the Complaint.

66. That Defendants BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON in response to Plaintiff's Facts LR 56.1(a)(3) and affidavit related to violations of Plaintiff's civil rights by Defendants, supporting Plaintiff's motion for summary judgment and memorandum, filed motions to strike Plaintiff's Facts LR 56.1(a)(3) and supporting affidavit (Exhibits App.191, 194) on bases of fraudulent legal arguments, suggestions as to every material fact, and then fraudulently disputed Plaintiff's Facts and affidavit in their Defendants Joint

28

56.1(b)(3) Statement (Exhibit App.234) on bases of references to their fraudulent motions to strike, e.g.:

(a) that as to Plaintiff's "Fact 107", repeated in this Complaint as Fact 50 - (107 [00C 6818, fact]), providing only strict citation of O'Leary, Krause and Circuit Court discussion how to dismiss Plaintiff's claims with prejudice (App.236-237). And O'Leary and Krause at al. responded: disputed, see Motion to Strike Plaintiff's Statement Rule 56.1 ¶ 5, Exhibit C, ¶ ¶ 3,4,5,6 Exhibit D (Exhibit App.236-237).

In their motions to strike KRAUSE (Exhibit App.192-193, ¶ 4) and O'Leary (Exhibit App.195, ¶ 5) argued that Plaintiff, by referring to Complaint, failed to refer to any evidence, in spite that they did not strike Exhibits supporting Complaint, and there cannot be better evidence than transcript of court hearing (Exhibit App.108 at 116-118) supporting Complaint as (Cplt.(A405 at 432-434)) certified by affidavit (Exhibit App.33), which is page 98 of the Complaint, case No. 00C 6818;

(b) that as to Plaintiff's "Facts 106 and 107", repeated in this Complaint as "Facts 49-(106[00C 6818, fact]), 50-(107 [00C 6818, fact])", which are citations of transcript of court proceedings involving Krause and O'Leary and supported by transcript of proceedings attached to Complaint as Exhibit (A405 at 432-434), here as Exhibit App.108 at 116-118, Krause et al. as to "Fact 107" and O'Leary as to "Fact 106" (App.236-237, part only) argued that facts Local Rule 56.1 are to be short and these Plaintiff's "Facts" are over a page long (App.192, ¶ 3; 195, ¶ 4), but to Plaintiff's "Fact 7":

7. At all times material hereto, the defendants STATE OF ILLINOIS, MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER, UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS and each of them, owed a duty of a reasonable

care to the plaintiff in the performance of their duties and not violate the civil rights of the plaintiff, as well as a duty to prevent other defendants from violating the civil rights of the plaintiff. (Exhibit App.235)

they both responded

"Disputed. See Appellate Court of Illinois Order dated December 15, 1998 [18 pages] attached hereto as Exhibit A; Appellate Court of Illinois Modified Order, dated February 9, 1999 [23 pages], attached hereto as Exhibit B." (Exhibit App.235)

(c) that, instead of giving answer "True" or "Not true for such and such a reason", they bluntly refer to 18+23 pages of Appellate Court's orders. For them Plaintiff's "Fact 107" and "Fact 106" have to be stricken because are over a page long, but their response plain referral to 18 pages plus 23 pages of Appellate Court's orders, which not only does not respond to the merits of the "Fact 7", but is also not too long - and such mockery they applied to every material fact.

And then BOLLINGER, RUBERRY & GARVEY as Krause et al. elaborated in ¶5 of Motion to Strike: "...legal arguments in a Rule 56.1 statement tend to make "a mockery of the local rule. *See Servin* at 562. "As Judge Coar eloquently explained, 'opinions, suggestions, inferences, legal arguments and conclusions are not the proper subject..." (App.193, ¶5).

(d) That Defendants BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON and as attorneys/law firms must know well that such responses are mockery and fraud;

(e) That Defendants BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON did not dispute and did not rebut Dr. Laursen's, Dr. Ward's and Plaintiff's affidavits on bases of their own "facts" in the form of sworn to affidavits, certified Exhibits;

(f) that District Court denied Plaintiff's motion to strike such fraud and mockery as MOOT - Exhibit App.576 and 577, end of 1st paragraph.

30

67. That claims of subjecting Plaintiff to radiation treatment as primary without his knowledge and consent, Plaintiff was entitled to timely claim until November 5, 2001, because of the following facts:

(a) Black's Law Dictionary, Six Edition, provides definition of medical battery under definition of battery, subtitle *Technical battery* as follows:

"A technical battery occurs when a physician or dentist, in the course of treatment, exceeds the consent given by a patient...

(b) Subjecting Plaintiff to radiation treatment as primary without his knowledge and consent violates U.S. Food and Drugs Administration Regulation of Informed Consent HHS, Part 50 (21 CFR Ch. 1 (4-1-99 Edition) in § 50.23 (A139-140) - Exhibit App.325 at 361-363

(c) 42 U.S.C. § § 1983, 1985 claims of subjecting Plaintiff to radiation treatment as primary without his knowledge and consent, violating U.S. Food and Drugs Administration Regulation of Informed Consent HHS, Part 50 (21 CFR Ch. 1 (4-1-99 Edition) in § 50.23 (A139-140-Complaint) - Exhibit App.325 at 361-363, are subject to statute of limitations provided by 42 U.S.C. § 1988, which provides:

§ 1988. (a) Applicability of statutory and common law. The jurisdiction in civil and criminal matters conferred on the district courts... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and the laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

(d) that applicable Illinois statute of limitations as to medical battery under 42 U.S.C. § 1988 "...the common law, as modified and changed by the constitution and statutes of the

State...", is not 2 year under 735 ILCS 5/13-202 "personal injury" provided by Supreme Court

decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) and other decisions derived from it, for

§ 1983 claims, but it is 5 year statute of limitations provided by Illinois 735 ILCS 5/13-215

"Fraudulent concealment", which provides:

> Fraudulent concealment. If a person liable to an action fraudulently conceals the cause of
> action from the knowledge of the person entitled thereto, the action may be commenced at
> any time within 5 years after the person entitled to bring the same discovers that he or she has
> such cause of action, and not afterwards.

because, as provided by 42 U.S.C. § 1988 "...the common law, as modified and changed by the

constitution and statutes of the State...":

(1) it is invoked by Illinois 735 ILCS 5/2-622(d) "Healing art malpractice -

informed consent", which provides in relevant parts:

> "When the attorney intends to rely on the doctrine of failure to inform of the consequences of
> the procedure, the attorney shall certify upon the filing of the complaint that the reviewing
> health professional has, after reviewing the medical record and other relevant materials
> involved in the particular action, concluded that a reasonable health professional would have
> informed the patient of the consequences of the procedure.

(2) it is further invoked by 735 ILCS 5/13-212 "Physician and hospital", which

provides in relevant parts: "(a) Except as provided in Section 13/215 of this Act...", and 735

ILCS 5/13-215 provides 5 year statute of limitations;

(3) the 5 year statute of limitations 735 ILCS 5/13-215 is also provided under

Illinois common law in decision of Illinois Supreme Court in *Cunningham v. Huffman* (1993),

154 Ill.2d 398 at 407:

> "If the physician/[hospital] should purposely conceal the discovery of the negligence, neither
> the statute of limitations nor the statute of repose is triggered.... In the case of nondisclosure,
> the fraudulent concealment provision in section 13-215 of the Code efforts the patient five
> years after discovery of the cause of action to commence the suit."

32

(4) the Fourteenth Amendment in Section 5 and Thirteenth Amendment in Section 2, to the Constitution provide that "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article".

(5) the Constitution, Article 1, Section 1 provides: "All legislative Powers herein granted shall be vested in a Congress of the United States...";

(6) United States Constitution, Article VI provides in relevant parts:

Article VI [2] This Constitution, and the Laws of the United States which shall be made in pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby... and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution...

(7) federal courts in Illinois applied 5 year statute of limitations to all § § 1983, 1985 claims until 1985 Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), e.g. *Hermes v. Hein*, (1979, ND Ill) 479 F. Supp. 820; *Gates v.Montalbano*, (1982, ND Ill) 550 F. Supp. 81, reh den (1983, ND Ill) F. Supp. 708 (Exhibit App.575). It is just that Plaintiff having no legal education and deprived legal counsel and advise, did not understand until about February through July 2003 that 1985 Supreme decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) is an act of treason, with silent permission by Congress, Presidents in Office, ACLU, Mass Media, etc.;

(e) that Defendants doctors, hospital and attorney LYSAUGHT fraudulently concealed under color and power of Illinois law subjecting Plaintiff to radiation treatment as primary under oath in affidavits of August 2, 1996 and September 6, 1996 supporting motion for summary judgment filed on September 6, 1996, Exhibits App. 86-96, they withdrew on November 25, 1996, Exhibit App. 97, after Plaintiff filed on November 15, 1996 Dr. Laursen's affidavit testifying under oath that Plaintiff was subjected to radiation treatment as primary requiring

33

additional surgery without his knowledge and consent, Exhibit App.98;

(f) that statute of limitations as to subjecting Plaintiff to radiation treatment as primary without his knowledge and consent was not triggered until Plaintiff received Dr. Laursen's affidavit of November 5, 1996, Exhibit App.98, and did not expire until about November 5, 2001, pursuant to 5 year statute of limitations under 735 ILCS 5/13-215;

(g) depriving Plaintiff claims of medical battery by federal courts cannot be done through *res judicata* because federal suit is under federal law independent of state suit under state law, and additionally, as the result of conspiracy of all Defendants, including the STATE OF ILLINOIS, subjecting Plaintiff to radiation treatment as primary requiring additional surgery was not even part of the state Complaint against doctors, Exhibits App.646-649, 423-427 and "Fact 45 - (101 DOC 6818, fact)", and Court of Claims terminated Plaintiff's Complaint against Hospital by converting against Board of Trustees, what is not adjudicating upon merits, Exhibits App.158 and 167.

68. That Defendant UNITED STATES (Judge Coar of District Court) granted Defendants BOLLINGER, RUBERRY & GARVEY'S motions for summary judgment, on behalf of DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, HOSPITAL OF THE UNIVERSITY OF ILLINOIS, on bases of statute of limitations based upon Supreme Court decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) providing 735 ILCS 5/13-202 "Personal injury" 2 year statute of limitations for § 1983 claims, Exhibits App.577 of 576-578.

69. That Plaintiff has no legal education, was deprived legal representation and advise since April 1993 until present (above "Facts 60, 61", Exhibits "C"), and, additionally, being severely battered physically (pain) and psychologically (denying equal protection of the laws and access to courts resulting in progressing devastation to Plaintiff's jaw and life), together with

34

problems arising from destroying every aspect of his life, since 1992 altogether, depriving him

ability of proper concentration on matters at hand,

Plaintiff did not understand until about end of February 2003, that decisions imposing 2

year statute of limitations, as to claims 42 U.S.C. § 1983, *Wilson v. Garcia*, 471 U.S. 261 at 276

(1985) and other decisions derived from it, if applied to medical battery, is willful, intentional

and malicious act of treason against the United States, the Sovereign, three fourth of the several

States, with silent approval by Congress and Presidents in Office, Mass Media, etc.; and

70. That because Plaintiff did not understand that decision in *Wilson v. Garcia*, 471 U.S.

261 at 276 (1985), and other decisions derived from it, is act of treason against the United States,

the Sovereign, three fourth of the several States, and was deprived legal counsel representation

and advise, he argued in response to Defendants' motion for summary judgment and 2 year

statute of limitations provided by decision in *Wilson*, referring to 735 ILCS 5/2-622(d) "Healing

art malpractice - informed consent" and 735 ILCS 5/13-215 "Fraudulent concealment" providing

5 year statute of limitations:

> "...acts of battery and conspiracy... in ¶ ¶ 1-121-145 of COUNTS I-IV are imbedded in the
> "informed consent" of state law <u>Cruzan v. Director, Missouri Dept. of Health</u> (1990), U.S.
> 261, 270, 111 L.Ed.2d 224... were prosecutable in state courts as medical malpractice under
> state law of 735 ILCS 5/2-622(d) "Informed consent", 735 ILCS 5/13-215 "Fraudulent
> concealment" and under 720 ILCS 5/12-4.1 "Heinous battery" of Illinois Criminal Code...
> what would eliminate any constitutional problem.... Upon the state courts, equally with the
> courts of the Union, rests the obligation to guard, enforce, and protect every right granted or
> secured by the Constitution of the United States and the laws made in pursuance thereof"
> <u>Elmwood Properties, Inc. v. Conzelman</u> (7th Cir. 1969)... federal courts consistently render
> decisions that: "The Civil Rights Act was never intended to displace state remedies.", "When
> an exhaustion of state remedies will eliminate any possible constitutional problems, then that
> route should be followed." <u>Johnson v. Stone</u>, (C.A. 7th Cir. 1959)..." (Exhibit App.619 at
> 620-622)

without arguing that proper statute limitations is 5 year provided by Illinois 735 ILCS 5/13-215

"Fraudulent concealment", Exhibit App.619 at 620-622.

71. That Plaintiff filed timely within 30 days motions to reconsider District Court's order of July 23, 2001, presenting,

that as to subjecting him to excessive force and battery during radiation treatment without his knowledge and consent, Counts I, III-IV <sup>Doc' 6818, Counts</sup>, applicable statute of limitations is Illinois 5 year 735 ILCS 5/13-215 "Fraudulent concealment" pursuant 42 U.S.C. §1988 applicable to 42 U.S.C. §1983 claims, not Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), and that statute of limitations still did not expire at the time of hearing and until about November 5, 2001, Exhibits App.281-284 at 283.

72. That District Court denied multiple times Plaintiff's motions for reconsideration and vacating order of July 23, 2001, as to medical battery Counts I, III-IV, and amongst them on September 4, 2001 "...gee, maybe theory was wrong and now I'll go back and come back with something els. That's not the way it's done... (Exhibit App.284), on September 13, 2001 on bases "I'm not going to do it several times when one time will do...", and

that threatened Plaintiff to remove him from courtroom by US marshals, when Plaintiff insisted on vacating dismissal order on bases of applicable 5 year statute of limitations, which did not expire even at the time of that hearing on September 13, 2001 and further until about November 5, 2001 (Exhibit App.286 at 287-288).

73. That Defendant UNITED STATES (Judge Coar of District Court) granted Defendants BOLLINGER, RUBERRY & GARVEY'S and HINSHAW & CULLBERTSON'S motions for summary judgment, on behalf of Defendants attorneys KRAUSE, LYSAUGHT, BOLLINGER and O'LEARY, on bases of statute of limitations based upon Supreme Court decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) providing 735 ILCS 5/13-202 "Personal injury" 2 year statute of limitations for §1983 claims, and

36

substituted Plaintiff's awareness of conspiracy in 1997 involving Plaintiff's counsel O'LEARY (Exhibit App.577 of 576-578) for last acts of co-conspirator STATE OF ILLINOIS represented by Illinois Supreme Court's decision on June 2, 1999 (Exhibit App.131) denying leave to appeal claims of conspiracy (Exhibit App.232-233), as to Defendants doctors, and represented by Court of Claims' decision on September 15, 2000, which converted claims against Hospital to claims against Board of Trustees of the University of Illinois, which caused Plaintiff's injuries of depriving him access to state courts to have claims of medical malpractice adjudicated upon merits (Exhibits App.147, 158, 167); and

that disregarded Plaintiff's facts and arguments that Plaintiff was not deprived access to state courts through conspiracy of involved Defendants attorneys and doctors with the STATE OF ILLINOIS, represented by Circuit, Appellate, Supreme and Claims courts, to have his claims adjudicated upon merits, until the co-conspirator STATE OF ILLINOIS represented by Illinois Supreme Court in decision on June 2, 1999 denying leave to appeal, as to Defendants doctors, and until September 15, 2000, as to HOSPITAL, the date of converting Complaint against HOSPITAL to Complaint against BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, respectively.

74. That Plaintiff filed within 30 days motions to reconsider District Court's order of July 23, 2001, as to claims of conspiracy of denying access to state courts, Counts VI-VIII (RR - 6818, Counts),

and, in addition to 100% sufficient facts and arguments, in responses to Defendants motions for summary judgment, that Plaintiff was not deprived access to state courts and the conspiracy did not accrue as to all Defendants, until Illinois Supreme Court's decision on June 2, 1999, as to suit against doctors and until Court of Claims decision on September 15, 2000 (as to suit against hospital) deprived Plaintiff adjudication upon merits claims of medical malpractice,

making filing Complaint on November 1, 2000 timely within 2 year statute of limitations under 735 ILCS 5/13-202 "Personal injury" provided by *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) for § 1983 claims,

Plaintiff presented facts of direct conspiracy of all Defendants doctors and attorneys word for word and action for action with the STATE OF ILLINOIS represented by Appellate Court's, and Court of Claims, what was revealed for the first time in Appellate Court's order of December 15, 1998 (Exibit App.132) and Court of Claims order of September 15, 2000 (Exhibits App.167 after App.158), respectively, this is within accrual of 2 year limitation as Defendants' granted dismissal of Plaintiff's claims on bases of Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) - Exhibit App.253-258.

75. That District Court deprived Plaintiff through excessive force and battery adjudication of claims of conspiracy and excessive force and battery in state courts' judicial proceedings, Counts VI-VII, VIII, because:

(a) it is a fact that 28 U.S.C. § 2401 provides in relevant parts:

"§ 2401 (a) ...every civil action against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues...; (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues..."

(b) it is a fact that Illinois 735 ILCS 5/13-202 "Personal injury", District Court relied upon on bases of Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), and *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995), Court of Appeals relied upon to dismiss Plaintiff's claims in Counts VI-VII, provide in relevant parts:

"735 ILCS 5/13-202 Personal injury... Action for damages for an injury to the person... shall be commenced within 2 years next after the action accrued...";

not "right to action first accrued";

38

(c) it is a fact that 42 U.S.C. § 1986 provides in relevant parts:

42 U.S.C. § 1986 "Action for neglect to prevent". Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action;... But *no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.*

(d) it is a fact that "accrued" means the last act in furtherance of conspiracy that caused injury, as stated in District Court order of July 23, 2001, Exhibit App.577, not "when the right to action first accrues":

"...for conspiracy actions, *the period begins to run on the date of the last act that caused him injury that was in furtherance of conspiracy.* See Vitale v. Nuzzo, 674 F. Supp. 402, 404 (D. Conn. 1986)...
He also complains about actions his attorney took as part of alleged conspiracy. *Ross was aware of these acts,* though, in late 1997 as evidenced... All of these acts occurred outside of the applicable limitations periods..."

and, it is a fact that the last acts in furtherance of conspiracy were acts of co-conspirator STATE OF ILLINOIS, represented by Illinois Supreme Court's decision on June 2, 1999 (Exhibit App.131) denying leave to appeal claims of conspiracy in judicial proceedings (Exhibit App.232-233) as to suit against doctors, and act of co-conspirator STATE OF ILLINOIS, represented by Court of Claims decision of September 15, 2000 converting suit against the Hospital (Exhibit App.158) to suit against Board of Trustees (Exhibit App.167), as to suit against hospital;

(e) it is a fact that Plaintiff's awareness of conspiracy in 1997 involving Plaintiff's attorney with circuit court judge violated Plaintiff's rights of access to courts, however, did not cause injury to the Plaintiff of depriving him access to state courts, and

(f) it is a fact neither circuit court nor appellate courts had the power to deprive Plaintiff access to state courts, that only had the power to violate Plaintiff's rights of access to courts to have claims adjudicated upon merits;

(g) it is a fact that only Illinois Supreme Court had the power to deprive Plaintiff access to state courts to adjudicate claims on merits and injure Plaintiff in meaning of depravation of access to courts to adjudicate claims upon merits, because, the Illinois Supreme Court had the power to reverse circuit court and appellate court decisions, and

(h) it is a fact, that all Defendants LYSAUGHT, O'LEARY, KRAUSE, BOLLINGER, DRS. BRIELE, GALINSKY, BRUNNGRABER, WENIG and KOTLER were committing fraudulent acts of perjury, and/or conspiracy, and/or concealing of evidence, and/or concealing the offenders, etc., and were providing to courts fraudulent information as grounds for circuit and appellate courts decisions;

(i) it is a fact, that Plaintiff's rights of equal protection of laws and denying access to state courts to have his medical malpractice claims adjudicated upon merits were violated and his "right of action first accrued" as defined in 28 U.S.C. §2401 since, at least 1996, if not even sooner, when Defendants doctors and LYSAUGHT filed motion for summary judgment supported by own perjurious affidavits of Defendants-doctors (Fact 43), Circuit Court was denying Plaintiff subpoena of hostile expert doctors (Fact 39), LYSAUGHT disclosed that she was tempering with Plaintiff's hostile expert doctors (Fact 42), and Circuit Court stated that without expert doctor affidavit Plaintiff will in bad shape legally at the time of ruling on LYSAUGHT motion for summary judgment:

> THE COURT: ...there will be a day here when the Court will rule on this motion for summary judgment; and if you don't have a counter-affidavit, if you have an attorney or you don't have an attorney, you're not going to be in good shape legally. Exh. App.85

however,

(i) that Plaintiff was not deprived access to state courts and was not injured by depravation of access to state courts to have his claims of medical malpractice adjudicated upon merits, and the conspiracy action under 42 U.S.C. § 1985 did not accrue in meaning of 735 ILCS 5/13-215 "Fraudulent concealment" or in meaning 735 ILCS 5/13-202 "Personal injury", as provided by Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), until Illinois Supreme Court's decision on June 2, 1999 denying/depriving leave to appeal, as to Defendants doctors, and until Court of Claims' decision of September 15, 2000, as to HOSPITAL, the date of converting Complaint against HOSPITAL to Complaint against BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, respectively;

(j) that Plaintiff's Complaint, case No. 00C 6818 was for depravation of civil rights. That in paragraph No. 1 of the Complaint, Plaintiff pleaded in relevant parts:

"1. This action is brought pursuant to the Fourteenth Amendment; Thirteenth Amendment; Article 6; Article 3, Section 2 of the United States Constitution, and the laws of the United States, specifically 42 U.S.C. Section 1983, 1985(3), 1986, 1988 to redress depravation of civil rights of the plaintiff..."

(k) that for the reasons stated in previous subparagraph conspiracy of all Defendants under 42 U.S.C. §§ 1985 for purposes of Plaintiff's claims under 42 U.S.C. § 1986 did not accrue until September 15, 2000, as to HOSPITAL, the date of converting Complaint against HOSPITAL to Complaint against BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS.

76. That applicable to claims § 1983 involving judges and attorneys is, under § 1988, Illinois 735 ILCS 5/13-215 "Fraudulent concealment" for the following reasons:

(a) the Black's Law Dictionary, Six Addition, defines relations involving a suitor/petitioner and a public officer as fiduciary, and involving a plaintiff and an attorney as fiduciary also, as follows:

"Fiduciary capacity". One is said to act in a "fiduciary capacity"... when the business which he transacts... is not his own or for his own benefit, but for the benefit of another person... a relation implying and necessitating great... trust on the one part and a high degree of good faith on the other part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law... and a public officer.";

(b) the Black's Law Dictionary, Six Addition defines a judge as a public officer: "Judge. ...a public officer...";

(c) the Black's Law Dictionary, Six Addition, defines fiduciary duty, as follows:

"Fiduciary duty". To act for someone else's benefit, while subordinating one's personal interest to that of the other person. It is the highest standard of duty implied by law (e.g., trustee, guardian);

(d) Illinois Code of Judicial Conduct provides in Preamble:

"Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply laws that govern us. The role of judiciary is central to American concept of justice and the rule of law. Intrinsic to all provisions of this code are precepts that judges... must respect and honor judicial office as a public trust... The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law."

(e) that Illinois Code of Professional Conduct provides in Preamble:

"The practice of law is a public trust. Lawyers are the trustees of the system by which citizens resolve disputes between themselves, punish and deter crime, and determine their relative rights and responsibilities towards each other and their government..."

(f) That these are the Congress' own words during President Clinton impeachment hearings:

"Any assault on the admini- stration of justice must be interpreted as a threat to our system of government... Perjury, tempering with witnesses, obstruction of justice, all deal in interest of truth. If we don't have truth in the judicial process and in the court's system in our Country, we don't have anything... Either in criminal or civil case obstruction undermines judicial

system's ability to vindicate legal rights. If it is allowed to go unchecked, then the "system will become a farce" (Rep. Stephen Buyer); "When the law ends the tyranny begins" (Rep. Chris Cannon); "Lawlessness is an invitation to anarchy". (Rep. Chuck Canady)

(g) That for the above Facts "Fiduciary capacity", "Fiduciary duty", "Illinois Code of Judicial Conduct" and "Illinois Code of Professional Conduct", which impose on judges and attorneys the highest degree of duty under the law, it is like 1+1+1+1=4, not anything else,

and any conspiracy involving attorneys and judges is not just negligence, it falls under "fraudulent concealment" and statute of limitations 735 ILCS 5/13-215 "Fraudulent concealment", not 735 ILCS 5/13-202 "Personal injury" provided by Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), like in application to a doctor performing a medical procedure without obtaining from a patient a consent, above Fact 67; and

(h) federal courts in Illinois applied 5 year statute of limitations to all §§1983, 1985 claims until 1985 Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), e.g. *Hermes v. Hein*, (1979, ND Ill) 479 F. Supp. 820; *Gates v.Montalbano*, (1982, ND Ill) 550 F. Supp. 81, reh den (1983, ND Ill) F. Supp. 708 (Exhibit App.575);

(i) It is just that Plaintiff having no legal education and deprived legal counsel and advise, did not understand until about February through July 2003 that 1985 Supreme decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) is an act of treason, with silent permission by Congress, Presidents in Office, ACLU, Mass Media, etc., and

(j) it is a fact that 3 layer Judiciary, evolved since decision in *Hans v. Louisiana*, 134 U.S. 1 (1890) from protector of civil rights:

> "*Ordered*, that unless the said State shall either in due form appear, or shew cause to the contrary in this Court, by the first day of next Term, judgment by default shall be entered against the said State." *Chisholm v. Georgia*, 2 Dall. 419 at 480

"The powers of the Union, on the great subjects of war, peace and commerce, and on many others, are in themselves limitations of the sovereignty of the states; but in addition to these, *the sovereignty of the state is surrendered, in many instances, where the surrender can only operate to the benefit of the people*, and, where, perhaps, no other power is conferred on congress than a conservative power to maintain the principals established in the constitution. The maintenance of these principals in their purity, is certainly among the great duties of the government. One of the instruments by which this duty may be peaceably performed, is the judicial department. It is authorized to decide all cases of every description, arising under constitution or laws of the United States. From this general grant of jurisdiction, no exception is made of those cases in which a state may be a party..." *Cohen v. Virginia*, 19 U.S. (6 Weat.) 264, 382-83 (1821).

to Nazi style violators operating on bases of treason, like in decision *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), etc., Plaintiff's case is the most outrageous example,

as provided in above stated "Facts 67-72", following "Facts 79, 80", where District Court on bases of decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) denied Plaintiff application of proper statute of limitations under 42 U.S.C. § 1988 and 735 ILCS 5/13-215 to medical battery by threatening Plaintiff to remove him from courtroom by marshals, then Court of Appeals suppressed properly pleaded in the Complaint medical battery, a federal violation, as nonexistent and omit to address that decision in *Wilson v. Garcia* violates statutory law, and violates separation of powers between Congress and courts, and then the Supreme Court denied Plaintiff to appeal such outrageous violations of judicial process on bases of discretion.

77. That District Court dismissed Plaintiff's claims against Defendant STATE OF ILLINOIS on bases of Supreme Court's decision in *Hans v. Louisiana*, (1890) 134 U.S. 1, that Eleventh Amendment provides to States immunity as sovereign and State cannot be sued without its consent, Exhibit App.580 of 579-581,

disregarding Plaintiff's arguments that State of Illinois is not a sovereign and that Eleventh Amendment does not prohibit suits against a State by its own citizens, what Court in *Hans v. Louisiana*, (1890) 134 U.S. 1 at 5 clearly admitted:

44

The <u>Eleventh Amendment declares</u> that "The judicial power of the United States <u>shall not be construed to extend</u> to any suit in law or equity, commenced or prosecuted <u>against one of the United States by citizens of another State</u>, or by citizens of any foreign State." <u>This is limitation upon the exercise of judicial power</u> in the cases named. <u>Upon no principal of construction can the limitation be applied to other cases. No change in the Constitution was made in any other respect.</u> *Hans* at 5.

and Court in *Hans* clearly admitted that a State is a subject to lawsuits by own citizens on account of violations of contractual rights.

"...whilst <u>the State</u> cannot be compelled by suit to perform its contracts [delay in repayment of the initial value of the issued bonds, and repealing, through amendment to State Constitution, the interest, having effect of 100% state tax on interest, at the time of great difficulties after Civil War [(1)]], <u>any attempt on its part to violate property or rights acquired under its contracts, may be judicially resisted</u>; and any law impairing the obligation of contracts under which such property or rights are held is void and powerless <u>to effect their enjoyment.</u>" *Hans* at 20-21

78. That both, State of Illinois (Illinois Government) and United States (federal Government) are liable to Plaintiff on account of violations of constitutional and statutory contracts binding the Plaintiff and the State of Illinois (Illinois Government), and binding the Plaintiff and the United States (federal Government), of depriving him access to courts to have claims adjudicated upon merits, as recognized/admitted/defined by the Supreme Court in *Hans v. Louisiana*, (1890) 134 U.S. 1 at 20-21 and in *Wilson v. Garcia*, 471 U.S. 261, 278-79 (1985).

"...any attempt on its [State's] part to violate property or rights acquired under its contracts, may be judicially resisted; ...to effect their enjoyment." *Hans* at 20-21 (1890)

"The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment [and the Thirteenth Amendment as to involuntarily servitude as a patient on account of catastrophic injuries to my person], that every person within the United States is entitled to equal protection of the laws and those "fundamental principles of liberty

---

[(1)] State of Louisiana issued bonds under 1874 amendment to State's Constitution assuring payments of interest through exercise of judicial power against the State when necessary, then levied and collected taxes to pay off the bonds, then however, appropriated the funds to payment of other state's expenses, and amended State constitution in 1879 invalidating the contract of interest payments due 1880. *Hans v. Louisiana*, (1890) 134 U.S. 1 at 2-3.

and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political institutions." These guarantees of liberty are among the rights possessed by every individual in a civilized society..."; and

"It is a fundamental principle of law that while the citizen owes allegiance to the Government, he has the right to expect and demand protection for life, person, and property." *Wilson* at 279 (1985).

because

(a) Plaintiff and the State of Illinois (Illinois Government) are bound by contract provided by State of Illinois Constitution, federal Constitution, State of Illinois laws and federal laws; and

(b) Plaintiff and the United States (federal Government) are bound by contract provided by federal Constitution and federal laws; and

(c) both, State of Illinois (Illinois Government) and United States (federal Government) violated Plaintiff's rights provided by constitutional and statutory contracts binding Plaintiff and State of Illinois (Illinois Government) and United States (federal Government), and both, the State of Illinois (Illinois Government) and the United States (federal Government) deprived Plaintiff access to courts to have claims adjudicated upon merits.

79. That Defendants STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON extended to the Court of Appeals the same pattern of hiding facts of proceedings in District Court of depriving Plaintiff to have claims adjudicated upon merits in State courts, and:

(a) did not rebut Dr. Laursen's, Dr. Ward's and Plaintiff's affidavits, Exhibits App.98, 104, 159, 164, 223. Their rebuttal were fraudulent motions to strike Plaintiff's facts and affidavit, as provided in above "Fact 66", and "Facts 64, 65".

(b) did not rebut Plaintiff's facts and arguments that STATE OF ILLINOIS courts' rulings are part of the conspiracy involving all Defendants.

On the opposite. Continued to provide as facts and arguments STATE OF ILLINOIS courts' rulings, which are part of the conspiracy of all Defendants, including STATE OF ILLINOIS represented by courts, concealing subjecting Plaintiff to radiation treatment as primary requiring additional surgery without Plaintiff's knowledge and consent, and concealing conspiracy and excessive force and battery of all Defendants, including the STATE OF ILLINOIS, in depriving Plaintiff access to state courts to have claims adjudicated upon merits (Exhibits App.478 at 484-489; 500 at 508; 528 at 533-535),

and in Court of Appeals again relied on District Court's rulings, what in view of Court of Appeals rulings, makes extension of conspiracy originated in State courts, to include UNITED STATES represented by federal courts.

80. STATE OF ILLINOIS'S, BOLLINGER, RUBERRY & GARVEY'S and HINSHAW & CULLBERTSON'S facts and arguments in their Brief in Court of Appeals were jokes extending the conspiracy to include UNITED STATES represented by Court of Appeals, because 1+1+1+1=4 and nothing else, e.g.:

(a) STATE OF ILLINOIS in the Appellee's brief relied on fact:

STATE OF ILLINOIS: "The appellate court also found no impropriety by the circuit court or Ross's former counsel: The record provides no support for the aspersions Ross casts on his counsel and the trial court..." Exhibit App.478 at 487

(b) BOLLINGER, RUBERRY & GARVEY in the Appellee's brief relied on fact:

BOLLINGER, RUBERRY & GARVEY: "Even if this Court [Court of Appeals] were to consider this argument, Ross has failed to demonstrate how the Appellate Court's order denying his appeal reveals a conspiracy. Ross incorrectly concludes that since the order was not in his favor, this automatically renders the opinion an act of conspiracy which is wholly incorrect." - Exhibit App.513.

in response to Plaintiff's argument supported by 100% prove in facts of conspiracy in Brief on appeal, Exhibit App.428 at 452-455, where circuit court first gives Plaintiff's attorney O'LEARY

leave to amend to state discovery rule, and then, after insistence of O'LEARY, who presented

that her Amended Complaint was fraudulently prepared in such way that injury was on April 15,

1993 and defendants last treatment was more than 2 years before April 1993, and she did not

plead 2 year discovery rule, making filing beyond statute of limitations, so circuit court backed

off and openly stated to amend without pleading discovery rule. This is the argument supported

by facts - Exhibit App.428 at 452-455:

> "Furthermore, O'Leary restricted Dr. Galinsky's treatment from June 2, 1993 in original
> Complaint (App.67) to April 15, 1993 in Amendment Complaint (App.103), struck record of
> follow up on June 2, 1993 (App.243-246) and supported response to Defendants' motion to
> dismiss with Amended Answer to Complaint by Lysaught restricting treatment by Dr.
> Galinsky to March 30, 1993 (App.247-250, Count II)
> Then Krause filed not sworn to Dr. Galinsky's affidavit claiming that he treated Plaintiff until
> February 17, 1993, and did not treat Plaintiff on June 2, 1993. (App.121-122)
> During hearing on July 3, 1997, representing Plaintiff O'Leary argued:
>> MS. O'LEARY: ...Their negligence occurred during the time periods they described in
>> their affidavits [Dr. Galinsky until February 17, 1993 (App.121)], however, there was no
>> injury until he had that surgery on April 15th.... (App.113)

> Defendants claimed on appeal that Dr. Galinsky in his affidavit indicated that he last
> treated Plaintiff on February 17, 1993 and attested that did not administer any treatment on
> June 2, 1993. (App.300-301)[4]

---

[4] Defendants Krause et al. on December 21, 2000, in their Statement Rule 56.1(a)
supporting motion for summary judgment, admitted affirmatively for the first time that
Dr. Galinsky treated Plaintiff until June 2, 1993, with reference to Exhibit "P" follow up
on June 2, 1993 (App.173-174, ¶26) (Exhibit "P" Document Docket Entry No. 21),
which is stricken by O'Leary (App.243) Exhibit "F" (App.245-246).

Following Appellate Court's ruling in Order of December 15, 1998 was directly based
upon stated above overt acts of O'Leary and Krause et al. (excluding Hospital) to effectuate
and
promote conspiracy directly with the Appellate Court, to deny Plaintiff review medical
malpractice lawsuit on merits:

> Galinsky swore that he did not treat Ross when he saw him in June 1993, and he
> completed all treatment of Ross before March 1993, more than two years before filing of
> the original complaint. (App.134)

...the complaints and exhibits support Galinsky's assertion that he completed radiation treatment of Ross by March 1993. Thus, the allegations... all describe actions completed more than two years before Ross filed his original complaint. (App.140)

And Appellate Court further ruled: The briefs and affidavits which Ross cites as proof of his late discovery do not constitute pleadings. (App.137)

Dismissing entire Amended Complaint on July 3, 1997, informed consent with prejudice and negligence without prejudice (App.145), denying claims of subjecting to radiation as primary through fraudulent concealment, denying reinstatement of claims of improper surgery gave Plaintiff only option to provide briefs and affidavits and to dismiss with prejudice entire complaint on November 10, 1997 (App.128). *Barnett v. Zion Park District*, 171 Ill.2d 378, 384 (Ill. 1996)

and Appellate Court ruled:

Ross now argues that the trial court and defendants conspired with Ross' attorney to get his complaint dismissed... The record provides no support for the aspersions Ross casts on his counsel and the trial court. (App.138)

and dismissed Plaintiff's entire Complaint on December 15, 1998 (App.132). So, Plaintiff quoted in petition for rehearing open discussion of O'Leary, Krause and Circuit Court how to dismiss remains of his claims with prejudice as proof of conspiracy:

THE COURT:  ...I'm going to grant you leave to amend... <u>to state the discovery rule</u>...
MS. O'LEARY: Judge... <u>The injury was April 15th. There is no cause of action when you have no injury</u>... (App.114)

MS. O'LEARY:  ...Their negligence occurred during the time periods they described in their affidavits [Dr. Galinsky until February 17, 1993 (App.121)], however, there was no injury until he had that surgery on April 15th... (App.113)

THE COURT: Then maybe you need to flesh out the allegations of negligence so I understand that. <u>I don't understand that from the complaint,</u> and I'm giving you leave to amend it. (App.115)

THE CLERK: Ross versus Briele.
MR. KRAUSE:  Can you look at paragraph 4 on this...
MS. O'LEARY:  ...<u>I assert the discovery rule is not applicable</u> to this...
THE COURT: <u>If I find the discovery rule is applicable, you don't plead it,</u> I suppose you have got your appeal, right?
MS. O'LEARY: Right.
MR. KRAUSE: <u>If they don't plead it then we would just come back here on the same motion.</u> [to dismiss]
THE COURT: <u>That's right.</u>
MR. KRAUSE: <u>Is that what you want us to do?</u>
THE COURT: <u>Well, I suspect it's the discovery rule in some fashion or in some fashion this case is going to be pled so that I understand</u> --

MR. KRAUSE: How do you want that to read?
THE COURT: I'm granting it with leave to replead.
MS. O'LEARY: ...the fourth paragraph is eliminated.
MR. KRAUSE: Okay. That's fine. (App.116-117)
THE COURT: I think there are no pending counts as to Wenig and Kotler. They were all informed consent.
MS. O'LEARY: That's correct... (App.118)

Paragraph 4 of the Order [to plead discovery rule] is crossed out (App.145), and O'Leary in her preparation worksheet of Second Amended Complaint (App.119-120), she forgot to remove when she gave Plaintiff back his records (App.227, ¶96), did not plead discovery rule, did not plead specific injuries, and did not plead what Plaintiff consented to, and instead she pleaded some unclear injury and consequences of injury, which occurred "On April 15, 1993 and thereafter". (App.120, ¶4), and Drs. Briele, Brunngraber and Galinsky completed treatment of the Plaintiff before April 1993, as evidenced by her preparation worksheet hand written ¶2 (App.119), and support of Plaintiff's Response to Motion to Dismiss with Lysaught's Amended Answer to Complaint restricting Dr. Galinsky's treatment to March 30, 1993 (App.247 at 250, Count II), and her arguments with Circuit Court:

MS. O'LEARY: ...Their negligence occurred during the time periods they described in their affidavits [DR. GALINSKY until February 17, 1993 (App.121)], however, there was no injury until he had that surgery on April 15th.... (App.113)
MS. O'LEARY: ...they filed these affidavits which... are not notarized, not sworn to and not notarized. (App.109)
MS. O'LEARY: ...their affidavits which you Honor said he wanted to take with the case. (App.110)

and because injury was on April 15, 1993, and remaining Defendants completed treatment of Plaintiff before April 1993, and the original Complaint was filed on April 11, 1995, therefore it was beyond 2 years statute of limitations by not pleading fraudulent concealment and not pleading discovery rule that Plaintiff discovered defendants' negligence after April 11, 1993, as proved by stricken by O'Leary follow up on June 2, 1993 (App.243 at 245-246).
The Appellate Court ruled, however, in Modified Order of July 9, 1999:

Ross next quotes a discussion between the court and both attorneys concerning the phrasing summarizing the court's rulings. Defense counsel drafted the order... Because the order needed to reflect the court's rulings, counsel asked the court what the court wanted the order to say. Defense counsel's question, "Is that what you want us to do?", in this context, is only an appropriate request for directions for drafting the order. The attorney who represented Ross objected to the fourth paragraph of the draft order. The court agreed with her and directed defense to eliminate that paragraph of the order. The parties discussed only the paragraphs of the draft order, not any paragraphs of the complaint or the amended complaint. The passages Ross quotes show good, effective work his attorney did in her effort to protect his rights. The passages lend no support at all to his argument that she conspired against him. (App.142-143)

50

and upheld dismissal of Plaintiff's entire Complaint on February 9, 1999 (App.144)

(c) And example as to HINSHAW & CULLBERTSON, who on behalf of O'LEARY in

the Appellee's brief relied on fact:

HINSHAW & CULLBERTSON: "Ross filed his district court complaint on November 1, 2000. The district court stated that to be timely, Ross could not have known or should not have known of the alleged wrongs before November 1, 1998 (doc. 91, minute order of July 23, 2001, reverse side). The district court held that Ross was aware of the acts involving the conspiracy in late 1997, as evidenced by his statement in court accusing his attorney and the court of conspiring to deprive him of his rights (*Id.*)." - Exhibit App.528 at 538

while the Defendant O'LEARY herself argued in circuit court:

MS. O'LEARY: Judge, you cannot have -- a cause of action does not accrue until there's injury. The injury was April 15th. **(A428)** - Exhibit App.114
There is no cause of action when you have no injury. People come and say, well, I got sloppy medical care, I got bad medical care. So what you're fine. There is no cause of action just because there was negligence. **(A428)** - Exhibit App.114
THE COURT: Then maybe you need to flesh out the allegations of negligence so I understand that. I don't understand that from the complaint, and I'm giving you leave to amend. **(A429)** - Exhibit App.114-115

As O'LEARY argued there has to be injury to have cause of action, and in case 00C

6818, Plaintiff's injury of "depravation to state courts to have claims adjudicated upon merits"

could not occur until Illinois Supreme Court decision of June 2, 1999 (Exhibit App.131) denying

leave to appeal claims of conspiracy (Exhibit App.232-233), and Court of Claims terminated suit

against Hospital (Exhibit App.158) and converted to suit against Board of Trustees on September

15, 2000 (Exhibit App.167).

81. Decisions of circuit court and appellate court were only violations of Plaintiff's rights

of access to courts, not depravation, because it was Illinois Supreme Court's constitutional duty,

and power to reverse fraudulent rulings of circuit court and appellate court.

Plaintiff's filed Complaint, case No. 00C 6818 for depravation of rights, as pleaded in

paragraph 1 of the Complaint, Exhibit App. 325:

51

1. This action is brought pursuant to the Fourteenth Amendment; Thirteenth Amendment; Article 6; Article 3, Section 2 of the United States Constitution, and the laws of the United States, specifically 42 U.S.C. Section 1983, 1985(3), 1986, 1988 *to redress depravation of civil rights* of the plaintiff accomplished by acts or omissions of the defendants committed under color of state law, custom or usage. Jurisdiction is invoked under 28 U.S.C. Section 1331 and 1343.

82. That Defendant UNITED STATES represented by Court of Appeals for the Seventh Circuit in its order of September 26, 2002 upholding dismissal of Plaintiff's claims of civil rights violations, Exhibit App.583-585:

(a) suppressed and concealed federal violation of subjecting Plaintiff to radiation treatment as primary requiring additional surgery as non-existing ("His complaint, however, never explains how the handling of his illness amounted to a civil rights violation." (Exhibit App.583 at 584), timely filed, and properly and fully stated in the Complaint, case No. 00C 6818, Count I, III-IV (Exhibit App.325 at 359-367; 370-376) and restated under supplemental jurisdiction as Counts I, II in this Complaint, that subjecting Plaintiff to radiation treatment as primary requiring additional surgery, without Plaintiff's knowledge and consent violated federal regulation of informed consent, specifically U.S. Food and Drugs Administration regulation HHS, Part 50 (21 CFR Ch. I (4-1-99 Edition) in § 50.23, Amendments 14th and 13th, and 42 U.S.C. § § 1983, 1985(3);

(b) suppressed that statute of limitations for § § 1983, 1985 claims, applied to medical battery under 42 U.S.C. § 1988 is Illinois 735 ILCS 5/12-215, invoked by 735 ILCS 5/2-622(d) and 735 ILCS 5/13-212, and that Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261 at 276 (1985), imposing 2 year statute of limitations under Illinois 735 ILCS 5/13-202 to § 1983 claims, violates constitutional separation of powers, provided in Article 1, Section 1 of the Constitution that "All legislative Powers herein granted shall be vested in a Congress of the

United States..." and right to enforce Fourteenth Amendment (and Thirteenth Amendment) rests with the Congress pursuant to Fourteenth Amendment, Section 5 (and Section 2 of Thirteenth Amendment): "Congress shall have power to enforce this article by appropriate legislature."; and

(c) suppressed facts that conspiracy of all Defendants with the STATE OF ILLINOIS, deprived Plaintiff access to state courts to have his claims of medical malpractice adjudicated upon merits by Illinois Supreme Court on June 2, 1999 as to Defendants doctors, and by Court of Claims on September 15, 2000 as to HOSPITAL, making filing of the Complaint on November 1, 2000 timely, and

(d) suppressed direct conspiracy word for word and action for action with Appellate Court and Court of Claims, revealed for the first time conspiracy of all Defendants with Appellate Court in order of December 15, 1998 (Exhibit 132) and order of September 15, 2000 (Exhibit App.167 after App.158) converting suit against Hospital (Exhibit App.158) to suit against Board of Trustees (Exhibit App.167), making filing of the Complaint on November 1, 2000 timely.

83. That the United States Supreme Court, on bases of discretion, denied Plaintiff's Petition for a Writ of Certiorari (Exhibits App.586, 598), and concealed depriving Plaintiff adjudication upon merits by District Court and Court of Appeals §§1983, 1985 claims of medical battery and §§1983, 1985, 1986 claims conspiracy of denying Plaintiff access to state courts, through subversion of the judicial process, obstruction of justice through concealing or disguising physical evidence (facts on paper: pleadings and facts in the Complaint and facts in sworn to supporting exhibits and affidavits), providing false information, concealing the violators, and on points of law which are acts of treason, establishing in this way conspiracy involving UNITED STATES and all Defendants, the same way as conspiracy in State courts.

53

84. That: (a) 28 U.S.C. § 1254 "Courts of appeals; certiorari; certified questions" provides:

Cases in courts of appeals maybe reviewed by the Supreme Court by the following methods: (1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after of judgment or decree; (2) By certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired, and upon such certification the Supreme Court may give binding instructions or require the entire record to be sent up for decision of the entire matter to controversy.

(b) the United States Supreme Court's Rule 10 provides in relevant parts:

"Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons. The following, although neither controlling nor fully measuring the Court's discretion, indicate the character of the reasons the Court considers: (a) United States court of appeals has entered decision... so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power; (c) petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."

85. That 28 U.S.C. 1254 "Courts of appeals; certiorari; certified questions": (a) addresses only the methods by which the Supreme Court reviews cases in courts of appeals; (b) does not address which cases the Supreme Court has to or does not have to review; (c) does not relieve Supreme Court from strict enforcing 42 U.S.C. § § 1983, 1985, 1986, 1988 by lower courts.

86. That: (a) United States Constitution, Article VI provides in relevant parts:

Article VI [2] This Constitution, and the Laws of the United States which shall be made in pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby... and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution...

87. That 42 U.S.C. § 1983 provides in relevant parts:

§ 1983. "Every person who... subjects... any citizen... to the depravation of any rights,... secured by the Constitution and laws, shall be liable to the party injured..."

88. That United Nations International Covenant on Civil and Political Rights, Part II, Article 2.3(a), ratified by United States on June 8, 1992, provides in relevant parts:

54

"...any person whose rights... are violated shall have an effective remedy, notwithstanding that the violation has been committed by persons acting in an official capacity"

89. That the Constitution, Article 1, Section 1 provides: "All legislative Powers herein granted shall be vested in a Congress of the United States...";

90. That the Fourteenth Amendment to the Constitution provides in relevant parts:

"No State shall... deny to any person... the equal protection of the laws."

(a) the right to enforce Fourteenth Amendment is vested in Congress under Amendment's Section 5 (and under Section 2 of 13th Amendment) "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article".

91. That Article 6 of the Constitution, provides in relevant parts:

"...This Constitution, and the Laws of the United States which shall be made in pursuance thereof, and all the Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. The Senators and Representatives before mentioned, and the members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution..."

92. That the United States Supreme Court denied Plaintiff's Petition for writ of Certiorari (Exhibits App.586; 598), as to District Court's and Court of Appeals' denying equal protection of the laws and access to courts to have his claims of civil rights violations adjudicated upon merits, through

(a) suppression of properly stated, timely filed and properly argued medical battery and conspiracy of subjecting him to radiation treatment as primary without his knowledge and consent, through excessive force, battery;

(b) suppression of properly stated, timely filed and properly argued conspiracy in denying him access to state courts, through excessive force and battery; and

55

(c) on points of common law based upon Supreme Court's decisions, which violate the Constitution and acts of Congress, and are acts of treason against the United States, the Sovereign, three fourth of the several States.

93. That judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who reviewed Plaintiff's Petition for Writ of Certiorari took Oath, under Article 6 of the Constitution, to support the United States Constitution, and

that judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit did not take any oath to support or enforce decisions of the United States Supreme Court, like *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), etc.

94. That Plaintiff has no formal education as an attorney, and that it took him to understand that Supreme Court's decisions in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, and other derived from them, e.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), Court of Appeals' *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 n.2 (7th Cir. 1995), are acts of treason against the United States, since about end of February, 2003 through about July 10, 2003.

95. That as the direct an proximate result of aforesaid outrageous violations of Plaintiff's civil rights continuing uninterrupted almost 12 years long (will pass on July 10, 2004) Plaintiff suffers catastrophic loss of volume of the external flesh of the lower jaw, lower parts of cheeks

and catastrophic braking of his mandible since about April 23, 2003, as presented by photographs

bellow of Plaintiff's lower jaw and in attached Exhibits App.666-667, and Plaintiff's affidavit,

paragraph 9, which is part of this Complaint as page 126-127:

Photographs bellow are from mid of November 2001 until present.



1- Nov. 19, 2001  2- Nov. 20, 2001  3- Feb. 03, 2003  4- Feb. 5, 2003  5- Mar. 11, 2003

6- Apr. 26, 2003  7- Apr. 26, 2003  8- June 02, 2003  9- July 17, 2003  10- July 19, 2003

11- July 19, 2003  12- July 19, 2003  13- Aug. 1, 2003  14- Aug. 1, 2003  15- Aug. 1, 2003

16- Nov. 19, 2003  17- Apr. 5, 2004  18- Apr. 10, 2004  19- Apr. 10, 2004  20- prior to 1992

which are additional injuries to severe internal injuries to his mouth inflicted by Defendants

doctors in 1992-1993, and since June 2003 Plaintiff is continuously 24/7 on pain relievers

Morphine, Tylenol with Codeine (Exhibits App.659-662), supplemented by other medications, as

stated in Plaintiff's affidavit, paragraph 9, pages 126-127 of this Complaint.

96. That a boy shot at his jaw during Columbine High School shooting incurred almost

one million dollars in medical bills far before completion of the reconstruction of his jaw and

shotgun blast" (Exhibit App.698-699).

97. That, as the proximate result of aforesaid outrageous violations of Plaintiff's civil rights, to stop progressing devastation to his jaw, and regain cosmetically and functionally acceptable jaw, Plaintiff expects the medical bills for surgeries and other treatments to exceed far one million dollars.

98. That prior to July 10, 1992, the first date of continuing until present outrageous violations of his civil rights, Plaintiff owned a house with approximately $60,000 mortgage and no other debts, and

99. that as the result of aforesaid outrageous violations of Plaintiff's civil rights and market forces Plaintiff suffers total financial destruction, loss of the house and incurred debt, requiring approximately a half a million dollars to get back the house and pay off the debts.

100. That as the result of outrageous violations of Plaintiff's civil rights, Plaintiff suffers total destruction of every other aspect of his life over last past 12 years and in the foreseeable future.

101. That Plaintiff sustained all aforesaid injuries through willful, intentional and malicious acts of violation of his civil rights and acts of conspiracy and excessive force and battery of all Defendants, including STATE OF ILLINOIS and the UNITED STATES represented by State of Illinois' and federal courts' through acts of treason against the United States, instead of being sick in 1992 approximately a few weeks to 2 to 3 months and losing at most a few lower incisor teeth - that this paragraph 101 and following subparagraphs (1) and (2) are repeated "Facts 18-(58 $^{00C\ 6818}$) and 19 - (59 $^{00C\ 6818}$)":

(1) that treating plaintiff with very limited surgery, as established by affidavit of Dr. Laursen **(A349 at A350 and A715j at A715k)** [Exhibit App.98 at 99 and App.164 at 165],

would result in Plaintiff's sickness lasting maximum 2 to 3 months, and eventually losing at most

a few lower incisor teeth. It is a common knowledge that injury without radiation, e.g. broken leg

causes disability lasting weeks only.

That after obtaining affidavits of Dr. Ward and Dr. Laursen, plaintiff saw attorney Herzl

Levine (A75), who had exactly the same problem as Plaintiff, and was treated by surgery by the

Defendant Dr. Wenig. His all side effects were a small denture of a few lower incisor teeth.

102. That Exhibit App.703-704 states:

"Relatives of victims of the 11 September attacks have filed a trillion-dollar lawsuit against
various parties, accusing them of financing Osama Bin Laden's al-Qaeda terror network and
Afghanistan's former Taleban regime...
"The main goal is to starve the terrorists of the funding and support they need"
Those accused include the country of Sudan, three members of the Saudi royal family -
including the Saudi defense minister - and various Islamic charities, in addition to seven
financial institutions and the Bin Laden family's Saudi construction firm.
More than 600 family members, firefighters and rescue workers, calling themselves the 9/11
Families United to Bankrupt Terrorism, are seeking the money.
Stephen Push, who lost his wife in the attack, told the BBC the families had a strong case in
the US but that it was a "multi-step process" and they would pursue it in other countries as
well.
"The purpose of suing the Saudis who funded al-Qaeda is to try to help prevent the terrorists
from getting access to financial resources they need to conduct future terrorist attacks," he
said.
"We may be able to either convince them it's not worthwhile to fund al-Qaeda or perhaps
obtain enough of their assets that they are no longer able to do so."
The suit was filed on Thursday morning in the US District Court of the District of
Colombia..."

103. That Exhibit App.706 states:

"...Thursday, August 7, 2003. Sept. 11 suit wins first major legal battle... The $1 trillion
lawsuit filed by more than 4,000 victims and relatives of victims of the Sept. 11 attacks has
survived its first major legal test. A federal judge in Washington, D.C., recently refused to
dismiss a Saudi Arabian bank, two large Muslim charities and two other defendants from the
lawsuit. Ron Motley, a Mount Pleasant lawyer representing the Sept. 11 victims, described
the judge's decision as "a huge victory." Motley said the judge "followed the logic of our
argument that if you help construct a terrorism factory, you're liable for the product you spew
out."..."

59

104. That together with filing this Complaint, Plaintiff files with Congress through his Illinois congressional representatives Senator Richard J. Durbin, Senator Peter Fitzgerald and Representative Louis V. Gutierrez Petition, a few pages attached as Exhibit App.719-726, supported by copies of this Complaint demanding:

(a) reform of the judicial system, which evolved into Nazi style system dominated by a terrorist's network of the al-Qaeda, etc. style and magnitude, all Defendants are part of, operating on bases of fraud upon fraud, upon fraud, conspiracy involving judges of all levels of courts, suppression of evidence by judges of all courts, concealing Nazi style violators by judges of all courts and on points of law which constitute acts of treason of judges of all levels of courts against the United States, and

(b) either to impeach by Congress judge David H. Coar of United States District Court for the Northern District of Illinois, Eastern Division, judges John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of the United States Court of Appeals for the Seventh Circuit and those judges of United States Supreme Court who participated in denying Plaintiff's Petition for Writ of Certiorari on bases of "treason against the United States" and acts of terrorism against Plaintiff, or compensate Plaintiff monetarily one billion dollars, at comparable level as victims of 9/11 demand from those supporting al-Qaeda responsible for 9/11th terrorist attack.

## **COUNT I** (Count I [00C 6818, Count])
### (Section 1983 Excessive Force and Battery)

1 - 104. Plaintiff incorporates paragraphs 1 through 104 of the Complaint by reference as and for paragraphs 1 through 104 of Count I as though fully set forth herein.

1 [00C 6818, paragraph] - 120 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 120 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and

for paragraphs 1 [00C 6818, paragraph] through 120 [00C 6818, paragraph] of Count I as though fully set forth herein.

105 - (121 [00C 6818, paragraph/claim]). The Defendants are Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler and University of Illinois Hospital and Clinics.

106 - (122 [00C 6818, paragraph/claim]). Between July 10, 1992 and June 2, 1993, Defendants Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig and Dr. Howard Kotler cared for and attended plaintiff, Bart A. Ross, for squamous cell carcinoma of the floor of the mouth at the University of Illinois Hospital and Clinics, continued by other physicians until March 1995.

107 - (123 [00C 6818, paragraph/claim]). Between July 10, 1992 and June 2, 1993, defendants subjected plaintiff Bart A. Ross willfully, intentionally and maliciously to one or more of negligent acts which fell bellow acceptable standard of medical care in the United States and constitute excessive use of force and battery meant to injure, impose tremendous suffering and destroy quality of life of the plaintiff, as follows:

(c) improperly, through fraudulent concealment, without plaintiff's knowledge and consent, subjected plaintiff to combined radiation treatment as primary treatment to be followed by surgery **(A160-189, A400; A349 at A350, A715j at A715k)**; [Exhibits App.51, 98, 159, 164]

108 - (124 [00C 6818, paragraph/claim]). Subjecting plaintiff to radiation therapy as primary treatment without plaintiff knowledge and consent, and other acts of fraudulent concealment set hereinbefore were in violation of Illinois Code of Civil Procedure 735 ILCS 5/2-622 "Healing art malpractice", 735 ILCS 5/13-215 "Fraudulent concealment", of the Illinois Criminal Code 720 ILCS 5/12-4.1 "Heinous battery", and in violation of

61

U.S. Food and Drugs Administration regulation HHS, Part 50 (21 CFR Ch. I (4-1-99 Edition) in e50.23 **(A139-140)**, which allows medical institutions to wave informed consent and to perform some medical procedures absent of informed consent only for studies of emergency treatment in which available treatments are unproven or inadequate, and when:

(1) The human subject is confronted by a life-threatening situation necessitating the use of test article.
(2) Informed consent cannot be obtained from the subject because of an inability to communicate with, or obtain legally effective consent from the subject.
(3) Time is not sufficient to obtain consent from the subject legal representative.
(4) There is available no alternative method of approved or generally recognized therapy that provides an equal or greater likelihood of saving the life of the subject.;

109 - (125 [OOC 6818, paragraph/claim]). That in the case of plaintiff treatment none of the aforesaid exemptions of U.S. Food and Drugs Administration regulation HHS, Part 50 (21 CFR Ch. I (4-1-99 Edition) in § 50.23 relieving defendants from obtaining informed consent from plaintiff was applicable, as:

(a) plaintiff's treatment was not experimental, as:

(1) surgery is a routine treatment of cancers since the times immemorial;

(2) external radiation was applied since 1896 **(A588 at A589)**; [Exhibit App.658]

(3) radiation therapy utilizing radioactive implants was applied since 1901 **(A584 at A585)**...; [Exhibit App.657]

(7) plaintiff was able to communicate with treating him physicians;

(8) there was sufficient time to obtain from plaintiff proper informed consent; and

(b) denying plaintiff surgery alone to treat his condition without proper informed consent, and through willful, intentional and malicious misinforming plaintiff that surgery alone would be too devastating cosmetically and functionally **(par. 16, 58)**;...

(e) willful, intentional and malicious subjecting plaintiff to radiation treatment as primary treatment without his knowledge and consent **(A160-189, A400)**;

(f) willful, intentional and malicious inducing radiation failure through technical fraud in design and inserting implant Ir-192 in plaintiff's mouth to procure radiation therapy as primary treatment without plaintiff's knowledge and consent **(A568-579, A214 at A218, A374 at A376, A715d at A715g; A642o at A642q)**;...

are contradiction and violation of Hippocratic Oath physicians sworn to, and violation of paragraphs (1) and (4) of the U.S. Food and Drugs Administration regulation HHS, Part 50 (21 CFR Ch. I (4-1-99 Edition) § 50.23:

(1) The human subject is confronted by a life-threatening situation necessitating the use of test article.

(4) There is available no alternative method of approved or generally recognized therapy that provides an equal or greater likelihood of saving the life of the subject;

as there were available nondestructive methods of treatment by surgery alone **(A349 at A350, A715j at A715k; par. 58)** or by external radiation only **(A374 at A376-377, A715d at 715g)**...

110 - (127 [OOC 6818, paragraph/claim]). By the conduct and acts or omissions of excessive force and battery alleged herein, the defendants deprived the plaintiff of enjoying and exercising his rights, privileges and immunities as a citizen of the United States and the State of Illinois, including, but not limiting to his right to be treated for his medical conditions according to acceptable standard of care in the United States with his knowledge and consent, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a permanent patient to doctors (plaintiff would have died if he did not subject himself to surgery of April 15, 1993, additional to radiation therapy), to his right not to be deprived of life or property (to be free from pain, suffering, facial

63

disfigurement and dysfunctionality of his mouth) without due process of law or equal protection of the law, as secured by Fourteenth and Thirteenth Amendments to the United States Constitution.

111 - (128 [OOC 6818, paragraph/claim]). Such acts or omissions, as alleged and set forth herein, were committed by the defendants willfully, intentionally and maliciously, without any medical justification, and for the purpose of depriving plaintiff of his constitutional rights under the law.

112 - (129 [OOC 6818, paragraph/claim]). As a direct and proximate result of the conduct alleged herein the plaintiff BART A. ROSS suffered and/or suffers:

(a) radical wide marginal mandibulectomy from molar to molar, a skin graft, a tracheostomy, and wide surgical resection of the floor of mouth and tongue after radiation therapy, as evidenced by Exhibit **(A202-203)**;

(b) facial disfigurement **(A207)**, including loss of about 1/2 inch of the height of his lower jaw and about 40% of the muscle amount of his anterior chin and lower lip until present, and that this process is progressing increasing dysfunctionality of plaintiff's mouth and increasing disfigurement of plaintiff's face;

(c) great anguish in mind and uncontrollable pain as evidenced by Exhibit **(A208)**, which continued as uncontrollable pain until about September 1993, then continued as very high level of pain until about June 1994, described by physicians as *"debilitating and painful"* Exhibit **(A610 at A611)**, *"suffering one of the most agonizing imaginable"* Exhibit **(A238 at A239)**, and suffering of pain at present and suffering of chronic pain in the future;

(d) numbness of lower lip, restricted movement of tongue and speech impairment,

(e) loss of all lower and loss of all upper teeth, dryness in mouth;

(f) being permanently impaired;

64

(g) being required to undergo medical treatment in the administration of drugs, periodic hospitalizations and surgeries, which Plaintiff underwent since about March 17, 1997 in the form of 40 sessions of hyperbaric oxygen treatment, "gingevectomy plasty quad" to make room for upper dentures, bone graft surgery from his hip to mandible **(A242)**, which unfortunately was lost, and surgery to lower jaw on June 1, 1998;

(h) being liable, for substantial hospital and medical bills and expenses, and other like expenses;

(i) adverse effect on ability to participate in his occupation, suffering a large loss of earnings as result thereof;

(j) disability after the surgery of April 15, 1993 granted retroactively since June 1992 **(A206, A247a; A189 and A186-187)** continuing until present. Plaintiff's disability was revoked since June 2000, plaintiff concludes as the result of his sticking out into face of the entire Government. However, plaintiff is still disabled as the result of 8 years of subjecting him physically, psychologically and emotionally to *"suffering one of the most agonizing imaginable"* **(A238 at A239)**, *"painful and debilitating"* **(A610 at A611),** and *"...postoperative course of patient treated with radical surgery is marked by devastating changes in function and in body image. These changes result in even more far-reaching effects on the physical health, emotional well being, social life, sex life, and financial status of the patient* **(A207, A612 at A613)**, and depriving him basic Civil Rights;

(l) being permanently impaired from pursuing his usual and ordinary activities and being impaired and deprived in the future from the ability to perform such usual and ordinary activities.

all to plaintiff's detriment, instead of:

(1) treating plaintiff with very limited surgery **(A349 at A350; A715j at A715k; and above paragraph "58")** resulting in plaintiff's sickness lasting maximum 2 to 3 months, and eventually losing at most a few lower incisor teeth. It is a common knowledge that injury without radiation, e.g. broken leg causes disability lasting weeks only; or

(2) treating plaintiff with external radiation only **(A374 at A376-377 and A715d at A715g)** without removal of any plaintiff's teeth resulting in plaintiff's sickness about 4 months only. This assertion is based upon fact that after treatment by radioactive implant treatment ended on October 16, 1992, pain came down in about 2 months to the point that plaintiff began to work at the end of December 1992, and Dr. Galinsky in his report to Social Security provided that plaintiff was sick until January 1, 1993 **(A186-187)**, this is 2-1/2 months after completion of radioactive treatment.

WHEREFORE, plaintiff prays for relieve as follows:

A - (A $^{00C\ 6818,\ Count\ 1\ demand.}$). Judgment for compensatory damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG and DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

B - (B $^{00C\ 6818,\ Count\ I\ demand.}$). Judgment for punitive damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, and DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

66

C - (C [00C 6818, Count I demand.]). Judgment for compensatory damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

D - (D [00C 6818, Count I demand.]). Judgment for punitive damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

E - (E [00C 6818, Count I demand.]). Reasonable attorneys' fees and costs.

## COUNT II (Counts III-IV [00C 6818, Count])
### (Section 1985(3) and Section 1983 Conspiracy Claim)

1 - 112. Plaintiff incorporates paragraphs 1 through 112 of the Complaint by reference as and for paragraphs 1 through 112 of Count II as though fully set forth herein.

1 [00C 6818, paragraph] - 141 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 141 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 141 [00C 6818, paragraph] of Count II as though fully set forth herein.

113 - (136 [00C 6818, paragraph/claim]). The defendants are DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS.

114 - (137 [00C 6818, paragraph/claim]). Between July 10, 1992 and June 2, 1993, defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS cared for and attended plaintiff, Bart A. Ross, for squamous cell

67

carcinoma of the floor of the mouth, continued by other physicians until March 1995, at the University of Illinois at Chicago Hospital and Clinics.

115 - (138 [OOC 6818, paragraph/claim]). Between July 10, 1992 and June 2, 1993, defendants during their care and attendance to the plaintiff for squamous cell carcinoma of the floor of the mouth, defendants physicians and the hospital willfully, intentionally and maliciously conspired, planned and agreed to assault plaintiff through excessive force and battery, and subject plaintiff through fraudulent concealment, without his knowledge and consent, to treatment with radiation therapy as primary treatment to be followed by surgery and prevent plaintiff's discovery of such mistreatment;...

116 - (139 [OOC 6818, paragraph/claim]). By the conduct and acts or omissions of excessive force and battery alleged herein, the defendants deprived the plaintiff of enjoying and exercising his rights, privileges and immunities as a citizen of the United States and the State of Illinois, including, but not limiting to his right to be treated for his medical conditions according to acceptable standard of care in the United States with his knowledge and consent, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a patient to doctors (plaintiff would have died if he did not undergo surgery of April 15, 1993), to his right not to be deprived of life or property (to be free from disability, pain and suffering, facial disfigurement and dysfunctionality of his mouth) without due process of law or equal protection of the law, as secured by Fourteenth and Thirteenth Amendments to the United States Constitution, and caused injury as hereinabove alleged in paragraphs 59 [OOC 6818, paragraph], 129 [OOC 6818, paragraph].

117 - (140 [OOC 6818, paragraph/claim]). Such acts or omissions, as alleged and set forth herein, were committed by the defendants willfully, intentionally and maliciously, without medical

justification and against the law, and for the purpose of depriving plaintiff of his constitutional rights under the law.

118 - (142 ᴼᴼᶜ ⁶⁸¹⁸, ᵖᵃʳᵃᵍʳᵃᵖʰ/ᶜˡᵃⁱᵐ). That the defendants and each of them did conspire among themselves to deprive plaintiff of his constitutional rights to be treated according to the standard of medical care in the United States, by engaging in cover up of the use of excessive force and battery in plaintiff's treatment and prevent plaintiff from discovery of the use of such excessive force battery used upon plaintiff as hereinafter alleged.

119 - (143 ᴼᴼᶜ ⁶⁸¹⁸, ᵖᵃʳᵃᵍʳᵃᵖʰ/ᶜˡᵃⁱᵐ). That an explicit or implicit "meeting of minds" occurred among the defendants on July 10, 1992 and continuing thereafter in which an agreement was reached wherein the defendants did engage in one or more of the following overt acts or omissions to effectuate and promote the conspiracy:

(a) agreed between themselves to subject plaintiff to radiation therapy and surgery combined without plaintiff's knowledge and consent;

(g) agreed between themselves to improperly design and to improperly insert in plaintiff's mouth radioactive implant Ir-192 to cause radiation therapy failure and procure radiation therapy as primary treatment, without plaintiff's knowledge and consent;

(h) agreed between themselves to delay planned secondary treatment modality surgery about 6 months without plaintiff's knowledge and consent;

(l) agreed between themselves to falsify official plaintiff's medical records, x-rays, and report to Social Security dated January 21, 1993 that plaintiff's tumor responded to radiation therapy and no other additional test was needed.

120 - (144 ᴼᴼᶜ ⁶⁸¹⁸, ᵖᵃʳᵃᵍʳᵃᵖʰ/ᶜˡᵃⁱᵐ). That defendants committed these overt acts or omissions as heretofore described with the joint objective of injuring the plaintiff as hereinabove alleged in

69

paragraphs 59 [00C 6818, paragraph/claim] and 129 [00C 6818, paragraph/claim], concealing the use of excessive force and battery against plaintiff, preventing plaintiff's discovery of the true circumstances of his injuries and use of excessive force in the treatment of his cancer, and depriving the plaintiff of enjoying and exercising his rights, privileges and immunities as a citizen of the United States and the State of Illinois, including, but not limiting to his right to be treated for his medical conditions according to acceptable standard of care in the United States with his knowledge and consent, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a patient to doctors (plaintiff would have died if he did not undergo surgery of April 15, 1993), to his right not to be deprived of life or property (to be free from disability, pain and suffering, facial disfigurement and dysfunctionality of his mouth) without due process of law or equal protection of the law, as secured by Fourteenth Amendment and Thirteenth Amendment to the United States Constitution, and caused injury as hereinabove alleged in paragraphs 19 - (59 [00C 6818, fact]), 112 - (129 [00C 6818, paragraph/claim]).

121 - (145 [00C 6818, paragraph/claim]). That the explicit or implicit agreements of the defendants to cover up the use of excessive force as heretofore described were first made on July 10, 1992 and have continued and reoccurred until about November 25, 1996, when they withdrew their affidavits supporting motion for summary judgment.

WHEREFORE, plaintiff prays for relieve as follows:

A - (A [00C 6818, Count IV demand]). Judgment for compensatory damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG and DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

B - (B [00C 6818, Count IV demand.]). Judgment for punitive damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, Dr. EDWARD BRUNNGRABER, DR. BARRY WENIG and DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

C - (C [00C 6818, Count IV demand.]). Judgment for compensatory damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

D - (D [00C 6818, Count IV demand.]). Judgment for punitive damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

E - (E [00C 6818, Count IV demand.]). Reasonable attorneys' fees and costs.


## COUNT III (Count V [00C 6818, Count])
(Section 1983 Denying Access To Courts)

1 - 121. Plaintiff incorporates paragraphs 1 through 121 of the Complaint by reference as and for paragraphs 1 through 121 of Count III as though fully set forth herein.

1 [00C 6818, paragraph] - 145 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 145 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 145 [00C 6818, paragraph] of Count III as though fully set forth herein.

122 - (146 [00C 6818, paragraph/claim]). The defendant is the State of Illinois.

123 - (147 [00C 6818, paragraph/claim]). That to recover for wrongs and injuries to his parson on account of medical malpractice inflicted upon plaintiff by defendants Dr. Briele, Dr. Galinsky,

71

Dr. Wenig, Dr. Kotler, and University of Illinois at Chicago Hospital and Clinics, plaintiff, Bart

A. Ross, was required to file affidavit/report of a physician, pursuant to Illinois Code of Civil

Procedure, Section 5/2-622 "Healing art malpractice", stating:

 (a) that there is a reasonable and meritorious cause for filing of such action;

 (b) that there was negligence involved in treatment of the plaintiff;

 (c) that reasonable physician would have informed plaintiff/patient of the

  consequences of the procedure performed upon plaintiff;

 (d) clearly identifying plaintiff BART A. ROSS and the reasons for reviewing

  health professional determination that a reasonable and meritorious cause

  for the filing of the action exists.

 124 - (148 [OOC 6818, paragraph/claim]). That since about April 9, 1993 **(A33)** until the end of

September 1996, plaintiff took all possible steps to have his medical reviewed for legal purposes:

 125 - (149 [OOC 6818, paragraph/claim]). Plaintiff contacted over 100 attorneys.

 126 - (150 [OOC 6818, paragraph/claim]). Plaintiff contacted over the phone about 200 physicians

and/or healthcare providers in Illinois and continental United States, including Alaska to no

avail. Most of physicians refused even to talk to plaintiff after his disclosure that he seeks review

of his medical record for legal purposes.

 127 - (151 [OOC 6818, paragraph/claim]). Plaintiff traveled about 5,000 miles to see physicians to

review his medical record for legal purposes. Plaintiff traveled about 10 times to Milwaukee,

Wisconsin, once to Madison, Wisconsin, once to Cleveland, Ohio, once to Peoria, Illinois, once

to New York City, New York, once to Houston, Texas, once to Dallas, Texas, among numerous

other places within State of Illinois, and once to Gary, Indiana, all to no avail.

128 - (155 [00C 6818, paragraph/claim]).   Plaintiff obtained affidavits of Dr. Ward **(A374)** and Dr. Laursen **(A349)** only as the result of a bit of luck.

129 - (156 [00C 6818, paragraph/claim]).   If plaintiff did not obtain affidavits of Dr. Ward **(A374)** and Dr. Laursen **(A349)**, plaintiff's cause would be dismissed on motion for summary judgment field on September 6, 1996 **(A316)** supported by perjurious affidavits of defendants Dr. Galinsky **(A318)** and Dr. Wenig **(A323)**... These perjurious affidavits defendants withdrew on November 25, 1996 together with motion for summary judgment after plaintiff's filing affidavits of Dr. Ward and Dr. Laursen **(A326)**.

130 - (157 [00C 6818, paragraph/claim]).   Plaintiff claims that Statute 735 ILCS 5/2-622 "Healing art malpractice" of the Illinois Code of Civil Procedure requiring a report/affidavit from a physician and an attorney's affidavit is unconstitutional in that it violates the Fourteenth Amendment of the Constitution of the United State of America, in that it:

(a) denies plaintiff due process of law and equal protection of the law;

(b) in effect it denies an injured or wronged party an opportunity to freely, completely and promptly obtain justice by law;

(c) effectively denies a plaintiff a right to trial by jury;

(d) allocates to the medical profession the judicial power vested in courts...

131 - (158 [00C 6818, paragraph/claim]).   Out of over 100 attorneys plaintiff contacted prior to and after filing Complaint at Law, three of the attorneys had plaintiff's medical record reviewed by health care professionals denying any negligence **(A44, A72, A80)**, and such information lawyers provided to the Circuit Court, Judge Hogan presiding **(A261 at A262-263)** at the time when plaintiff understood all wrongs with the radiation therapy by implant Ir-192 and provided extensive documentation in support thereof.

73

132 - (159 $^{00C\,6818,\,paragraph/claim}$). Statute 735 ILCS 5/2-622 "Healing art malpractice"

requiring a report/affidavit from a physician denies an injured plaintiff access to courts, denies

any recovery for injuries...

133 - (160 $^{00C\,6818,\,paragraph/claim}$). Illinois Appellate Court revoked, without having

jurisdiction, Judge Hogan's ruling that Dr. Bruckman's report of August 2, 1995 is sufficient as to

all defendants and to all allegations of surgery of the original Complaint **(A265, A262-6, A278)**,

and denied plaintiff affidavits of Dr. Ward **(A374)** and Dr. Laursen **(A349)** and Dr. Laursen's

reports section 2-622 of the Code **(A379, A381)** in application to allegations of surgery of the

original Complaint, fraudulently removed by representing plaintiff attorney Margaret O'Leary, on

bases that none of the reports and affidavits specifically stated that surgery was improperly

performed **(A659-660)**.

> After contacting about 200 doctors and traveling thousand of miles, Ross found no
> medical professionals willing to support the claim he raised against Kotler and Wenig in
> the original complaint. No medical expert would say that Kotler or Wenig acted
> negligently in the performance of the salvage surgery... In light of the requirements of
> section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1996)), Ross'
> counsel properly realized that she could not in good faith retain in the amended complaint
> the allegations from the original complaint which no expert would support. The lack of
> expert support for the original allegations also justifies the trial court's decision to
> disallow amendment of the complaint to reinstate the original allegations against Kotler
> and Wenig. See Calamari v. Drammis, 286 Ill.App.3d 420, 435, 676 N.E.2d 281 (1997).
> **(A659-660)**

Plaintiff's counsel had no right to defraud plaintiff from original allegations of surgery, and had

plaintiff sign the Amended Complaint on March 4, 1997 **(A354 at A371)**, after signing Contract

with plaintiff to prosecute his all claims of malpractice on January 4, 1997 **(A352)**... The Circuit

Court's, Judge Bronstein presiding argument to deny plaintiff reinstatement of the original

allegations of surgery was:

74

THE COURT: It was your election through your counsel to abandon the earlier counts against Wenig and Kotler. It wasn't the Court's insistence, it wasn't at counsel's insistence. It wasn't, it was your work...

it is irrelevant whether the surgery of April 15, 1993 was performed incorrectly/negligently, or whether it could be considered, based upon the extend of cancer reoccurrence on the day of April 15, 1993, as not negligently performed. What is relevant, that the negligence was intentional, willful and malicious, through fraudulent concealment without plaintiff's knowledge and consent/excessive force and battery, selecting surgery as additional to radiation treatment, and every element of surgery caused cumulatively major devastating injury, which put plaintiff on disability, caused facial disfigurement, suffering, loss of all teeth, etc., as hereinabove described...

134 - (162 $^{00C\ 6818,\ paragraph/claim}$). Illinois Supreme Court denied plaintiff even to appeal dismissal of his cause in conspiracy of representing plaintiff attorney Margaret O'Leary, defendants' attorney Michael Krause, the Circuit Court, Judge Bronstein presiding and Appellate Court, First District, Second Division. **(A643)**

135 - (163 $^{00C\ 6818,\ paragraph/claim}$). The Supreme Court of Illinois in its decision in 1992 in DeLuna v. St. Elizabeth Hospital upheld constitutionality of section 2-662 on bases *Section 2-622 is designed to reduce the number of frivolous suits that are filed and to eliminate such action at an early stage, before the expense of litigation have mounted* DeLuna v. St. Elizabeth Hospital, 147 Ill.2d 57 at 65 (1992), then

the Supreme Court of Illinois refused to recognize that plaintiff was *frivolously mistreated through excessive force and battery* half a year later after decision in DeLuna (February 1992) to what no criminal can be legally subjected, pursuant to the Eighth Amendment to the United States Constitution, by physicians who swore to Hippocratic Oath...

the Supreme Court of Illinois refused to recognize that plaintiff was deprived equal

protection of the law and denied subpoena Dr. Schabinger by Circuit Court, Judge Bronstein

presiding based upon *frivolous argument* that it would be *harassment* of the physician:

> THE COURT: Just because you don't like the opinion doesn't mean you can call them in,
> subpoena them and harangue them and *harass them* to get the point of view or an opinion
> that you desire. **(A314)**

136 - (164 [OOC 6818, paragraph/claim]).  The defendant State of Illinois denied plaintiff equal

protection of law, and since April 1993 denied plaintiff any health professional expert witness

from within the State of Illinois even through lawyers who reviewed plaintiff's medical record

with health professionals **(A262-263)** and **(A44, A72, A80)**, and denied to plaintiff any health

professional expert witness from within the State of Illinois when plaintiff understood wrongs of

his mistreatment and raised his demands of due process to highly aggressive level **(A5, A20)**, and

then defendant State of Illinois denied plaintiff application of existing law and stripped plaintiff

from Dr. Bruckman's report section 2-622 of the Code established sufficient by Judge Hogan

**(A265)**, and stripped plaintiff from expert witnesses Dr. Ward and Dr. Laursen and their

affidavits and section 2-622 reports, plaintiff found himself in the State of Texas after 3-1/2

years, contacting about 200 physicians/medical centers nationwide, contacting over 100

attorneys, and traveling about 5,000 miles, as set in above paragraph 63-80 and 147-155, and

then

137 - (167 [OOC 6818, paragraph/claim]).  Defendant State of Illinois, by willful, intentional and

malicious violating plaintiff's, guaranteed by Fourteenth Amendment to the United States

Constitution, right to equal protection of laws and access to courts, have directly and indirectly,

prevented the plaintiff from enjoying and exercising his rights, privileges and immunities as a

citizen of the United States and the State of Illinois, including, but not limiting to his right to be

treated for his medical conditions according to acceptable standard of care in the United States with his knowledge and consent, and subsequently, to his right not to be deprived of life or property (to be free from pain, suffering, facial disfigurement and dysfunctionality of his mouth) without due process of law, and further, defendant State of Illinois deprived and deprives plaintiff for more than 7 years ability to salvage his life by delaying resolution of his cause and recovery for injuries, resulting in inflicting additional non-reversible, equal to initial mistreatment in 1992-93, injuries to plaintiff's jaw, mouth and life with increasing facial disfigurement and mouth dysfunctionality making it more and more difficult any attempt to correct it through additional surgeries, plaintiff needs since April 1993 (plaintiff underwent already 3 surgeries in 1997-98), and resulting in increasing inability to perform those usual things/activities, which every person takes for granted.

138 - (168 [00C 6818, paragraph/claim]). Such willful, intentional and malicious violations of plaintiff's civil rights guaranteed by Fourteenth Amendment to the United States Constitution of denying access to courts increased magnitude of plaintiff's involuntary servitude to doctors as a patient, and violates plaintiff's right to the Thirteenth Amendment to the Constitution of the United States, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a patient to doctors, in addition to his right not to be deprived of life or property without due process of law or equal protection of the law, as secured by Fourteenth Amendment to the United States Constitution, and caused injury to the plaintiff of dismissal of his cause of action against defendants-physicians and terminating his cause of action against University of Illinois at Chicago Hospital and Clinic in as hereinabove alleged.

WHEREFORE, plaintiff prays for relieve as follows:

77

A - (A [00C 6818, Count V demand,]). Judgment for compensatory damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of ONE HUNDRED ($100,000,000.00) MILLION DOLLARS.

B - (B [00C 6818, Count V demand,]). Judgment for punitive damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of ONE HUNDRED ($100,000,000.00) MILLION DOLLARS.

C - (C [00C 6818, Count V demand,]). Reasonable attorneys' fees and costs.

## COUNT IV (Count VI-VII [00C 6818, Counts])
### (Section 1985(3`) and Section 1983 Conspiracy Claim)

1 - 138. Plaintiff incorporates paragraphs 1 through 138 of the Complaint by reference as and for paragraphs 1 through 138 of Count IV as though fully set forth herein.

1 [00C 6818, paragraph] - 196 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 196 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 196 [00C 6818, paragraph] of Count IV as though fully set forth herein.

139 - (169 [00C 6818, paragraph/claim]). The defendants are the State of Illinois, attorneys MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, Dr. HENRY BRIELE, Dr. DENNIS GALINSKY, Dr. EDWARD BRUNNGRABER, Dr. BARRY WENIG, Dr. HOWARD KOTLER, and UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS.

140 - (170 [00C 6818, paragraph/claim]). Between about June 11, 1996 until present defendant State of Illinois represented by one or more or all of the branches, parts and or offices and/or

78

individuals of the Illinois Government comprised of the Governor, the General Assembly, the Supreme Court, the Appellate Court First District Second Division, the Circuit Court of Cook County, Judge Philip Bronstein presiding, the Circuit Court of Cook County, Judge Donald O'Brien presiding, the Court of Claims, Illinois State Attorney of Cook County, Department of Professional Regulation, State of Illinois Judicial Inquiry Board, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, together with

defendants Margaret O'Leary, Eileen Lysaught, Michael Krause, Barry Bollinger, Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics

willfully and maliciously conspired, planned and agreed to dismiss plaintiff's cause of action on account of medical malpractice committed by defendants Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics during care for and attendance to plaintiff, Bart A. Ross for squamous cell carcinoma of the floor of the mouth between July 10, 1992 and June 2, 1993, and

violated plaintiff's civil rights of the equal protection of the law and deprived plaintiff from enjoying equal rights, privileges and immunities of citizens under the laws of the United States and the State of Illinois, including, but not limited to his right to be treated for medical conditions according to standard of care in the United States, not to be enslaved and/or subjected to involuntary servitude as a permanent patient to doctors, nor deprived of life, liberty or property without due process of law or equal protection of the law...

141 - (196[00C 6818, paragraph/claim]). By the conspiracy and acts of excessive force and battery of the defendants against plaintiff pursuant thereto, and abuse of the power and authority of the

79

office, defendants have willfully, intentionally and maliciously, directly and indirectly, increased the magnitude of plaintiff's involuntary servitude to doctors as a patient to stop progressing devastation to his jaw and mouth (plaintiff already underwent 3 surgeries to his mouth in 1997-98, and now due to not successful bone graft surgery on August 25, 1997 **(A242)** and developed delayed osteoradionecrosis in June 2000 **(A247b-c)** plaintiff will need free flap reconstruction), and prevented the plaintiff from enjoying and exercising his rights, privileges and immunities as a citizen of the United States and the State of Illinois, including, but not limiting to his right to be treated for his medical conditions according to acceptable standard of care in the United States with his knowledge and consent, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a permanent patient to doctors, to his right not to be deprived of life or property (to be free from disability, pain and suffering, facial disfigurement and dysfunctionality of his mouth as hereinabove alleged) without due process of law or equal protection of the law, as secured by Fourteenth Amendment and Thirteenth Amendment to the United States Constitution, and caused injury to the plaintiff of dismissal of his cause of action against defendants-physicians and terminating his cause of action against University of Illinois at Chicago Hospital and Clinic in as hereinabove alleged.

142 - (197[00C 6818, paragraph/claim]). That the defendants

State of Illinois represented by one or more or all of the branches, parts and or offices and/or individuals of the Illinois Government comprised of the Governor, the General Assembly, the Supreme Court, the Appellate Court First District Second Division, the Circuit Court of Cook County, Judge Philip Bronstein presiding, the Circuit Court of Cook County, Judge Donald O'Brien presiding, the Court of Claims, State Attorney of Cook County, Illinois Department of

Professional Regulation, State of Illinois Judicial Inquiry Board, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, together with

defendants Margaret O'Leary, Michael Krause, Eileen Lysaught, Barry Bollinger, Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics

and each of them did conspire between themselves with one or more of the defendants to deprive the plaintiff of his constitutional rights and dismiss his cause of medical malpractice committed by defendants Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics during care for and attendance to plaintiff, Bart A. Ross for squamous cell carcinoma of the floor of the mouth between July 10, 1992 and June 2, 1993.

143 - (198[00C 6818, paragraph/claim]). That an explicit or implicit "meeting of minds" occurred among the defendants on about July 10, 1992 and continuing thereafter in which an agreement was reached wherein the defendants did engage in one or more of the following overt acts to effectuate and promote the conspiracy:

(a) agreed between themselves to deny the plaintiff equal protection of the law;

(b) agreed between themselves to violate existing law and deny plaintiff application of the existing law;

(c) agreed between themselves to falsify medical records, give and did give affidavits and testimony during evidence deposition with false facts to the Circuit Court;

(d) agreed between themselves to deny plaintiff access to courts, deny depositions of defendants doctors, deny subpoena of medical, of dental and of other records, and deny subpoena of hostile expert witnesses;

81

(e) agreed between themselves to file motion for summary judgment supported by perjurious affidavits of defendants Dr. Galinsky and Dr. Wenig to dismiss plaintiff's claim, later withdrawn after plaintiff filed affidavits of Dr. Ward and Dr. Laursen;

(f) agreed between themselves to intimidate plaintiff's hostile expert witnesses to deprive plaintiff expert testimony and dismiss plaintiff's cause based upon perjurious affidavits of defendants Dr. Galinsky and Dr. Wenig;

(g) agreed between themselves to prepare plaintiff's Amended Complaint improperly and remove allegations of surgery, not plead continuous negligent treatment doctrine, not plead fraudulent concealment, not plead subjecting plaintiff to radiation therapy as primary treatment without his knowledge and consent, not plead discovery rule, terminate Dr. Galinsky's treatment from June 2, 1993 to April 15, 1993 in the Amended Complaint, not provide proper support of Dr. Laursen's report section 2-622 **(A379)** in attorney's affidavit **(A372),** and have sign such improperly prepared complaint by plaintiff to put blame on plaintiff for such preparation of the Amended Complaint;

(h) agreed between themselves to terminate last date of treatment of the plaintiff by defendant Dr. Galinsky from June 2, 1993 to February 17, 1993;

(i) agreed between themselves to suppress agreed to depositions of the plaintiff and of the defendants-physicians;

(j) agreed between themselves to dismiss plaintiff's entire cause of action against defendants Dr. Briele, Dr. Galinsky, Dr. Brunngraber, Dr. Wenig and Dr. Kotler with prejudice based upon improper defendants' affidavits of Dr. Briele, Dr. Galinsky and Dr. Brunngraber;

(k) agreed between themselves to terminate, without dismissing or otherwise ruling, plaintiff's claim against University of Illinois at Chicago Hospital and Clinics by

converting plaintiff's cause as against the Board of Trustees of the University of Illinois, in violation of the Rules and Statutes of the Illinois Court of Claims and Illinois Code of Civil Procedure;

(l) agreed between themselves to abuse the privileges of their office and or position to deprive plaintiff equal protection of law, deny plaintiff application of existing law, and suppress and dismiss plaintiff's cause of action.

144 - (199[00C 6818, paragraph/claim]). That defendants committed these overt acts as heretofore described with the joint objective of concealing of plaintiff's injuries, of the true circumstances and reasons for plaintiff's injuries, of concealing of conspiracy and abuse of the power of the office in dismissal of plaintiff's claim, and hindering the due course of justice by engaging in a cover up of the defendants' true involvement in the use of excessive force and abuse of the authority and power of the office, to deprive the plaintiff of his constitutional rights under the Fourteenth Amendment.

145 - (202[00C 6818, paragraph/claim]). That by violating plaintiff's civil rights, as described hereinabove, defendant the State of Illinois and all remaining defendants, denied plaintiff ability to salvage his life for more than 7 years since surgery of April 15, 1993 and inflicted additional non-reversible, equal to initial mistreatment in 1992-93, damages to plaintiff's jaw, mouth and every aspect of plaintiff's life, making it more difficult to correct it, and further increasing plaintiff's inability to perform those usual things/activities, which every person takes for granted, and which are guaranteed by Amendment 14 to the United States Constitution.

146 - (203[00C 6818, paragraph/claim]). Such violations of plaintiff's rights guaranteed by Fourteenth Amendment to the United States Constitution violates plaintiff's rights under the Thirteenth

83

Amendment to the Constitution of the United States, as it increases on plaintiff the magnitude of involuntarily servitude as a patient to doctors, and it is continuing.

147 - (204[00C 6818, paragraph/claim]). That the explicit or implicit agreements of the defendants to dismiss plaintiff's claim, to deprive plaintiff equal protection of the laws, to deprive plaintiff to access to courts through excessive force and battery in depriving plaintiff of existing law as hereinbefore described have were first made on July 10, 1992 and have continued and reoccurred to the present. That all of the overt acts and agreements heretofore described have been taken by the defendants with the express purpose of and mutual understanding to deprive the plaintiff of his constitutional rights, and resulted in injury to the plaintiff of dismissal of his cause of action against defendants-physicians and terminating his cause of action against University of Illinois at Chicago Hospital and Clinic in violation of the Fourteenth Amendment to the United States Constitution as hereinabove alleged.

WHEREFORE, plaintiff prays for relieve as follows:

A - (A [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS.

B - (B [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS.

C - (C [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff against defendant MARGARET O'LEARY in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

D - (D [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against

84

defendant MARGARET O'LEARY in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

E - (E [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff against defendant MICHAEL KRAUSE in the amount of THREE ($3,000,000.00) MILLION DOLLARS.

F - (F [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against defendant MICHAEL KRAUSE in the amount of THREE ($3,000,000.00) MILLION DOLLARS.

G - (G [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff against each of defendants EILEEN LYSAUGHT and BARRY BOLLINGER in the amount of ONE ($1,000,000.00) MILLION DOLLARS.

H - (H [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against each of defendants EILEEN LYSAUGHT and BARRY BOLLINGER in the amount of ONE ($1,000,000.00) MILLION DOLLARS.

I - (I [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

J - (J [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against each of defendants DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, and DR. HOWARD KOTLER in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

K - (K [00C 6818, Count VII demand.]). Judgment for compensatory damages in favor of the plaintiff

85

against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

L - (L [00C 6818, Count VII demand.]). Judgment for punitive damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of TWENTY FIVE ($25,000,000.00) MILLION DOLLARS.

M - (M [00C 6818, Count VII demand.]). Reasonable attorneys' fees and costs.


## COUNT V (Count VIII [00C 6818, Count])
### (Section 1983 and 1986 Failure to Prevent The Use Of Excessive Force)

1 - 147. Plaintiff incorporates paragraphs 1 through 147 of the Complaint by reference as and for paragraphs 1 through 147 of Count V as though fully set forth herein.

1 [00C 6818, paragraph] - 204 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 204 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 204 [00C 6818, paragraph] of Count V as though fully set forth herein.

148 - (205 [00C 6818, paragraph/claim]). The defendants are the STATE OF ILLINOIS, attorneys MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER and UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS.

149 - (206 [00C 6818, paragraph/claim]). Between July 11, 1996 and September 15, 2000, while plaintiff's Bart A. Ross sought recovery for injuries to his person in civil action against defendants Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig,

Dr. Howard Kotler, and the University of Illinois at Chicago Hospital and Clinics, arising from medical malpractice committed by aforesaid defendants during the care and attendance to plaintiff for squamous cell carcinoma of the floor of the mouth between July 10, 1992 and June 2, 1993, one or more of the defendants

the State of Illinois represented by one or more or all of the branches, parts and or offices and/or individuals of the Illinois Government comprised of the Governor, the General Assembly, the Supreme Court, the Appellate Court First District Second Division, the Circuit Court of Cook County, Judge Philip Bronstein presiding, the Circuit Court of Cook County, Judge Donald O'Brien presiding, the Court of Claims, Department of Professional Regulation, State of Illinois Judicial Inquiry Board, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois,

attorneys Margaret O'Leary, Eileen Lysaught, Michael Krause, Barry Bollinger, physicians Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics,

witnessed, observed or participated in the use of excessive force and battery against the plaintiff committed by one or more of the defendants State of Illinois, Margaret O'Leary, Eileen Lysaught, Michael Krause, Barry Bollinger, Dr. Henry Briele, Dr. Dennis Galinsky, Dr. Edward Brunngraber, Dr. Barry Wenig, Dr. Howard Kotler, and University of Illinois at Chicago Hospital and Clinics resulting in injury to the plaintiff and dismissal of plaintiff's cause of action.

150 - (207[00C 6818, paragraph/claim]). That during the period of time July 11, 1996 through September 15, 2000, one or more of the defendants failed to restrain one or more of the other defendants from committing one or more of the following acts of excessive force against the plaintiff described thereinbefore:

87

(a) denying plaintiff access to properly subpoenaed medical and hospital administrative records, paragraphs 93, 173;

(b) denying plaintiff subpoena of defendants-physicians Dr. Briele, Dr. Wenig, Dr. Kotler, paragraphs 90, 172;

(c) denying plaintiff equal protection of the law and denying subpoena of a hostile healthcare expert witness, paragraphs 92, 175;

(d) providing false information under oath during evidence deposition, they new was false, paragraphs 91, 174;

(e) providing false information under oath in sworn to affidavits, they new was false, paragraphs 89, 98, 178;

(f) tempering with plaintiff's consulting physicians/hostile expert witnesses, paragraphs 97, 176;

(g) denying plaintiff change of venue in spite of open railroading toward dismissal of plaintiff's cause by Circuit Court, Judge Bronstein presiding, paragraphs 94, 100, 177, 179;

(h) filing motion for summary judgment to dismiss plaintiff's cause, supported by affidavits of Dr. Galinsky and Dr. Wenig, they new were providing false information, paragraphs 89, 98, 178;

(i) conspiracy between Circuit Court, Judge Bronstein presiding, attorney representing plaintiff Margaret O'Leary, attorney representing defendants-physicians Michael Krause to dismiss plaintiff's cause of action, paragraphs 99-116, 180-190;

(j) suppressing deposition of the plaintiff and of the defendants-physicians, paragraphs 102, 182;

(k) converting plaintiff's claim Bart A. Ross v. University of Illinois at Chicago Hospital and Clinics to Bart A. Ross v. Board of Trustees of the University of Illinois, they new was in violation of the law, paragraphs 120, 195.

151 - (207[00C 6818, paragraph/claim]-[second]). That the defendants failure and refusal to prevent use of excessive force upon plaintiff deprived plaintiff of his rights as secured under Fourteenth Amendment to the United States Constitution, and caused injury of dismissal of his cause of action against defendants-physicians and terminating his cause against University of Illinois at Chicago Hospital and Clinic as hereinabove alleged.

WHEREFORE, plaintiff prays for relieve as follows:

A - (A [00C 6818, Count VIII demand]). Judgment for compensatory damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of ONE HUNDRED ($100,000,000.00) MILLION DOLLARS.

B - (B [00C 6818, Count VIII demand]). Judgment for punitive damages in favor of the plaintiff against defendant STATE OF ILLINOIS in the amount of ONE HUNDRED ($100,000,000.00) MILLION DOLLARS.

C - (C [00C 6818, Count VIII demand]). Judgment for compensatory damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

D - (D [00C 6818, Count VIII demand]). Judgment for punitive damages in favor of the plaintiff against defendant UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS in the amount of FIVE ($5,000,000.00) MILLION DOLLARS.

E - (E [00C 6818, Count VIII demand]). Judgment for compensatory damages in favor of the plaintiff against each of defendants MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN

LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER in the amount of ONE ($1,000,000.00) MILLION DOLLARS.

F - (F [00C 6818, Count VIII demand.]). Judgment for punitive damages in favor of the plaintiff against each of the defendants MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER in the amount of ONE ($1,000,000.00) MILLION DOLLARS.

G - (G [00C 6818, Count VIII demand.]). Reasonable attorneys' fees and costs.

## COUNT VI
(Section 1983 Denying Access To Courts)

1 - 151. Plaintiff incorporates paragraphs 1 through 151 of the Complaint by reference as and for paragraphs 1 through 151 of Count VI as though fully set forth herein.

1 [00C 6818, paragraph] - 207 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 207 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 207 [00C 6818, paragraph] of Count VI as though fully set forth herein.

152. That the Defendant is the UNITED STATES.

153. That prior to the devastation surgery of April 15, 1993, the second planned modality of treatment after "*Plan continues ∅ prim treatment ∅ radiation*" (App.51), without Plaintiff's knowledge and consent, Social Security Administration put in record "*...very angry at*

90

*becoming a handicapped person - determined to find out who is to blame.*" (Exhibit App.712-714 at 713).

(a) That Plaintiff found out that to blame for his injuries, destruction, ruining and wasting his life are the entire federal and States Governments, Mass Media and other democratic institutions and organizations, and in particular all Defendants named in this Complaint, because all the Defendants are doctors, lawyers and judges, all requiring the highest degree of trust to be put in them when performing their duties,

however, the UNITED STATES represented by Judiciary is to blame the most, as it is represented by individual judges who are independent entities specifically established to get to the truth and to upheld the Constitution and the Laws as the bases of Democracy, and who provided to all other Defendants, named in this Complaint, environment of total impunity for even the most heinous crimes, on bases of subversion of the judicial process, obstruction of justice through concealing or disguising physical evidence (facts on paper: pleadings and facts in the Complaint and facts in sworn to supporting exhibits and affidavits), providing false information, concealing the violators, and points of law which are acts of treason against the United States, the Sovereign, three fourth of the several States.

These are the words of the Congress during President Clinton impeachment hearings:

"Any assault on the administration of justice must be interpreted as a threat to our system of government... Perjury, tempering with witnesses, obstruction of justice, all deal in interest of truth. If we don't have truth in the judicial process and in the court's system in our Country, we don't have anything... Either in criminal or civil case obstruction undermines judicial system's ability to vindicate legal rights. If it is allowed to go unchecked, then the "system will become a farce" (Rep. Stephen Buyer); "When the law ends the tyranny begins" (Rep. Chris Cannon); "Lawlessness is an invitation to anarchy". (Rep. Chuck Canady)

154. That the UNITED STATES, established willfully, intentionally and maliciously by and through Supreme Court's decisions, amongst others, in *Wilson v. Garcia*, 471 U.S. 261 at

91

276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), and similar decisions, together with Court of Appeals for the Seventh Circuit decision in *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995), etc., and the Supreme Court's Rule 10, points of law under common law and rule of procedure,

which violate willfully, intentionally and maliciously the Constitution and the Laws of the United States, amongst others, under Article 1, Section 1; Article 1, Section 10; Article 5; Article 6; Fourteenth Amendment; Thirteenth Amendment; and acts of Congress Dictionary Act of Feb. 25, 1871, §2, 16 Stat. 431; Civil Rights Act of April 20, 1871, ch.22, §1, 17 Stat. 13, today 42 U.S.C. §§1983, 1985, 1988; 28 U.S.C. §1254, 28 U.S.C., §§2071, 2072 on bases of treason under Article 3, Section 3 of the Constitution against the United States, the Sovereign, three fourth of the several States.

155.    That Plaintiff incorporates part "A. Decisions in *Wilson v. Garcia, Hans v. Louisiana, Will v. Michigan Dept. of State Police* are acts of treason", of the Exhibit "B", Brief - Memorandum of Law, pages 2 through 9, by reference, as and for explanation that aforesaid Supreme Court's decisions in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), and Court of Appeals for the Seventh Circuit decision in *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995) are acts of treason against the United States, the Sovereign, the three fourth of the several States, as though fully set forth herein.

In *Hans v. Louisiana*, (1890) 134 U.S. 1, a suit was brought to federal court against State of Louisiana by resident of that State under federal question for violation of Contract Clause of

the United States Constitution, Article 1, Section 10 - "No state shall pass a law impairing the Obligation of Contracts".

The State of Louisiana issued bonds under 1874 amendment to State's Constitution assuring payments of interest through exercise of judicial power against the State when necessary, then levied and collected taxes to pay off the bonds, then, however, appropriated the funds to payment of other state's expenses [to compensate the result of great devastation of State after Civil War], and amended State constitution in 1879 invalidating the contract of interest payments due 1880. *Hans* at 2-3.

The Supreme Court's decision in *Hans* was that State cannot be sued without its consent

"although the obligations of a State rest for their performance upon its honor and good faith, and cannot be made the subject of judicial cognizance unless the State consents to be sued, or comes itself into court... whilst the State cannot be compelled by suit to perform its contracts, any attempt on its part to violate property or rights acquired under its contracts, may be judicially resisted; and any law impairing the obligation of contracts under which such property or rights are held is void and powerless to effect their enjoyment." (*Hans* at 21)

and let State of Louisiana get away with violating Article 1, Section 10 of Constitution - "No state shall pass a law impairing the Obligation of Contracts" in violation of constitutional jurisdiction and will of the Sovereign, three fourth of the several States, and the rationale was:

"The legislative department of a State represents its polity and its will... Any departure from this rule, except for the reasons most cogent, (of which the legislature, and not the courts, is the judge) never fails in the end to incur the odium of the world, and to bring lasting injury upon the State itself. But to deprive legislature of the power of judging what the honor and safety of the State may require, even at the expense of a temporary failure to discharge the public debts, would be attended with greater evils than such failure can cause" *Hans* at 21

156. The UNITED STATES through Judiciary, in violation of the will of the ¾ of the several States or ¾ of States Legislatures, expanded decision in *Hans v. Louisiana*, 134 U.S. 1 (1890) into Eleventh Amendment immunity doctrine continued until present, e.g. in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974):

93

"...in *Hans v. Louisiana*, 134 U.S. 1 (1980), the Court held that, despite the limited terms of the Eleventh Amendment, a federal court could not entertain a suit brought by a citizen against his own State. *Pennhurst* at 98;

"If a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relieve on that claim." *Pennhurst* at 120; and

"While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits... by her own citizens... *Hans v. Louisiana*, 134 U.S. 1 (1890)..." *Edelman* at 662-663;

and by District Court, Judge Coar presiding on July 23, 2001 in Plaintiff's case:

"The Eleventh Amendment prohibits citizens of one state from suing one of the other United States in federal court. See U.S. Const. amend. XI. The principal underlying Eleventh Amendment immunity has been extended to bar suits by citizens of a state by citizens of their own state. See *Hans v. Louisiana*, 134 U.S. 1 (1890). Unless Congress expressly has overriden this immunity or the state has consented to be sued, federal courts lack subject matter jurisdiction. See *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-120 (1984). Illinois has not consented to suit either expressly or by conduct...

Essentially, Ross's argument boils down to this: (1) he doesn't like the way that the Supreme Court has interpreted the Eleventh Amendment immunity doctrine; and (2) he thinks that lack of "subject matter jurisdiction" should not preclude his suit because Illinois is not a "subject matter" but a party. As to the first point, the Court declines Ross' invitation to reexamine settled Supreme Court authority on this issue. Second, notwithstanding Ross' observation that legalistic English sometimes does not jibe with a layman's English, that also is no bases for ignoring controlling Supreme Court authority..." ("Exhibit App.580)

in spite, that today, it is time of the greatest prosperity in the History of the United States and of the State of Illinois, not time of the decision in *Hans* after Civil War devastation; and

in case of *Hans v. Louisiana*, 134 U.S. 1 (1890), the State legislature (polity) repealed the contractual constitutional provision of interest payment on issued bonds, binding the State and state citizens, whereas here, in Plaintiff's case,

none of the contractual constitutional and statutory provisions binding Plaintiff and the State of Illinois (Illinois Government) was repealed by Illinois Legislature, and none of the contractual constitutional and statutory provisions binding Plaintiff and the United States (federal Government) was repealed by ¾ of several States Legislatures or ¾ of States Conventions or

Congress, and the State of Illinois (Illinois Government) is liable to the Plaintiff for violations of constitutional and statutory contract binding him and the State of Illinois (Illinois Government),

as recognized/admitted/defined by the same Supreme Court in *Hans v. Louisiana* that a State is subject to lawsuit by own citizen on account of violations by State contract binding State with a citizen, while letting get away State of Louisiana with violation of the Constitution through treasonous violation of constitutional separation of powers

> "...whilst the State cannot be compelled by suit to perform its contracts [pay the bonds and interest at the time after Civil War], any attempt on its part to violate property or rights acquired under its contracts, may be judicially resisted; and any law impairing the obligation of contracts under which such property or rights are held is void and powerless to effect their enjoyment." (*Hans* at 21)

and now, also the UNITED STATES is liable to the Plaintiff for treasonous violations of the contractual constitutional and statutory provisions binding Plaintiff and the United States (federal Government), as the US Supreme Court recognized/admitted/defined in *Wilson v. Garcia*, 471 U.S. 261, 278-79 (1985):

> "The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment [and the Thirteenth Amendment as to involuntarily servitude as a patient on account of catastrophic injuries to my person, e.g., broken mandible since April 2003], that every person within the United States is entitled to equal protection of the laws and those "fundamental principles of liberty and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political institutions." These guarantees of liberty are among the rights possessed by every individual in a civilized society..." *Wilson* at 278-79; and
> "It is a fundamental principle of law that while the citizen owes allegiance to the Government, he has the right to expect and demand protection for life, person, and property." *Wilson* at 279 (1985).

157. That Plaintiff incorporates part "C. Supreme Court's Rule 10 is an act of treason", pages 12 through 13 of the Exhibit "B", Brief - Memorandum of Law, pages 9 through 11, by reference, as and for explanation that aforesaid Supreme Court's Rule 10 is an act of treason, as though fully set forth herein.

158. That the UNITED STATES, represented by District Court, Judge David H. Coar presiding, Court of Appeals for the Seventh Circuit and the Supreme Court, exercising the same level of power of judicial office and judicial pen, upon which United States sentences to death criminals, deprived Plaintiff through excessive force and battery, terrorist acts, in tree steps of the three layer judiciary structure, equal protection of the laws and access to courts to have his claims of civil rights depravation, case No. 00C 6818, adjudicated upon merits on bases of points of common law in decisions *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995), which are acts of treason against the United states, the Sovereign, three fourth of the several States, and through suppression of Plaintiff's claims, obstruction of justice by concealing or disguising physical evidence (facts on paper: pleadings and facts in Complaint and in sworn to supporting exhibits and affidavits), providing false information and/or concealing the violators, violations of the federal rules of judicial civil procedure, and the Supreme Court's Rule 10, an act of treason.

(a) That the UNITED STATES by and through the Circuit Court, Judge Coar presiding, willfully, intentionally and maliciously, through excessive force and battery

(1) denied Plaintiff appointment of legal counsel to provide equal protection of the laws (Exhibit App.612);

(2) deprived Plaintiff application of 5 year statute of limitations, applicable to medical battery 42 U.S.C. § § 1983, 1985 claims, provided by 42 U.S.C § 1988 and following 735 ILCS 5/13-215 "Fraudulent concealment", invoked by 735 ILCS 5/2-622(d) "Healing art malpractice - informed consent" and 735 ILCS 5/13-212

96

"Physician or hospital" upon 2 year statute of limitations on bases of decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) (Exhibit App.577 of 576-578).

Federal courts in Illinois applied 5 year statute of limitations to all §§1983, 1985 claims until 1985 Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), e.g. *Hermes v. Hein*, (1979, ND Ill) 479 F. Supp. 820; *Gates v.Montalbano*, (1982, ND Ill) 550 F. Supp. 81, reh den (1983, ND Ill) F. Supp. 708 (Exhibit App.575).

It is that Plaintiff having no legal education and deprived legal counsel and advise, did not understand until about February through July 2003 that 1985 Supreme decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) is an act of treason, with silent permission by Congress, Presidents in Office, ACLU, Mass Media, etc.;

(3) terrorized Plaintiff by threatening to remove him from courtroom by marshals, when Plaintiff insisted on September 13, 2001 that statute of limitations as to medical battery still did not expire until about November 5, 2001 (Exhibit App.286 at 288);

(b) That the UNITED STATES by and through Court of Appeals willfully, intentionally and maliciously, through excessive force and battery

(1) totally suppressed that decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), District Court deprived Plaintiff's access to courts to have claims of medical battery adjudicated upon merits (Exhibit App.577), violates constitutional separation of powers presented on constitutional, statutory and common law bases (Exhibit App.442-448), over which it had jurisdiction, and

(2) that instead, suppressed Plaintiff's claims of medical battery on bases it had no jurisdiction to act upon, violating Rule 28 of Federal Rules of Appellate Procedure

97

as not raised by Defendants, and on totally false bases that "His complaint, however, never explains how the handling of his illness amounted to a civil rights violation." and *res judicata* (App.583 at 584-585), in spite of properly and fully stated in the Complaint, case No. 00C 6818, Counts I, III-IV, medical battery and conspiracy in subjecting Plaintiff to radiation treatment as primary requiring additional surgery without his knowledge and consent, repeated in this Complaint word for word as Counts I and II (shortened) incorporated here in this Count by reference in paragraphs 1 - 148 and 1 [00C 6818, paragraph] - 207 [00C 6818, paragraph], and, in spite, that due to conspiracy of the Defendants subjecting Plaintiff to radiation treatment as primary was not even part of state Complaint against the Defendants-doctors (Exhibit App.423-427), excluding *res judicata*, and in spite that state claims of medical malpractice are under state law and state Constitution, totally independent of federal claims under federal law and federal Constitution.

(c)(1) That the UNITED STATES by and through the Circuit Court, Judge Coar presiding, willfully, intentionally and maliciously substituted Plaintiff's awareness of conspiracy of Defendants in 1997, with mentioning the STATE OF ILLINOIS as the co-conspirator, for the last act of co-conspirator STATE OF ILLINOIS represented by Supreme Court of Illinois' decision on June 2, 1999 (Exhibit App.131) causing injury to the Plaintiff of depriving access to State courts to have adjudicated on merits claims against Defendants-doctors, and for the last act of co-conspirator STATE OF ILLINOIS represented by the Illinois Court of Claims' decision on September 15, 2000, converting suit against Hospital (Exhibit App.158) to suit against the Board of Trustees of the University of Illinois, causing injury of to the Plaintiff of depriving access to State courts to have adjudicated upon merits claims against the Hospital (Exhibit App.167);

98

(2) That the UNITED STATES by and through Court of Appeals willfully, intentionally and maliciously substituted Plaintiff's awareness of conspiracy of Defendants, including Plaintiff's attorney, in 1997, without mentioning the STATE OF ILLINOIS as the co-conspirator, for the last act of the co-conspirator STATE OF ILLINOIS represented by Supreme Court of Illinois' decision on June 2, 1999 causing injury to the Plaintiff of depriving access to State courts to have adjudicated upon merits claims against defendants-doctors, and for the last act of the co-conspirator STATE OF ILLINOIS represented by the Illinois Court of Claims' decision on September 15, 2000, converting suit against Hospital to suit against the Board of Trustees of the University of Illinois, causing injury to the Plaintiff of depriving access to State courts to have adjudicated upon merits claims against the Hospital (Exhibit App.583 at 585);

(3) and the Court of Appeals willfully, intentionally and maliciously totally suppressed properly stated claims against the co-conspirator the STATE OF ILLINOIS in Counts V-VIII of the Complaint, case No. 00C 6818, repeated in this Complaint as Counts III-V, and incorporated here as paragraphs 1 - 148 and 1 [00C 6818, paragraph] - 207 [00C 6818, paragraph], as not stated in the Complaint, case No. 00C 6818 "...we VACATE the district court's dismissal of Ross' suit against the State of Illinois for lack of subject matter jurisdiction and REMAND with instructions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)...", (Exhibit App. 583 at 585);

(d)(1) That the UNITED STATES by and through the Supreme Court, by denying Petition for a Writ of Certiorari (Exhibit App.586, 598), willfully, intentionally and maliciously suppressed that decision *Wilson v. Garcia*, 471 U.S. 261 (1985) and other decisions, Plaintiff was deprived upon access to courts to have civil rights depravation

99

claims adjudicated upon merits, violate constitutional separation of powers;

(2) that the UNITED STATES by and through the Supreme Court by denying Petition for Writ of Certiorari willfully, intentionally and maliciously deprived Plaintiff access to courts to have his claims of civil rights violations adjudicated upon merits on bases of treason against the United States, the Sovereign, three fourth of the several States, in decisions *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), together with Court of Appeals for the Seventh Circuit decision in *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995);

159. That the UNITED STATES by and through the Supreme Court, by denying Petition for a Writ of Certiorari on bases of discretion (App.586; 598), deprived Plaintiff's access to federal courts to have claims of depravation of access to state courts adjudicated upon merits, through suppressing outrageous violations of judicial process of suppression by Court of Appeals of properly and fully stated and timely filed claims of medical battery as not stated in the Complaint, case No. 00C 6818, suppression of properly and fully stated, and timely filed claims of conspiracy and excessive force and battery depriving Plaintiff access to state courts by all Defendants, including the STATE OF ILLINOIS, in the Complaint, case No. 00C 6818.

160. That 28 U.S.C. 1254 "Courts of appeals; certiorari; certified questions": (a) provides:

Cases in courts of appeals maybe reviewed by the Supreme Court by the following methods: (1) By writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after of judgment or decree; (2) By certification at any time by a court of appeals of any question of law in any civil or criminal case as to which instructions are desired, and

upon such certification the Supreme Court may give binding instructions or require the entire record to be sent up for decision of the entire matter to controversy.

and (a) addresses only the methods by which the Supreme Court reviews cases in courts of

appeals; (b) does not address which cases the Supreme Court has to or does not have to review;

and (d) does not relieve the Supreme Court, district courts and courts of appeals from strict

enforcing 42 U.S.C. § § 1983, 1985, 1986, 1988 and Fourteenth Amendment to the Constitution,

as the Supreme Court recognized/admitted/defined in *Wilson v. Garcia*, 471 U.S. 261, 278-79

(1985):

> "The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment [and the Thirteenth Amendment as to involuntarily servitude as a patient on account of catastrophic injuries to my person, e.g., broken mandible since April 2003], that every person within the United States is entitled to equal protection of the laws and those "fundamental principles of liberty and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political institutions." These guarantees of liberty are among the rights possessed by every individual in a civilized society..." *Wilson* at 278-79; and
>
> "It is a fundamental principle of law that while the citizen owes allegiance to the Government, he has the right to expect and demand protection for life, person, and property." *Wilson* at 279 (1985).

161. That Courts are granted power of rule-making under 28 U.S.C., § § 2071, 2072

only, which may not abridge any substantial right:

> § 2071. Rule-making power generally. (a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Act of Congress and rules of practice and procedure prescribed under section 2072 of this title; and

> § 2072. Rules of procedure and evidence; power to prescribe. (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence...; (b) Such rules shall not abridge, enlarge or modify any substantial right...

162. That the United States Constitution, Article 6 provides in relevant parts:

Article 6[2] "This Constitution, and the Laws of the United States which shall be made in pursuance thereof... shall be the Supreme Law of the Land... and judicial Officers, both of the United States... shall be bound by Oath or Affirmation, to support this Constitution."

163. that the United States Constitution, Article 1, Section 1 provides in relevant parts: "All legislative Powers herein granted shall be vested in a Congress of the United States..."

164. that the Fourteenth Amendment provides in Section 5: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article", not the Supreme Court through decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985) and discretion in S.Ct. Rule 10.

165. That the UNITED STATES, represented by and trough federal Judiciary established terrorist network directly or indirectly, which includes US Supreme Court, Court of Appeals for the Seventh Circuit, District Court, Judge Coar presiding, and not named as Defendants in this Count, the STATE OF ILLINOIS represented by Illinois Supreme Court, Illinois Appellate Court, Cook County Circuit Court, Illinois Court of Claims, law firms BOLLINGER, RUBERRY & GARVEY, HINSHAW & CULLBERTSON, attorneys BOLLINGER, LYSAUGHT, O'LEARY, KRAUSE, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, HOSPITAL OF THE UNIVERSITY OF ILLINOIS AT CHICAGO, COOK COUNTY HOSPITAL, and others, which committed, since July 10, 1992 until present, foregoing terrorist acts against the Plaintiff:

- subjected Plaintiff to terrorist act by DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, HOSPITAL OF THE UNIVERSITY OF ILLINOIS AT CHICAGO, COOK COUNTY HOSPITAL, to radiation treatment as primary without Plaintiff's knowledge and consent, "Fact 17 - (57 [00C 6818, fact])";

- terrorized directly and/or indirectly medical community to deny the Plaintiff, required by Illinois law support in judicial proceedings of expert health care professionals witnesses, Facts 22, 23, 31, 38, 42, 43. That it was only Plaintiff's luck, after 3-1/2 years, contacting about 200

physicians/health care centers and traveling about 5,000 miles, to find Dr. Laursen and Dr. Ward (Exhibits App.98, 105 and 159, 164), at the time of pending Defendants-doctors motion for summary judgment supported by their own perjurious affidavits, (Exhibits App.86-96), they withdrew after Plaintiff filed Dr. Laursen's affidavit (Exhibit App.97);

- terrorized legal community directly and/or indirectly through application under common law, as points of law, acts of treason and/or, through other means, to deprive Plaintiff legal representation in judicial proceedings, in State and federal courts, and deprive Plaintiff legal advise;

- deprived Plaintiff representation by an attorney in federal courts;

- terrorized Plaintiff by threatening to remove him from courtroom by marshals, when Plaintiff insisted on September 13, 2001 that statute of limitations as to medical battery still did not expire until about November 5, 2001;

- deprived Plaintiff equal protection of the laws and access to courts to have his claims of civil rights depravation, case No. 00C 6818, adjudicated upon merits on bases of points of common law in decisions *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985), *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan Dept. of State Police*, 491 U.S. 59, 69-71 (1989), *Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995), which are acts of treason against the United states, the Sovereign, three fourth of the several States, suppression of Plaintiff's claims, obstruction of justice by concealing or disguising physical evidence (facts on paper: pleadings and facts in Complaint and in sworn to supporting exhibits and affidavits), providing false information and/or concealing the violators, violations of the federal rules of judicial civil procedure, and the Supreme Court's Rule 10, an act of treason.

166. That as the result of aforesaid excessive force and battery, terrorist acts depriving Plaintiff civil rights by the UNITED STATES and denying access to courts to have claims of civil rights depravation adjudicated upon merits

to recover for the injuries caused by acts of excessive force and battery, terrorist acts of Defendants DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, attorneys O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER and the STATE OF ILLINOIS since July 10, 1992,

the Plaintiff suffers total financial destruction, including loss of his house, and was deprived finances to undergo overdue since 1993 surgeries to his jaw and other medical treatments, suffers disability since 1992 until present, catastrophic loss of flesh volume of his lower jaw, braking of his mandible since about April 23, 2003 into 2 pieces and on about July 16, 2002 into 3 pieces, continued until present, severe facial disfigurement, severe internal injuries to his mouth, inability to open mouth more than about ¼ inch, having to eat food in liquefied form, great pain in the past (e.g. Exhibit App.59), and since June 2003, Plaintiff is continuously 24/7 on pain relievers Morphine, Tylenol with Codeine (Exhibits App.659-662), supplemented by other pain relieve medications just to be in minimum functional state;

instead of being sick in 1992 approximately a few weeks to 3 months and losing at most a few lower incisor teeth  (this and following subparagraphs are "Facts 18-19 - (58-59 [00C 6818])"):

(1) that treating plaintiff with very limited surgery, as established by affidavit of Dr. Laursen **(A349 at A350 and A715j at A715k)** [Exhibit App.98 at 99], would result in Plaintiff's sickness lasting maximum 2 to 3 months, and eventually losing at most a few lower incisor teeth. It is a common knowledge that injury without radiation, e.g. broken leg causes disability lasting

104

weeks only.

That after obtaining affidavits of Dr. Ward and Dr. Laursen, Plaintiff saw attorney Herzl Levine **(A75)**, who had exactly the same problem as Plaintiff, and was treated by surgery by the Defendant Dr. Wenig. His all side effects were a small denture of a few lower incisor teeth.

167. Inflicted on Plaintiff injuries by the UNITED STATES cumulatively with injuries inflicted by remaining Defendants named in this Complaint require today up to $2 million just to stop progression of injuries to his jaw, on bases of a boy shot at his jaw during Columbine High School shooting, which reached almost one million dollars when he still had to have "...at least 6 more operations on his face to help permanently close the "crater" left by shotgun blast" (Exhibit App.698-699, and Plaintiff lost his house (affidavit ¶9, pages 126-127) and incurred debt requiring, in itself, as the result of market forces, approximately a half a million dollars to get back the house and pay off the debts.

Almost 100% exact simulation of medical condition of Plaintiff's jaw and mouth, continuously deteriorating and getting worse, can be done/achieved by (1) taping tightly over the tongue and around open lower jaw to restrict severely movement and opening of mouth to about ¼ of an inch, very severely restricting ability to swallow, speak, etc., (2) with a tape with small spikes causing/inflicting severe pain with every move of the jaw or even every tension of any muscle of the jaw

168. That discontinuing violation of Plaintiff's civil rights at any point of time would lower very significantly Plaintiff's injuries to his jaw and level of destruction of his life.

169. The Defendant UNITED STATES acts with double face, and on one hand UNITED STATES was hanging Nazis for such violations of peoples' civil rights in 1940s Plaintiff is subjected to (e.g., Exhibits App.668 at 674-675 of 668-679 and 666-667), and after 9/11th

105

al-Qaeda terrorist attack, the United States uprooted Afghanistan and Iraq with its military might killing thousands, and waged war on terror all over the entire World, at a cost to US economy upward of $100 billion,

and provides access to courts (US District Court for the District of Columbia) to the victims of 9/11th terror attack on World Trade Center, Pentagon and fields of Pennsylvania, and prosecutes in favor of the victims, supporters of al-Qaeda for $1 trillion dollars (Exhibit App.703 at 706.

> "The $1 trillion lawsuit filed by more than 4,000 victims and relatives of victims of the Sept. 11 attacks has survived its first major legal test. A federal judge in Washington, D.C., recently refused to dismiss a Saudi Arabian bank, two large Muslim charities and two other defendants from the lawsuit. Ron Motley, a Mount Pleasant lawyer representing the Sept. 11 victims, described the judge's decision as "a huge victory." Motley said the judge "followed the logic of our argument that if you help construct a terrorism factory, you're liable for the product you spew out."..." (Exhibit App.703-708 at 706)

to bankrupt the terrorists network

> "Relatives of victims of the 11 September attacks have filed a trillion-dollar lawsuit against various parties, accusing them of financing Osama Bin Laden's al-Qaeda terror network and Afghanistan's former Taleban regime...
> "The main goal is to starve the terrorists of the funding and support they need"
> Those accused include the country of Sudan, three members of the Saudi royal family - including the Saudi defense minister - and various Islamic charities, in addition to seven financial institutions and the Bin Laden family's Saudi construction firm.
> More than 600 family members, firefighters and rescue workers, calling themselves the 9/11 Families United to Bankrupt Terrorism, are seeking the money.
> Stephen Push, who lost his wife in the attack, told the BBC the families had a strong case in the US but that it was a "multi-step process" and they would pursue it in other countries as well.
> "The purpose of suing the Saudis who funded al-Qaeda is to try to help prevent the terrorists from getting access to financial resources they need to conduct future terrorist attacks," he said.
> "We may be able to either convince them it's not worthwhile to fund al-Qaeda or perhaps obtain enough of their assets that they are no longer able to do so."
> The suit was filed on Thursday morning in the US District Court of the District of Colombia..."

while, on the other hand, at the same time, the same UNITED STATES through Judiciary

is the Nazi style criminal and violator of Plaintiff's civil rights, and the same UNITED STATES

through the Judiciary is the leader of the al-Qaeda style terrorist network,



which deprived Plaintiff equal protection of law and access to courts through acts of concealing

of facts, obstruction of justice, aiding and/or concealing the offenders, violations of the federal

rules of judicial civil procedure and on points of law which constitute acts of treason against the

United States, the Sovereign, the three fourth of the Several States, and acts of terrorism against

the Plaintiff, and

     inflicted on the Plaintiff Nazi style and magnitude additional catastrophic injuries and

damages, with full understanding of inflicting on Plaintiff the additional catastrophic injuries

from denied motion rule 56(f) and personal professional knowledge of Defendants doctors

named in Counts I-IV, VI-VIII of Complaint, case No. 00C 6818, repeated as Counts I-II, IV-V

of this Complaint, resulting in breakage of Plaintiff's mandible on about April 23, 2003 and

again on about July 16, 2003 and continuing broken until present, and catastrophic destruction of

every aspect of Plaintiff's life.

     The injuries to the Plaintiff since 1992 are strait forwardly comparable to Nazi

"Incendiary Bomb Experiments", and "Bone, Muscle, and Nerve Regeneration and Bone

Transplantation Experiments", pictured by 4 photos of lower row on previous page 107, Exhibit App.666-667, Exhibit App.677-679 combined, because just to stop progressing already catastrophic devastation to Plaintiff's jaw shown by the photographs on previous page 107 and in Exhibits App.666-667, Plaintiff has to have bone graft and muscle grafts surgeries (a sickening example of muscle graft is shown by left photo of the lower row, photos on previous page 107).

The surgeries and associated treatments will bear without Plaintiff's any doubt price tag far over one million dollars - this is on bases of medical bills of one of boys shot in his jaw at Columbine High School shooting, whose medical bills reached one million dollars prior to at least 6 additional needed surgeries (Exhibit App.698-699 and 700-701). Although the boy had also 2 other gun wounds, his problems were related to his jaw.

Without any doubt boy's injury to his jaw was very severe, it could not, however, have the volume loss of flesh/muscles I lost, could not have so much mandible loss as Plaintiff lost as shown by photographs Exhibit App.666, and pathology report reporting Nazi style cutting out Plaintiff's mandible in 1993 in chunks up to 5.9 cm (2-1/3 inch), (Exhibit App.687-688 of the Complaint, fragment "P"), and the boy did not received high dose of radiation of minimum 60 Gy, therefore, injuries to Plaintiff's jaw are comparable to his injuries when it comes to price tag. And just to recover financially to the pre mistreatment state as of 1992, Plaintiff needs about half a million dollars, to get lost house back and pay the debts off, as the result of disability and market forces.

170. Such willful, intentional and malicious violations of Plaintiff's civil rights guaranteed by Fourteenth Amendment to the United States Constitution and denying access to courts increased magnitude of Plaintiff's involuntary servitude to doctors as a patient as the result of depriving Plaintiff financial resources to undergo overdue since 1993 surgeries and treatments

108

and braking of Plaintiff's mandible in April 2003 (Plaintiff cannot continue live with it forever), and violates Plaintiff's rights under Thirteenth Amendment to the Constitution of the United States, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a patient to doctors, in addition to his right of equal protection of the law and access to courts, as secured by Fourteenth Amendment to the United States Constitution.

171. The Defendant UNITED STATES by and through Judiciary, by willful, intentional and malicious violating Plaintiff's rights to equal protection of laws and access to courts, guaranteed by Fourteenth Amendment to the United States Constitution, have directly and indirectly, prevented the Plaintiff from enjoying and exercising his rights, privileges and immunities as a citizen of the United States, including, but not limiting to be free from pain, suffering, facial disfigurement and dysfunctionality of his mouth, deprived and deprives Plaintiff ability to perform those usual things/activities, which every person takes for granted, and that all of these losses and damages are certain to increase into the future if not stopped and corrected by overdue since 1993 surgeries and other treatments.

172. That such acts or omissions, as alleged and set forth herein, were committed by the UNITED STATES willfully, intentionally and maliciously, in violation of the Constitution and the laws on bases of acts of treason against the United States, the Sovereign, the three fourth of the several States, and for the purpose of depriving Plaintiff of his constitutional rights under the law.

WHEREFORE, plaintiff prays for relieve as follows:

A - Judgment for compensatory damages in favor of the Plaintiff against Defendant UNITED STATES in the amount of TWENTY ($20.000,000.00) MILLION DOLLARS, if the Congress impeaches judges David H. Coar of District Courts, John L. Coffey, Frank H.

Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and takes steps to reform Justice System, or, in the alternative, TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS, if the Congress does not impeach judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and does not take steps to reform Justice System.

B - Judgment for punitive damages in favor of the Plaintiff against Defendant UNITED STATES in the amount of TWENTY ($20.000,000.00) MILLION DOLLARS, if the Congress impeaches judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and takes steps to reform Justice System, or, in the alternative, TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS, if the Congress does not impeach judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and does not take steps to reform Justice System.

C - Judgment for compensatory damages in favor of the Plaintiff against Defendant UNITED STATES in the amount as demanded in Counts I-II, III-V, if the Defendant UNITED STATES, again, suppresses Plaintiff's claims against the Defendants named in Counts I-V, as it did in case 00C 6818, Counts I-VIII.

D - Judgment for punitive damages in favor of the Plaintiff against Defendant UNITED STATES in the amount as demanded in Counts I-II, III-V, if the Defendant UNITED STATES

110

again suppresses Plaintiff's claims against the Defendants named in Counts I-V, as it did in case 00C 6818, Counts I-VIII.

E - Reasonable attorneys' fees and costs.

### COUNT VII
(Section 1985(3`) and Section 1983 Conspiracy Claim)

1 - 172. Plaintiff incorporates paragraphs 1 through 172 of the Complaint by reference as and for paragraphs 1 through 172 of Count VII as though fully set forth herein.

1 [00C 6818, paragraph] - 207 [00C 6818, paragraph]. Plaintiff incorporates paragraphs 1 [00C 6818, paragraph] through 207 [00C 6818, paragraph] of the Complaint 00C 6818, Exhibit App.325-422, by reference as and for paragraphs 1 [00C 6818, paragraph] through 207 [00C 6818, paragraph] of Count VII as though fully set forth herein.

173.    The defendants are the UNITED STATES, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON.

174.    Between about November 1, 2000 until present Defendant UNITED STATES represented by District Court, Judge Coar presiding, Court of Appeals and the Supreme Court together with Defendants  STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON

willfully, intentionally and maliciously conspired, either through planned and agreed upon acts, or through merely mutual understanding which acts to perpetrate, to deprive Plaintiff of constitutionally guaranteed and protected, under Fourteenth Amendment, civil rights of access to courts to have his claims of civil rights depravations, case No. 00C 6818 adjudicated upon merits, and to impose on the him additional, under Thirteenth Amendment" involuntarily servitude to doctors and hospitals as a patient by inflicting on the Plaintiff catastrophic injuries.

111

175. That an explicit or implicit "meeting of minds", for the purpose of depriving Plaintiff his constitutionally guaranteed and protected, under Fourteenth Amendment, rights of access to courts to have his civil rights depravation claims, case No. 00C 6818, adjudicated upon merits, occurred between the Defendants UNITED STATES, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON on about November 1, 2000, and continuing thereafter until present,

in which an agreement was reached wherein the Defendants did engage in one or more of the following overt acts to effectuate and promote the conspiracy and network of terror against the Plaintiff, for the purpose of depriving Plaintiff of his constitutionally guaranteed and protected, under Fourteenth Amendment and Thirteenth Amendment, rights, wherein the Defendants UNITED STATES, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON:

(a) extended and expanded the conspiracy of the terrorist network established in conspiracy, explicitly or implicitly on July 10, 1992 and continuing thereafter,

including the STATE OF ILLINOIS, attorneys LYSAUGHT, BOLLINGER, O'LEARY, KRAUSE, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, for the purpose of depriving Plaintiff of his constitutionally guaranteed and protected, under Fourteenth Amendment and Thirteenth Amendment, rights,

wherein the STATE OF ILLINOIS, O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, committed one or more of overt acts:

112

(1) through conspiracy between themselves and acts of excessive force, battery, terrorist act, subjected Plaintiff to heinous battery of radiation treatment as primary treatment requiring additional surgery without Plaintiff's knowledge and consent since July 10, 1992,

(2) and then, through conspiracy between themselves and acts of excessive force, battery, terrorist acts against the Plaintiff, intimidated Illinois and nationwide medical community and legal community to deprive Plaintiff expert witness to support and maintain a civil lawsuit and deprive Plaintiff equal protection of the law, suppression of Plaintiff's claims, obstruction of justice by concealing or disguising physical evidence (facts on paper: pleadings and facts in Complaint and in sworn to supporting exhibits and affidavits), providing false information and/or concealing the violators, deprived, in the end, Plaintiff access to state courts;

(b) deprived Plaintiff legal counsel by denying motion to appoint legal counsel, after intimidation, together with the STATE OF ILLINOIS, and/or O'LEARY, and/or KRAUSE, and/or LYSAUGHT, and/or BOLLINGER, and/or DR. BRIELE, and/or DR. GALINSKY, and/or DR. BRUNNGRABER, and/or DR. WENIG, and/or DR. KOTLER, and/or the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, since April 1993, over 100 attorneys Plaintiff contacted to obtain legal counsel;

(c) deprived Plaintiff health professional expert opinion as to progressing devastation to Plaintiff's jaw and life, and steps needed to stop it, by denying Motion Rule 56(f), after intimidation, since April 1993, about 200 doctors/health care center nationwide Plaintiff contacted to obtain support in 1995-1996 to no avail until Dr. Laursen on about November 5, 1996, Plaintiff was just lucky to obtain;

(d) deprived Plaintiff access to federal courts to have his claims of civil rights depravation, on account of medical battery of subjecting Plaintiff to radiation treatment as

113

primary without his knowledge and consent, adjudicated upon merits, case No. 00C 6818,

Counts I, III-IV, against the Defendants DR. BRIELE, DR. GALINSKY, DR.

BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT

CHICAGO HOSPITAL AND CLINICS, through suppression of Plaintiff's claims, obstruction of

justice by concealing or disguising physical evidence (facts on paper: pleadings and facts in

Complaint and in sworn to supporting exhibits and affidavits), providing false information and/or

concealing the violators, violations of the federal rules of judicial civil procedure, and on points

of law under common law provided by decision in *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985),

an act of treason against the United States, the Sovereign, three forth of the several States, and on

not applicable *res judicata*;

(e) deprived Plaintiff access to federal courts to have his claims of civil rights depravation

on account of depravation of access to state courts to have claims adjudicated upon merits, case

No. 00C 6818, Counts V-VIII, through suppression of Plaintiff's claims, obstruction of justice by

concealing or disguising physical evidence (facts on paper: pleadings and facts in Complaint and

in sworn to supporting exhibits and affidavits), providing false information and/or concealing the

violators, through violations of the federal rules of judicial civil procedure and upon points of

law which constitute acts of treason against the United States, the Sovereign, three forth of the

several States, *Hans v. Louisiana*, (1890) 134 U.S. 1, *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89 (1984), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Will v. Michigan*

*Dept. of State Police*, 491 U.S. 59, 69-71 (1989), *Wilson v. Garcia*, 471 U.S. 261 at 276 (1985),

*Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995);

176. That in case of *Hans v. Louisiana*, 134 U.S. 1 (1890), State legislature (polity)

repealed a contractual constitutional provision of interest payment on issued bonds, binding the

114

State and state citizens.

177. That here, in Plaintiff's case, none of the contractual constitutional and statutory provisions binding Plaintiff and the State of Illinois (Illinois Government) was repealed by Illinois Legislature, and none of the contractual constitutional and statutory provisions binding Plaintiff and the United States (federal Government) was repealed by ¾ of several States Legislatures or ¾ of States Conventions and/or Congress, and it is not the time of devastation of the United States and/or the State of Illinois, to the opposite, the time of the greatest in History prosperity, and the State of Illinois is liable to the Plaintiff for violations of constitutional and statutory contract binding him and the State of Illinois,

as recognized/admitted/defined by the same Supreme Court in *Hans v. Louisiana* that a State is subject to lawsuit by own citizen on account of violations by State a contract binding State with a citizen, while letting get away State of Louisiana with violation of the Constitution through treasonous violation of constitutional separation of powers

> "...whilst the State cannot be compelled by suit to perform its contracts [pay the bonds and interest at the time after Civil War], any attempt on its part to violate property or rights acquired under its contracts, may be judicially resisted; and any law impairing the obligation of contracts under which such property or rights are held is void and powerless to effect their enjoyment." (*Hans* at 21)

178. That now, also the UNITED STATES is liable to the Plaintiff for treasonous violations of the contractual constitutional and statutory provisions binding Plaintiff and the United States (federal Government), as the US Supreme Court recognized/admitted/defined in *Wilson v. Garcia*, 471 U.S. 261, 278-79 (1985):

> "The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment [and the Thirteenth Amendment as to involuntarily servitude as a patient on account of catastrophic injuries to my person, e.g., broken mandible since April 2003], that every person within the United States is entitled to equal protection of the laws and those "fundamental principles of liberty and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political

115

institutions." These guarantees of liberty are among the rights possessed by every individual in a civilized society..." *Wilson* at 278-79; and

"It is a fundamental principle of law that while the citizen owes allegiance to the Government, he has the right to expect and demand protection for life, person, and property." *Wilson* at 279 (1985).

179. That defendants committed these overt acts as heretofore described with the joint objective of concealing of Plaintiff's injuries, of the true circumstances and reasons for Plaintiff's injuries, of concealing of conspiracy and abuse of the power of the office and acts of terror in subjecting the Plaintiff to medical battery and depriving him access to courts to have his claims adjudicated upon merits, and hindering the due course of justice by engaging in a cover up of the Defendants' true involvement in the use of excessive force and abuse of the authority and power of the office, to deprive the Plaintiff of his constitutional rights under the Fourteenth Amendment and Thirteenth Amendment.

180. That by violating Plaintiff's civil rights, as described hereinabove, Defendants UNITED STATES (represented here by courts), the STATE OF ILLINOIS (represented here by courts), BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON deprived Plaintiff ability to salvage his life and inflicted additional catastrophic damages to Plaintiff's jaw, mouth and every aspect of Plaintiff's life, making it more difficult to correct it, and further increasing Plaintiff's inability to perform those usual things/activities, which every person takes for granted, and which are guaranteed by Fourteenth Amendment and Thirteenth Amendment to the United States Constitution.

181. That as the result of aforesaid acts of excessive force and battery, terrorist acts depriving Plaintiff civil rights by the UNITED STATES, the STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, and denying Plaintiff access to courts to have claims of civil rights depravation adjudicated upon merits and to

116

recover for the injuries caused by acts of excessive force and battery, terrorist acts of not named as Defendants in this Count DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER, and UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, attorneys O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER and the STATE OF ILLINOIS since July 10, 1992, the Plaintiff was deprived finances to undergo overdue since 1993 surgeries to his jaw and other medical treatments, and suffers disability since 1992 until present, catastrophic loss of height and flesh volume of his lower jaw, braking of his mandible since about April 23, 2003 into 2 pieces and on about July 16, 2002 into 3 pieces, continued until present, great pain in the past (e.g. Exhibit App.59), and since June 2003, Plaintiff is continuously 24/7 on pain relievers Morphine, Tylenol with Codeine (Exhibits App.659-662, supplemented by other pain relieve medications just to be in minimum functional state, severe facial disfigurement, severe internal injuries to his mouth, inability to open mouth more than about ¼ inch, having to eat food in liquefied form, total financial destruction including loss of his house, as presented by photographs in Exhibits App.666-667,

instead of being sick in 1992 approximately a few weeks to 3 months and losing at most a few lower incisor teeth  (this and following subparagraphs are "Facts 18-19 - (58-59 00C 6818)"):

(1) that treating plaintiff with very limited surgery, as established by affidavit of Dr. Laursen **(A349 at A350 and A715j at A715k)** [Exhibit App. at 99, App.164 at 165], would result in Plaintiff's sickness lasting maximum 2 to 3 months, and eventually losing at most a few lower incisor teeth. It is a common knowledge that injury without radiation, e.g. broken leg causes disability lasting weeks only.

That after obtaining affidavits of Dr. Ward and Dr. Laursen, plaintiff saw attorney Herzl Levine **(A75)**, who had exactly the same problem as Plaintiff, and was treated by surgery by the

Defendant Dr. Wenig. His all side effects were a small denture of a few lower incisor teeth.

182. That inflicted on the Plaintiff injuries and damages require today up to $2 million just to stop progression of the injuries. The surgeries and associated treatments will bear without Plaintiff's any doubt price tag far over one million dollars - this is on bases of medical bills of one of boys shot in his jaw at Columbine High School shooting, whose medical bills reached one million dollars prior to at least 6 additional needed surgeries (Exhibit App.698-699 and 700-701). Although the boy had also 2 other gun wounds, his problems were related to his jaw.

Without Plaintiff's any doubt boy's injury to his jaw was very severe, he could not, however, have the volume loss of flesh/muscles Plaintiff lost, could not have so much mandible loss as Plaintiff lost as shown by photographs, Exhibit App.666, and pathology report reporting cutting out Plaintiff's mandible in 1993 in chunks up to 5.9 cm (2-1/3 inch), (Exhibit App.687-688, fragment "P"), and the boy did not received high dose of radiation of 60 Gy, therefore, injuries to Plaintiff's jaw are comparable to his injuries when it comes to price tag. And just to recover financially to the pre mistreatment state as of 1992, Plaintiff needs about half a million dollars, to get lost house back and pay the debts off, as the result of disability and market forces.

Almost 100% exact simulation of my medical condition of my jaw and mouth, continuously deteriorating and getting worse, can be done/achieved by (1) taping tightly over the tongue and around open lower jaw, as to restricting severely movement and opening of mouth to about ¼ of an inch, very severely restricting ability to swallow, speak, etc., (2) with a tape with small spikes causing/inflicting severe pain with every move of the jaw or even every tension of any muscle of the jaw

183. That discontinuing violation of Plaintiff's civil rights at any point of time would lower very significantly Plaintiff's injuries to his jaw and level of destruction of his life.

184. The Defendants the UNITED STATES and the STATE OF ILLINOIS, the Governments, act with double face, and on one hand

UNITED STATES was hanging Nazis for such violations of peoples civil rights in 1940s, Plaintiff is subjected to (e.g., Exhibit App.668 at 674-675), and after 9/11th al-Qaeda terrorist attack, United States uprooted Afghanistan and Iraq with its military might killing thousands, and waged war on terror all over the entire World, at a cost to US economy upward of $100 billion,

and provides access to courts to the victims of 9/11th terror attack on World Trade Center, Pentagon and fields of Pennsylvania, and prosecutes in favor of the victims financial supporters of al-Qaeda for $1 trillion dollars

> "The $1 trillion lawsuit filed by more than 4,000 victims and relatives of victims of the Sept. 11 attacks has survived its first major legal test. A federal judge in Washington, D.C., recently refused to dismiss a Saudi Arabian bank, two large Muslim charities and two other defendants from the lawsuit. Ron Motley, a Mount Pleasant lawyer representing the Sept. 11 victims, described the judge's decision as "a huge victory." Motley said the judge "followed the logic of our argument that if you help construct a terrorism factory, you're liable for the product you spew out."..." (Exhibit App.703-708 at 706)

to bankrupt the terrorists network

> "Relatives of victims of the 11 September attacks have filed a trillion-dollar lawsuit against various parties, accusing them of financing Osama Bin Laden's al-Qaeda terror network and Afghanistan's former Taleban regime...
> "The main goal is to starve the terrorists of the funding and support they need"
> Those accused include the country of Sudan, three members of the Saudi royal family - including the Saudi defense minister - and various Islamic charities, in addition to seven financial institutions and the Bin Laden family's Saudi construction firm.
> More than 600 family members, firefighters and rescue workers, calling themselves the 9/11 Families United to Bankrupt Terrorism, are seeking the money.
> Stephen Push, who lost his wife in the attack, told the BBC the families had a strong case in the US but that it was a "multi-step process" and they would pursue it in other countries as well.
> "The purpose of suing the Saudis who funded al-Qaeda is to try to help prevent the terrorists from getting access to financial resources they need to conduct future terrorist attacks," he said.
> "We may be able to either convince them it's not worthwhile to fund al-Qaeda or perhaps obtain enough of their assets that they are no longer able to do so."

119

The suit was filed on Thursday morning in the US District Court of the District of Colombia...",

and the STATE OF ILLINOIS provides access to courts against non government sponsored hospitals, e.g. to the same Cook County Circuit Court, where in May 2000 jury awarded gross negligence of Ravenswood Hospital $55 million to a victim of gross medical negligence (Exhibit App.715-716),

while at the time, the same UNITED STATES and the same STATE OF ILLINOIS through their Judiciaries in conspiracy together with the BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, and together with not named as Defendants in this Count O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS are the al-Qaeda style terrorist network, which deprived Plaintiff equal protection of law and access to courts through acts of concealing of facts, obstruction of justice, aiding and/or concealing the offenders, violations of the federal rules of judicial civil procedure and points of law which constitute acts of treason against the Sovereign, the three fourth of the Several States, and acts of terrorism against the Plaintiff,



120

and, at the same time, the same UNITED STATES and the same STATE OF ILLINOIS through Judiciaries in conspiracy between themselves and together with BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, and together with not named as Defendants in this Count O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS are the Nazi style violators of Plaintiff's civil rights,

inflicted and are inflicting on the Plaintiff Nazi style additional catastrophic injuries and damages, with full understanding of inflicting on Plaintiff the additional catastrophic injuries from denied motion rule 56(f) and personal professional knowledge of Defendants doctors named in Counts I-IV of Complaint, case No. 00C 6818, repeated as Counts I, II of this Complaint, resulting in breakage of Plaintiff's mandible on about April 23, 2003 and again on about July 16, 2003 and continuing broken until present as shown on previous page 120 and exhibits App.666-667, and catastrophic destruction of every aspect of Plaintiff's life.

185. The injuries to the Plaintiff since 1992 are strait forwardly comparable to Nazi "Incendiary Bomb Experiments", pictured by 4 photos of lower row on previous page 120, Exhibit App.666-667, and "Bone, Muscle, and Nerve Regeneration and Bone Transplantation Experiments", Exhibit App.677-679, combined, because just to stop progressing already catastrophic devastation to Plaintiff's jaw shown by the photographs on previous page 120 and in Exhibits App.666-667, Plaintiff has to have bone graft and muscle grafts surgeries (a sickening example of muscle graft is shown by left photo of the lower row, photos on previous page 120).

186. Such willful, intentional and malicious violations of Plaintiff's civil rights guaranteed by Fourteenth Amendment to the United States Constitution and denying access to

121

courts increased magnitude of Plaintiff's involuntary servitude to doctors as a patient as the result of deriving Plaintiff financial resources to undergo overdue since 1993 surgeries and treatments and braking of Plaintiff's mandible in April 2003 (Plaintiff cannot continue live with it forever), and violates Plaintiff's rights under Thirteenth Amendment to the Constitution of the United States, to his right not to be enslaved and/or to be imposed upon him involuntary servitude as a patient to doctors, in addition to his right of equal protection of the law and access to courts, as secured by Fourteenth Amendment to the United States Constitution.

187. The Defendants UNITED STATES through Judiciary in conspiracy with the STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, together with not named as Defendants in this Count O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS acting as terrorist network,

by willful, intentional and malicious depriving Plaintiff's rights to equal protection of laws and access to courts, guaranteed by Fourteenth Amendment to the United States Constitution, have directly and indirectly, prevented the Plaintiff from enjoying and exercising his rights, privileges and immunities as a citizen of the United States, including, but not limiting to be free from pain, suffering, facial disfigurement and dysfunctionality of his mouth, deprived and deprives Plaintiff ability to perform those usual things/activities, which every person takes for granted, and that all of these losses and damages are certain to increase into the future if not stopped and corrected by overdue since 1993 surgeries and other treatments.

188. That such acts or omissions, as alleged and set forth herein, were committed by the Defendants UNITED STATES and the STATE OF ILLINOIS through their Judiciaries in

conspiracy between themselves and together with BOLLINGER, RUBERRY & GARVEY and HINSHAW & CULLBERTSON, and together with not named as Defendants in this Count O'LEARY, KRAUSE, LYSAUGHT, BOLLINGER, DR. BRIELE, DR. GALINSKY, DR. BRUNNGRABER, DR. WENIG, DR. KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS, acting as terrorist network, willfully, intentionally and maliciously, in violation of the Constitution and the laws on bases of acts of treason against the United States, the Sovereign, three fourth of the several States, and for the purpose of depriving Plaintiff of his constitutional rights under the law.

WHEREFORE, plaintiff prays for relieve as follows:

A - Judgment for compensatory damages in favor of the Plaintiff against Defendant UNITED STATES in the amount of TWENTY ($20.000,000.00) MILLION DOLLARS, if the Congress impeaches judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and takes steps to reform Justice System, or, in the alternative, TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS, if the Congress does not impeach judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and does not take steps to reform Justice System.

B - Judgment for punitive damages in favor of the Plaintiff against Defendant UNITED STATES in the amount of TWENTY ($20.000,000.00) MILLION DOLLARS, if the Congress impeaches judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook,

Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and takes steps to reform Justice System, or, in the alternative, TWO HUNDRED FIFTY ($250,000,000.00) MILLION DOLLARS, if the Congress does not impeach judges David H. Coar of District Courts, John L. Coffey, Frank H. Easterbrook, Daniel A. Manion of Court of Appeals for the Seventh Circuit and of the Supreme Court who denied Plaintiff's Petition for Writ of Certiorari and does not take steps to reform Justice System.

C - Judgment for compensatory damages in favor of the Plaintiff against Defendant STATE OF ILLINOIS in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

D - Judgment for punitive damages in favor of the Plaintiff against Defendant STATE OF ILLINOIS in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

E - Judgment for compensatory damages in favor of the Plaintiff against Defendant BOLLINGER, RUBERRY & GARVEY in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

F - Judgment for punitive damages in favor of the Plaintiff against defendant BOLLINGER, RUBERRY & GARVEY in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

G - Judgment for compensatory damages in favor of the Plaintiff against Defendant HINSHAW & CULLBERTSON in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

H - Judgment for punitive damages in favor of the Plaintiff against the Defendant HINSHAW & CULLBERTSON in the amount of TWENTY ($20,000,000.00) MILLION DOLLARS.

I - Reasonable attorneys' fees and costs.

Submitted,

Bart A. Ross, *pro se*

BART A. ROSS
4542 N. Bernard St.
Chicago, IL 60625
773-539-7773

125

STATE OF ILLINOIS )
                   ) SS.
COUNTY OF COOK )

## AFFIDAVIT

I, BART A. ROSS, being first duly sworn on my oath, state and depose:

1. That I am the plaintiff in the cause entitled BART A. ROSS v. UNITED STATES OF AMERICA, STATE OF ILLINOIS, BOLLINGER, RUBERRY & GARVEY, HINSHAW & CULLBERTSON, MARGARET O'LEARY, MICHAEL KRAUSE, EILEEN LYSAUGHT, BARRY BOLLINGER, DR. HENRY BRIELE, DR. DENNIS GALINSKY, DR. EDWARD BRUNNGRABER, DR. BARRY WENIG, DR. HOWARD KOTLER and the UNIVERSITY OF ILLINOIS AT CHICAGO HOSPITAL AND CLINICS.

2. That attached to the Complaint at Law as Exhibit "A" is a true and correct copy of my "PLAINTIFF'S MOTION RULE 60(b)(4)(6) TO VACATE ALL FINAL ORDERS OF DISMISSAL OF HIS CLAIMS, AND REINSTATE PLAINTIFF'S CAUSE OF ACTION AS TO ALL DEFENDANTS, COUNTS I, III-IV, V-VIII, AND BART A. ROSS' CERTIFICATE", filed on July 17, 2003.

3. That attached to the Complaint at Law as Exhibit "B" is a true and correct copy of my "BRIEF - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION RULE 60(b)(4)(6) TO VACATE FINAL ORDERS OF DISMISSAL AS TO ALL DEFENDANTS, AND REINSTATE PLAINTIFF'S CAUSE OF ACTION, COUNTS I, III-IV, V-VIII", filed on July 17, 2003.

4. That attached to the Complaint at Law are Exhibits App.1 through 726:
(a) That Exhibits App.2-321 are Exhibits App.5-321 supporting BART A. ROSS' Appellants Brief, which selected exhibits supported Motion Rule 60(b) and Memorandum described in above paragraphs 2 and 3.
(b) That Exhibits App.1 (cover page) and App.322 through 645 are additional exhibits supporting Motion Rule 60(b) and Memorandum described in above paragraphs 2 and 3.
(c) That Exhibit App.646 through 726 are additional exhibits supporting the Complaint at Law.

5. That Exhibits App.1 through 726 are true and correct copies of referred to papers.

6. That Exhibits App.666 and 667, on pages 57 of the Complaint at Law present true and correct copies of photographs of my jaw.
(a) That the dates bellow photographs show dates when the photographs were taken.
(b) That copies of some of those photographs are also included in paragraphs 169, 184, pages 107, 120 of the Complaint.
(c) That photographs of terrorist attack on WTC, and Nazi "Incendiary Bomb Experiments" included in paragraphs 169, 184, pages 107, 120 of the Complaint at Law, are true

126

and correct copies from Exhibits App.703 and 679.

7. That Exhibits App.325-422 is the Complaint at Law, case No. 00C 6818 without supporting Exhibits (A5) through (A752).

8. That Exhibits (A5) through (A752), supporting Complaint at Law, case No. 00C 6818, are not attached to the Complaint at Law because of the bulk and cost.

(a) That many Exhibit (A5) through (A752) supporting Complaint, case No. 00C 6818 are supporting this Complaint as Exhibits App.5-726, and some selected Exhibits **(A5)** through **(A752)** referred to in this Complaint are additionally indexed as Exhibits App.*** and referred to attached Exhibits App.5-726.

9. That all statements of fact in this Complaint, both, in "Facts" and in "Counts" are true and correct to the best of my knowledge.

10. That all statements of fact in the Complaint, case No. 00C 6818, Exhibits App.325-422, incorporated in the Complaint, are true and correct to the best of my knowledge.

(a) That I corrected fact 62 of the Complaint, case No. 00C 6818, repeated as fact 21 - (62 $^{00C\ 6818,\ fact}$) in this Complaint to read:

"21 - (62 $^{00C\ 6818,\ fact}$). That "To file a case of medical malpractice Illinois law requires plaintiff to obtain health care professional report/affidavit pursuant to section 2-622 of the Illinois Code of Civil procedure (735 ILCS 5/2-622)."

That Plaintiff corrects above statement cited word for word from Complaint, case No. 00C 6828 to read, that "To maintain a case of medical malpractice Illinois law requires plaintiff to obtain health care professional report pursuant to section 2-622 of the Illinois Code of Civil procedure (735 ILCS 5/2-622), and requires to obtain affidavit to prevent dismissal of the suit upon motion for summary judgment supported by defendants-doctors own affidavits, which, like in Plaintiff's case were perjurious (Exhibits App.88, 93 of 86-96), they withdrew (Exhibit App.97) after I filed Dr. Laursen's affidavit Exhibit App.98"

11. That I have personal knowledge of the afore-described facts.

FURTHER AFFIANT SAYETH NAUGHT

Bart A. Ross

Subscribed and Sworn to before me

this 17 day of June, 2004.

Notary Public

"OFFICIAL SEAL"
LISA LOPEZ
Notary Public, State of Illinois
My Commission Expires Dec. 1, 2007

127

See Case File for
Exhibits

JS 44 (Rev. 3/99)  CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

ROSS, BART A.

**DEFENDANTS**

UNITED STATES OF AMERICA, ET AL.

**(b)** County of Residence of First Listed Plaintiff ___COOK___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

04 4210
DOCKETED
JUN 2 4 2004

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

BART A. ROSS
4542 N. BERNARD STREET
CHICAGO, IL 60625-5414  Ph. 773-539-7773

Attorneys (If Known)

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE ASHMAN

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Inj. | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C., Sections 1983, 1985(3) denying access to courts through subversion of judicial process and terrorism, obstruction of justice through concealing physical evidence, providing false information, concealing the violators, and on points of law, which are acts of treason against the United States, the Sovereign, three fourth of the several States, under Article 3, Section 3 of the Constitution

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ alternative and multiple demands

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes * ☐ No

**VIII. This case**

☒ is not a refiling of a previously dismissed action. as to United States, State of Illinois, Bollinger, Ruberry & Garvey, and Hinshaw & Culbertson

☒ is a refiling of case 00C 6818 ** , previously dismissed by Judge COAR through terrorism against Plaintiff

DATE

_Jeeue 23, 2004_

SIGNATURE OF ATTORNEY OF RECORD

_Bart A. Ross_

* - Jury demand as to Defendants other than the United States and as to supplemental jurisdiction;
** - case 00C 6818 refiled under supplemental jurisdiction

1-2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

ROSS, BART A.

v.

UNITED STATES OF AMERICA, ET AL.

Case Number:

04C 4210

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff BART A. ROSS

---

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE ASHMAN

DOCKETED JUN 24 2004

| (A) | (B) |
|---|---|
| SIGNATURE _Bart A. Ross_ | SIGNATURE |
| NAME BART A. ROSS | NAME |
| FIRM | FIRM |
| STREET ADDRESS 4542 N. BERNARD STREET | STREET ADDRESS |
| CITY/STATE/ZIP CHICAGO, IL 60625 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 773-539-7773  FAX NUMBER 773-539-2911 | TELEPHONE NUMBER  FAX NUMBER |
| E-MAIL ADDRESS bartaross@aol.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☒ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER  FAX NUMBER | TELEPHONE NUMBER  FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |